**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, and CHRISTOPHER HACKETT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO INC.,<br><br>Defendant. | Case No. 1:25-cv-2797-DLC<br><br>Hon. Denise L. Cote |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 2

A. ConnectID Technology ..... 2

B. Third-Party Privacy Policies ..... 3

C. Yahoo's Privacy Policy ..... 6

D. Plaintiffs' Allegations ..... 7

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 8

A. Plaintiffs Consented to Yahoo's Receipt of Information Through ConnectID by Agreeing to the Privacy Policies of the Third-Party Platforms ..... 8

B. Counts Two Through Five and Count Seven Independently Fail Because Plaintiffs Have Not Pleaded That Yahoo Acted with Scienter ..... 10

C. Counts Four Through Six Also Fail Because the Complaint Does Not State a CIPA Claim ..... 12

1. Plaintiffs' Section 631 Claim Independently Fails Because Plaintiffs Do Not Plead Any Interception or Reading "In Transit" (Count 4) ..... 12

2. Plaintiffs' Section 632 Claim Independently Fails Because Plaintiffs Do Not Plead that Yahoo Accessed "Confidential Communications" Using a "Device" (Count 5) ..... 14

3. Plaintiffs' Section 638.50 & 638.51 Claim Independently Fails Because It Does Not Apply to the Conduct Alleged as a Matter of Law (Count 6) ..... 15

D. Count Seven Also Fails Because the Complaint Does Not State a Claim Under the CDAFA ..... 17

E. Plaintiffs' Intrusion Upon Seclusion (Count 2) and Constitutional Privacy (Count 3) Claims Fail Because Plaintiffs Have Not Pleaded an Actionable Invasion of Privacy ..... 20

F. Count One Fails Because the Complaint Does Not State a Claim Under New York's General Business Law ..... 23

1. Plaintiffs Fail to Plead Any Acts That Occurred in New York ..... 23

2. Plaintiffs Fail to Plead Materially Misleading Conduct ..... 24

3. Plaintiffs Fail to Plead Injury ..... 26

4. Plaintiffs Fail to Plead Causation ..... 27

G. Count Eight Fails Because There Is No Cognizable Unjust Enrichment Claim ........ 28

H. Count Nine Fails Because Injunctive Relief Is Not a Cognizable Standalone Claim ........ 29

V. CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ....................27

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....................13

*Amalfitano v. NBTY Inc.*,
128 A.D.3d 743 (2015) ....................27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*Belluomini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013)....................20

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)....................29

*Bose v. Interclick, Inc.*
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ....................27

*Broidy Cap. Mgmt. LLC v. Muzin*,
2020 WL 1536350 (D.D.C. Mar. 31, 2020)....................20

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ....................9

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................14

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)....................23

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018) ....................26, 27

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....................28

*Cooper v. Slice Techs., Inc.*,
2018 WL 2727888 (S.D.N.Y. 2018)....................10

*Corsello v. Verizon New York, Inc.*,
967 N.E.2d 1177 (N.Y. 2012)....................28

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....................18

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....................17, 18

*Edelman v. Starwood Cap. Grp., LLC*,
70 A.D.3d 246 (N.Y. App. Div. 2009) ....................29

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ....................13

*Farina v. Metro. Transportation Auth.*,
409 F. Supp. 3d 173 (S.D.N.Y. 2019)....................23, 24

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015)....................11

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....................22

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021)....................2

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................27

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)....................28

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................19, 22

*Goshen v. Mut. Life Ins. Co. of New York*,
98 N.Y.2d 314 (2002) ....................23

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................18

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2006) ....................10, 12, 21

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ....................9

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ....................9, 21, 22

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ....................25

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................22

*In re Application of United States for an Ord. for Disclosure of Telecommc'ns. Recs. & Authorizing the Use of a Pen Reg. & Trap & Trace*,
405 F. Supp. 2d 435 (S.D.N.Y. 2005) ....................16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................21

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. 2011) ....................20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................22

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................22, 23

*INV Accelerator, LLC v. MX Techs., Inc.*,
2020 WL 882902 (S.D.N.Y. Feb. 24, 2020) ....................25

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021) ....................10

*Kaufman v. Sirius XM Radio, Inc.*,
474 F. App'x 5 (2d Cir. 2012) ....................24

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................14

*LaCourte v. JP Morgan Chase & Co.*,
2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013) ....................9

*Lewis v. Superior Court*,
397 P.3d 1011 (Cal. 2017) ....................22

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................17

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ....................11

*McCoy v. Alphabet, Inc.*,
2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ....................13

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ....................19

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32 ....................26, 27

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ....................26, 28, 29

*Neitzke v. Williams*,
490 U.S. 319 (1989) ....................8

*Network Apps, LLC v. AT&T Mobility LLC*,
2025 WL 1114903, (S.D.N.Y. Apr. 15, 2025)....10

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006)....27

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)....17

*Oden v. Boston Scientific Corp*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018)....27

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995)....25

*Patellos v. Hello Prods., LLC*,
523 F. Supp. 3d 523 (S.D.N.Y. 2021)....28

*Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*,
2009 WL 1119409 (S.D.N.Y. Apr. 26, 2009)....24

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972)....11

*People v. Superior Court (Smith)*,
70 Cal. 2d 123 (1969)....11

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019)....15

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023)....25

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021)....14

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022)....13

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021)....21

*Segen v. Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008)....17

*Silverman v. Household Fin. Realty Corp. of New York*,
979 F. Supp. 2d 313 (E.D.N.Y. 2013)....24

*Smith v. Chase Manhattan Bank, USA, N.A.*,
293 A.D.2d 598 (N.Y. App. Div. 2002)....26

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018)....9

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009)....................24

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002) ....................21

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)....................21

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................19

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................11, 20

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)....................13

*Vartanian v. VW Credit, Inc.*,
2012 WL 12326334 (C.D. Cal. Feb. 22, 2012)....................11

*W. Air Charter, Inc. v. Schembari*,
2017 WL 10638759 (C.D. Cal. Oct. 6, 2017)....................20

*Weinreb v. 37 Apartments Corp.*,
97 A.D.3d 54 (2012) ....................29

*Whalen v. Pfizer, Inc.*,
862 N.Y.S.2d 812 (Sup. Ct. 2005)....................27

*Wheeler v. Topps Co., Inc.*,
652 F. Supp. 3d 426 (S.D.N.Y. 2023)....................24

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................27

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ....................24

*Zbitnoff v. Nationstar Mortg., LLC*,
2014 WL 1101161 (N.D. Cal. Mar. 18, 2014)....................23

**Statutes**

Cal. Penal Code § 502....................9, 10, 12, 18, 19, 20

Cal. Penal Code § 631....................8, 10, 12

Cal. Penal Code § 632.................... 14, 15

Cal. Penal Code § 638.50....................17

Cal. Penal Code § 638.51 ........................................................................................................15

Cal. Penal Code § 638.52 ........................................................................................................16

N.Y. Gen. Bus. L. § 349 ..........................................................................................................23

**Other Authorities**

Device, Black's Law Dictionary (12 ed. 2024) ......................................................................15

Device, Merriam-Webster Online (2025) ...............................................................................15

# I. INTRODUCTION

Plaintiffs allege that *Yahoo* violated the law when *third-party websites* used Yahoo ConnectID, a tool for optimizing digital advertising, to send pseudonymized information about their users to Yahoo.[1] This theory is wrong as a matter of law, and the Consolidated Amended Complaint, Dkt. 21 ("Complaint" or "CAC"), fails to plausibly state any claim. Each third-party website plaintiffs allege they logged on to—CBS Sports, Realtor.com, and US Magazine—disclosed both its use of tools like ConnectID and the types of information collected. Accordingly, plaintiffs *consented* to the collection of their pseudonymized data when they agreed to the websites' privacy policies, and consent defeats each of plaintiffs' claims. Plaintiffs also do not plausibly allege that *Yahoo* engaged in any affirmative or intentional conduct when these websites used the ConnectID tool, another essential element of many of their claims. At bottom, the Complaint and judicially noticeable facts show that ConnectID is a privacy-centric solution to help publishers connect advertisers with the right audience, and that Yahoo does not collect plaintiffs' personally identifiable information and is not a data broker. As a result, plaintiffs fail to plead any unlawful conduct by Yahoo, and the Complaint should be dismissed in its entirety.

In addition to these overarching pleading failures, each count in plaintiffs' grab-bag Complaint suffers from independent, claim-specific defects that warrant dismissal.

*First*, plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") fail because plaintiffs do not allege that the communications at issue were "in transit" at the time they allegedly were intercepted or read (as required under Section 631) or were "confidential" (as required under Section 632). Plaintiffs' alternative theory that ConnectID qualifies as a "pen register" or "trap and trace" device under Sections 638.50 and 638.51 fares no better. The statute forbids only

[1] Plaintiffs incorrectly named Yahoo Inc. in the case. ConnectID is a service provided by Yahoo Ad Tech LLC, not Yahoo Inc.

*installing* or *using* such a device, and plaintiffs do not allege that Yahoo did either of those things. Moreover, plaintiffs do not plausibly allege that ConnectID is a "pen register" or "trap and trace device" at all.

*Second*, plaintiffs' claim for alleged violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails because plaintiffs do not allege any "damage or loss," or any of the other discrete elements required under the statute.

*Third*, plaintiffs' California common law claims for intrusion upon seclusion and constitutional invasion of privacy require a serious invasion of a reasonable expectation of privacy. Plaintiffs do not plausibly plead either element.

*Fourth*, plaintiffs' claim under New York General Business Law ("GBL") Section 349 should be dismissed because plaintiffs do not plead a New York transaction or any materially misleading representations or omissions that caused them injury.

*Fifth*, plaintiffs' tagalong claims fail because their unjust enrichment claim is impermissibly duplicative, and their injunctive relief "claim" is not a standalone claim.

These pervasive defects cannot be cured because third-party websites' use of the ConnectID tool does not result in any cognizable claim against Yahoo. The entire Complaint should be dismissed with prejudice.

## II. FACTUAL ALLEGATIONS[2]

### A. ConnectID Technology

This case centers on ConnectID, a tool offered by Yahoo to third parties (including advertisers and web developers) to analyze users' online activity, including to assess and improve the effectiveness of advertising. CAC ¶¶ 41, 80, 81, 85. In general, websites that use ConnectID

[2] For purposes of this Motion only, Yahoo accepts as true facts alleged in the Complaint. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).

collect email addresses or phone numbers from users when users create an account or log in to the website. *See id.* ¶¶ 5, 83. The information is then hashed, meaning it is transformed into a long alphanumeric string that does not contain the underlying email address or phone number and from which the underlying email address or phone number cannot be reverse-engineered. *Id.* ¶¶ 5, 54-56. That hashed value is sent to Yahoo along with information about the website (*e.g.*, the website's URL). *Id.* Yahoo uses the hashed value to match the user with a ConnectID profile that reflects the user's online activity. *Id.* ¶ 54. Users' personally identifiable information is not a part of their ConnectID profile. *Id.* ¶¶ 80-83.

ConnectID operates only on websites or internet-connected services that choose to integrate ConnectID. *Id.* ¶¶ 54, 61. The responsibility for integrating and configuring ConnectID lies with third parties—website and app developers, publishers, and advertisers—that implement it, not with Yahoo. *Id.* ¶¶ 61-78.

**B. Third-Party Privacy Policies**[3]

The three companies integrating ConnectID whose websites plaintiffs allegedly logged into with their email addresses—CBS Sports, Realtor.com, and US Magazine, *see id.* ¶¶ 13, 18, 23, 28, 33—all have their own privacy policies that address their use of tools like ConnectID to collect certain user data and their practices of sharing collected data with other third parties.[4] Users of those websites must agree to those policies in order to log in to those sites. RJN Exs. 6-8.

The privacy policy of CBS Sports' parent company, Paramount, states that it "collect[s] and receive[s] device IDs and other unique identifiers and online activity data using device-based

[3] As explained in the concurrently filed Request for Judicial Notice, the privacy notices of Yahoo and the third-party websites referenced in the Complaint are both incorporated by reference into the pleadings and judicially noticeable.
[4] Plaintiff Baker alleges that he "used" Walmart's and Healthline's websites, but not that he ever logged in or provided an email address on either website. CAC ¶ 91.

tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies," which is shared with business partners and advertisers. *Id.* Ex. 1-A at 4, 10; *see* 1-B–1-C. The collected data is used to track user activity "[a]cross the Paramount Services, as well as Third-Party Services" to build a user profile that "help[s] … display personalized ads" on Paramount's websites as well as other third-party sites. *Id.* Ex. 1-A at 5; *see* 1-B–1-C. CBS Sports provides a link to Paramount's Privacy Policy on its sign-up page, and users must agree to Paramount's Privacy Policy before they can create a CBS Sports account. *See id.* Ex. 6.




Move Inc., the parent company of Realtor.com, likewise discloses that it collects user data through automated means such as "cookies, web beacons, web server logs, JavaScript and other

similar technologies" and that this information is shared with third parties to deliver targeted advertising. *Id.* Ex. 2-A at 3; 2-3. Realtor.com also requires users to agree to its Privacy Policy when they create an account. *See id.* Ex. 7.




A360 Media, the parent company of US Magazine, likewise discloses that it uses cookies and other technologies such as "tracking pixels, tags, or similar tools," *id.* Ex. 4-A at 2; *see* 4-B–4-E, to gather user data including "browsing habits" as users interact with its services. *Id.* Ex. 5-A at 2; 5-B at 2. It also states that personal information is collected from and shared with third parties for the purpose of providing users with tailored content and advertisements. *Id.* Ex. 4-A at 6; *see* 4-B–4-E. It further states that the information collected, including log-in credentials, is used for cross-device tracking. *Id.* Ex. 4-A at 3; *see* 4-B–4-E. Users must agree to the terms of the Privacy Policy to create an account. *See id.* Ex. 8.




## C. Yahoo's Privacy Policy

Yahoo offers a variety of services, ranging from consumer-facing email and search to business-side "marketing and ad tech." CAC ¶¶ 1-2.[5] In connection with these services, including

[5] Yahoo Inc. offers the consumer-facing services, while Yahoo Ad Tech LLC offers the ad-tech-related services.

its non-consumer-facing offerings like ConnectID, Yahoo provides detailed information about its privacy practices. *See* RJN Exs. 9–11. Yahoo discloses that it uses "[e]ncrypted or one-way cryptographic hashes of personal information such as email addresses [or] phone numbers" "to provide our digital advertising services on our properties and for our business partners." *Id.* Ex. 10-A at 1; *see* 10-B–10-C. Yahoo discloses that these hashes of email addresses or phone numbers—*i.e.*, the information received via ConnectID—"may be used to identify a user across multiple devices" and are shared with third parties to provide better functionality for users across sites and to personalize advertisements. *Id.* Ex. 10-A at 2; *see* 10-B–10-C.

Yahoo provides several options for users to manage their privacy preferences. *See id.* Ex. 12. Yahoo offers a "Connect ID Opt-out Portal" accessible to all, regardless of whether they have a Yahoo account. *See id.* Exs. 10, 13. Yahoo also enables third parties that choose to incorporate ConnectID into their pages to establish a streamlined opt-in and opt-out toggle by providing ready-to-use code, also available through Yahoo's Privacy Center. *See id.* Ex. 14. This feature can be embedded within the third party's privacy policy or privacy settings on its website. Yahoo also follows a user's opt-out preferences across browsers and platforms. *See id.* Exs. 10, 13.

**D. Plaintiffs' Allegations**

Plaintiffs allege that they are California and Vermont residents with online accounts at sites that allegedly use ConnectID: CBS Sports, Realtor.com, and US Magazine. CAC ¶¶ 12-36.[6] They claim that Yahoo (1) "intercepted" their email addresses; (2) used those email addresses to assign or generate a ConnectID profile; (3) tracked plaintiffs "across the internet and developed a unique user profile"; and (4) intercepted plaintiffs' "searches" and "full-string URLs" without their consent. *Id.* Plaintiffs bring claims for violation of GBL § 349 (Count I); invasion of privacy

[6] If Yahoo determines, or plaintiffs disclose, at a later date that plaintiffs are Yahoo accountholders, Yahoo reserves the right to compel plaintiffs' claims to arbitration.

under the common law (Count II) and the California Constitution (Count III); violations of CIPA §§ 631 (Count IV), 632 (Count V), and 638.50 and 638.51 (Count VI); violations of CDAFA § 502 (Count VII);[7] unjust enrichment (Count VIII); and injunctive relief (Count IX). *Id.* ¶¶ 119-206.

## III. LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must first separate the complaint's legal conclusions—which are disregarded—from its factual allegations. *Id.* at 678-79. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims also may be dismissed based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

## IV. ARGUMENT

### A. Plaintiffs Consented to Yahoo's Receipt of Information Through ConnectID by Agreeing to the Privacy Policies of the Third-Party Platforms

The practices about which plaintiffs now complain were disclosed to them in the privacy policies of CBS Sports, Realtor.com, and US Magazine, to which they agreed when they signed up for accounts on each platform. Plaintiffs' assent to these privacy policies that disclosed the collection and sharing of information at issue is fatal to all of their claims, each of which rests on the absence of consent.[8]

---

[7] Citations to California Penal Code § 502 use "CDAFA" and citations to California Penal Code §§ 631, 632, 638.50, and 638.51 use "CIPA" to clarify the relevant Act for each statute.

[8] *See, e.g.*, CIPA § 631 (prohibiting wiretapping "without the consent of all parties to the communication"); *id.* § 632 (prohibiting eavesdropping and recording "without the consent of all

In their privacy policies, CBS Sports, Realtor.com, and US Magazine "'explicitly notify' users of the practice at issue." *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021) (citation omitted). The privacy policies expressly disclose the websites' use of "tracking technologies," including ConnectID; the collection of email addresses, telephone numbers, and browsing data; and the sharing of such data with third parties. *See* RJN Ex. 1-A at 4, 10; (disclosing that Paramount collects "unique identifiers and online activity data" and shares data with "business partners"); *id.* Ex. 2-A at 3, 5 (disclosing that Move Inc. collects "email address and telephone and/or mobile numbers" and "search queries" and shares data with "business partners"); *id.* Ex. 4-A at 2-3 (disclosing that A360 Media collects "e-mail address," "telephone number," and "navigation events and session information" and "shar[es] personal information with third parties," including "to tailor and provide you with content and advertisements"); *see generally id.* Exs. 1-5. CBS Sports, Realtor.com, and US Magazine do not place any limits on what information can be shared for advertising purposes.

Plaintiffs affirmatively allege that they created accounts on these websites. CAC ¶¶ 13, 18, 23, 28, 33. As the account creation screens above show, to do so plaintiffs were required to agree to the websites' respective privacy policies disclosing the practices at issue. *See supra* Section II.B. This "[k]nowing authorization of the practice constitutes [p]laintiffs' consent," *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), and defeats all of plaintiffs' claims.

---

parties to a confidential communication"); *id.* § 638.51(b)(5) (no liability "[i]f the consent of the user of that service has been obtained"); CDAFA § 502(c) (no liability unless defendant acted "without permission"); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 5 (1994) (no invasion of privacy where plaintiff "manifest[s] ... voluntary consent to the invasive actions"); *LaCourte v. JP Morgan Chase & Co.*, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) ("to have been injured by the defendant's deceptive act, a plaintiff must have been personally misled or deceived"); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) ("consent ... defeats" an unjust enrichment claim).

Although the Complaint recites a conclusory denial that plaintiffs consented to the alleged data collection, the Court should not credit that bare legal conclusion. *See Iqbal*, 556 U.S. at 678-79; *see also, e.g.*, *Network Apps, LLC v. AT&T Mobility LLC*, 2025 WL 1114903, at *14 (S.D.N.Y. Apr. 15, 2025) ("a court need not accept as true any allegations that *contradict* matters properly subject to judicial notice or by exhibit" (citation omitted)). Courts regularly find consent to data collection and dismiss complaints where the user agreed to online terms disclosing data collection. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (collecting cases); *Cooper v. Slice Techs., Inc.*, 2018 WL 2727888, at *4-5 (S.D.N.Y. 2018) (ruling, in connection with analogous federal claims, that "because Plaintiffs consented to [defendant's] sale of anonymized data [through privacy policy], they have failed to state a claim"). For example, in *Javier*, the court explained that where a privacy policy "discloses each action that [plaintiff] now challenges," including the collection and sharing of personal information, and where the plaintiff has agreed to that policy, the claims should be "dismiss[ed] based on consent." 2021 WL 940319, at *3-4.

Because the privacy policies of the relevant third-party websites disclosed the collection and sharing of the data at issue and plaintiffs assented to those policies when they created their accounts on those third-party platforms, plaintiffs' claims should be dismissed.

### B. Counts Two Through Five and Count Seven Independently Fail Because Plaintiffs Have Not Pleaded That Yahoo Acted with Scienter

Nearly all of plaintiffs' California-law claims require that Yahoo acted with scienter. *See* CIPA § 631(a) ("willfully"); *id.* § 632(a) ("intentionally"); CDAFA § 502(c)(1)-(3), (6)-(8), (12)-(13) ("knowingly"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286-87 (2006) ("intentionally"). Plaintiffs have not plausibly alleged scienter, which is an independent basis to dismiss Counts Two through Five and Count Seven.

Plaintiffs have not "set forth specific factual circumstances that make plausible [Yahoo's] intent to record a confidential communication." *Vartanian v. VW Credit, Inc.*, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012). Section 632's intent requirement is satisfied only if plaintiffs show that the party using the recording equipment acted "with the purpose or desire of recording a confidential conversation, or with the knowledge to a substantial certainty that [its] use of the equipment will result in the recordation of a confidential conversation." *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 134 (1969). To be sure, third parties used ConnectID, not Yahoo. But even if that standard applies, Yahoo's creation of ConnectID and making it available to others is not the type of "conscious[] and deliberate[]" conduct required to plead a claim. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015) (interpreting analogous federal law). Creating tools and making them available to others is not the intentional conduct CIPA prohibits. *See Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (no liability for merely selling and installing recording device). Plaintiffs merely allege that Yahoo made ConnectID available to third parties, CAC ¶¶ 61-78, which is not a basis for liability.

Furthermore, "deploying recording devices that *might* happen" to record such information is insufficient to support a claim under CIPA. *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022). As the *Smith* court explained, it would be "absurd" to hold a birdwatcher recording wild birdcalls who accidentally captures confidential discussions liable under CIPA because the "mere intent to activate a tape recorder" does not amount to the intentional capturing of all content that might be captured. *Smith*, 70 Cal. 2d at 133. Section 631 likewise requires conscious intent to engage in the conduct prohibited by statute. The intent requirement under Section 631 is interpreted the same way. *People v. Buchanan*, 26 Cal. App. 3d 274, 287-88 (1972) (under both

Sections 631 and 632, scienter requirement is not satisfied where a switchboard operator "inadvertent[ly]" overheard a telephone conversation). In sum, an *affirmative desire* to intercept a communication without consent is required for a Section 631(a) or 632(a) violation.

For substantially similar reasons, plaintiffs have not plausibly pleaded that Yahoo violated CDAFA or invaded their privacy rights under California law. Because Yahoo merely made ConnectID available to third parties, it did not act with the requisite intent to intrude on any private communications, *Hernandez*, 47 Cal. 4th at 286-87, or "know" of any allegedly unauthorized use, CDAFA § 502(c)(1)-(3), (6)-(8), (12)-(13), which is fatal to these claims. Plaintiffs do not allege any facts showing any misuse of ConnectID by the three websites at issue, let alone knowledge on the part of Yahoo.

### C. Counts Four Through Six Also Fail Because the Complaint Does Not State a CIPA Claim

Multiple additional pleading deficiencies compel dismissal of Plaintiffs' CIPA claims.

#### 1. Plaintiffs' Section 631 Claim Independently Fails Because Plaintiffs Do Not Plead Any Interception or Reading "In Transit" (Count 4)

Section 631 prohibits intentionally intercepting, reading, or learning the contents of a communication while "in transit." CIPA § 631(a). As an initial matter, because Yahoo receives the information from a third party and not the user, that third party necessarily must first receive the information from the user, and then send that information to Yahoo. This does not amount to an interception at all, and certainly not an interception "in transit." In addition, the Complaint alleges that Yahoo intercepts and reads the contents of communications, CAC ¶ 155, but only after the users' email addresses are "hashed," *id.*¶ 54. Because the email address is hashed *before* it is sent to Yahoo, there is necessarily some intervening time where the third-party website is processing it. To be sure, Section 631 only applies to the "contents" of a communication, not information like email addresses. *See McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D.

Cal. Feb. 2, 2021). But because the Complaint alleges that content[9] and non-content information are sent together, the delay in processing the email address necessarily delays the sending of any content information too. *See, e.g.*, CAC ¶ 72 ("it intercepts … the SHA-256 hashed email address, as well as other parameters"); *id.* ¶ 74 ("[t]he script generates first-party cookies … which contain[] SHA-256 hashed email addresses"); *id.* ¶¶ 66, 69, 76 (similar). That is fatal to a Section 631 claim. *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) ("communication 'must be acquired during transmission, not while [it is] in electronic storage'" (citation omitted)).[10]

Plaintiffs' Section 631 claim thus fails because they allege neither interception in transit nor reading in transit. Instead, they plead (at most) that Yahoo receives or reads information after the third-party websites process it and send it to Yahoo. Plaintiffs attempt to circumvent this failing by "[u]sing the word 'intercept' repeatedly … without the addition of specific facts that make it plausible [Yahoo] is intercepting their data in transit." *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *see also Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *10 (C.D. Cal. Nov. 27, 2023) ("Alleging that the defendant's [sic] intercepted a communication in real time is insufficient, without specific facts about what was intercepted and when or how the interception took place."). Similarly, plaintiffs fail to allege that Yahoo "acted to learn the contents of the messages while they were, in a technical sense, in transit." *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021). Plaintiffs' conclusory allegations cannot give rise to a Section 631 claim.

---

[9] Should this case proceed to the merits, the evidence will show that ConnectID does not capture any content. Yahoo accepts the allegations as true for purposes of this Motion only.

[10] To the extent plaintiffs argue Yahoo is responsible for processing and hashing the data, that does not qualify as "intercepting" or "reading" a communication. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025).

**2. Plaintiffs' Section 632 Claim Independently Fails Because Plaintiffs Do Not Plead that Yahoo Accessed "Confidential Communications" Using a "Device" (Count 5)**

Section 632 prohibits "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." CIPA § 632(a). Plaintiffs allege neither a "confidential" communication nor the use of a "device."

Under CIPA, the term "confidential communication" "excludes a communication made" when "the parties to the communication may reasonably expect that the communication may be overheard or recorded." CIPA § 632(a). "[G]enerally[,] … Internet-based communications are not 'confidential' … because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). To state a claim, then, a plaintiff "must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021).

Here, the presumption against confidentiality applies. In addition to sharing this information online, plaintiffs shared their email addresses and online activity with website operators after accepting the websites' privacy policies that explicitly disclosed they would collect and share hashed versions of that information. Once plaintiffs assented to those policies, they could not have had "an objectively reasonable expectation that the conversation [was] not being overheard or recorded." *Campbell*, 77 F. Supp. 3d at 848 (citation omitted). Even aside from those policies, information of the type allegedly collected—hashed email addresses and online activity—cannot rebut the presumption against online confidentiality and falls far short of meeting the standard for a "confidential communication" under Section 632. *See, e.g.*, *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) (email address, name, phone number, and other interactions with a website are not confidential communications under § 632);

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (browsing activity and form field entries are not confidential communications).

This claim also fails for an additional, independent reason. Section 632 applies only to the use of "electronic amplifying or recording device[s]." CIPA § 632(a). Generally, a "device" is a physical object—"a piece of equipment"—not a piece of software. *See* Device, Merriam-Webster Online (2025); *see also* Device, Black's Law Dictionary (12 ed. 2024) ("A mechanical invention … an apparatus or an article of manufacture"). ConnectID is not tangible, so it is not covered by Section 632. Even if, under some circumstances, software could be a device, ConnectID does not qualify because it is ultimately integrated into third-party websites, *see* CAC ¶¶ 61-78, so it cannot be treated as a separate, identifiable "device." Thus, Section 632 does not apply.

### 3. Plaintiffs' Section 638.50 & 638.51 Claim Independently Fails Because It Does Not Apply to the Conduct Alleged as a Matter of Law (Count 6)

Plaintiffs assert a separate theory that ConnectID is a "pen register" or "trap and trace" device under Section 638.51, which prohibits installing such devices without a court order. However, plaintiffs pleaded themselves out of this claim by acknowledging that Yahoo is *not* the "installer" of such a device. And even if Yahoo were, ConnectID is not a "pen register" or a "trap and trace device."

***Plaintiffs do not plausibly allege installation or use by Yahoo.*** Plaintiffs' Section 638.51 claim fails because the statute prohibits only "install[ing] or us[ing] a pen register or a trap and trace device." CIPA § 638.51(a). Plaintiffs have not alleged that Yahoo did either of those things. To the contrary, Yahoo "offer[s]" ConnectID to third-party "websites, mobile applications, advertisers, data brokers, and other internet-connected services," CAC ¶ 40, who, in turn, decide whether to "incorporate" ConnectID on their own websites or platforms, *id.* ¶ 61. Creating

technology (which Yahoo did) is not the same as installing or using it (which the third-party websites did). And the alleged data collection depends on "how ConnectID is configured," *id.* ¶ 56, which also is determined by third-party websites and platforms, not Yahoo.

***ConnectID is not a "pen register" or a "trap and trace device."*** Section 638.51 was never meant to apply to internet software like ConnectID. The legislative history is replete with references to "telephones" (number, lines, and calls)—but not a single reference to the "internet" or "software." *See* RJN Exs. 15-21. The bill that introduced Section 638.51 was "intended to authorize state and local law enforcement to seek emergency orders for pen registers/trap and trace devices *used in telephone surveillance*" and described the devices as used "for *telephone surveillance* to record incoming and outgoing *phone numbers* from a tapped line." *Id.* Ex. 18 at 4-5 (emphases added). This description accords with the terms' traditional meaning: pen registers are used to obtain information "regarding outgoing calls from a particular telephone," while trap and trace devices capture "incoming calls." *In re Application of United States for an Ord. for Disclosure of Telecommunications Recs. & Authorizing the Use of a Pen Reg. & Trap & Trace*, 405 F. Supp. 2d 435, 438 (S.D.N.Y. 2005) (discussing federal pen register statute). The California legislature enacted Section 638.51 against this backdrop and provided in a contemporaneously enacted provision that court orders authorizing the use of a pen register must include the identity of the person associated with "the *telephone line* to which the … device is to be attached" and the "number and, if known, physical location of the *telephone line*." CIPA § 638.52(d)(1), (3) (emphases added). Moreover, these provisions were enacted in 2015, when the legislature would have been well aware of the existence of the internet and online tracking technology. There is no indication that the legislature intended to expand the definition of a pen register or trap and trace device.

Indeed, in *Licea v. Hickory Farms LLC*, the court dismissed a complaint alleging a Section 638.51 violation based on the defendant's alleged use of IP address tracking software because the plaintiff did not include "any actual specific reference to a mobile phone or other potential form of communication device potentially qualifying as a cellular device." 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). Plaintiffs here similarly fail to allege any facts related to phones—which precludes any cognizable Section 638.51 claim.

Even if Section 638.51 may be broadly interpreted to apply to website technologies, ConnectID is not a "pen register" or "trap and trace device" under the statutory definitions of those terms. Pen registers and trap and trace devices, by definition, are incapable of recording or capturing the "contents of a communication." CIPA § 638.50(b)-(c). They collect only "dialing, routing, addressing, or signaling" information. *Id.* Plaintiffs, however, allege that ConnectID is capable of acquiring the "contents" of communications, CAC ¶ 155, such as full-string URLs containing search terms, *id.* ¶ 15. Plaintiffs may plead *claims* in the alternative, but "cannot plead contradictory … facts." *Segen v. Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008). If full-string URLs containing search terms are content under Section 631, which Yahoo intends to dispute, the alleged ability of ConnectID to acquire that information precludes ConnectID from being deemed a pen register or trap and trace device.

**D. Count Seven Also Fails Because the Complaint Does Not State a Claim Under the CDAFA**

Plaintiffs next turn to the CDAFA, an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). This is not a "hacking" case, the CDAFA does not apply, and plaintiffs have not met Rule 9(b)'s heightened pleading standard. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020)

(CDAFA claims "sound[] in fraud" (citation omitted)). The CDAFA claim fails on numerous independent grounds.

*First*, plaintiffs fail to plead "damage or loss by reason of a violation" of CDAFA. CDAFA § 502(e)(1). Under CDAFA, "damage or loss" is limited to some injury to "the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). Plaintiffs' only allegation of loss is that Yahoo has deprived them of "control over their … sensitive personal data[], the ability to receive compensation for that data, and the ability to withhold their data for sale." CAC ¶ 193. In *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021), the court rejected near-identical theories. The *Cottle* plaintiffs alleged that they suffered the "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data." *Id.* at 470, 488. The court dismissed the claim, concluding that such allegations do not qualify as "'damage or loss' within the meaning of the CDAFA." *Id.* at 488. Plaintiffs here press the same deficient theories. The alleged loss of control over data or the value of data cannot support a CDAFA claim as a matter of law.

*Second*, plaintiffs do not allege that Yahoo acted "without permission," meaning "circumvented technological barriers put into place to block access by the defendant." *Custom Packaging*, 2015 WL 8334793, at *3. Plaintiffs do not identify any technological barriers they put in place to block Yahoo's access or allege that Yahoo circumvented any such barriers, defeating their CDAFA claim.

*Third*, plaintiffs' CDAFA claim also fails because plaintiffs do not plausibly allege conduct that violates any of the relevant CDAFA subsections. Plaintiffs' CDAFA claim is predicated on seven different subsections of CDAFA, each with its own discrete requirements. Rather than

plausibly plead those elements, plaintiffs merely "parrot[] the language of the subsections," making conclusory claims that are insufficient under Rule 8, let alone Rule 9(b). *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018). In any event, plaintiffs fail to plead essential elements of each subsection.

- **Section 502(c)(1) (CAC ¶ 188):** Plaintiffs do not allege Yahoo "alters, damages, deletes, destroys, or otherwise uses any data." CDAFA § 502(c)(1); *see McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) (the phrase "or otherwise uses" refers to "use that is similar to alteration, damage, deletion, or destruction" (citation omitted)). "[V]iewing and copying" data, which is all the CAC alleges, is insufficient to state a claim under this provision. *McGowan*, 505 F. Supp. 3d at 1020.

- **Section 502(c)(3) (CAC ¶ 190):** This subsection prohibits "us[ing] or caus[ing] to be used" "computer services," defined as "computer time, data processing, or storage functions, internet services, electronic mail services, electronic message services, or other uses of a computer, computer system, or computer network." CDAFA § 502(b)(4), (c)(3). Plaintiffs allege Yahoo's "tracking technology" constitutes a "computer service." CAC ¶ 190. It does not. The ConnectID technology is "insufficiently similar to 'computer time, data processing, or storage functions' to justify construing the 'other uses' provision" to include it. *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018). In any event, plaintiffs' assertion that ConnectID "uses" or "causes to be used" "computer services" on plaintiffs' devices are wholly conclusory. *See* CAC ¶ 190.

- **Section 502(c)(7) (CAC ¶ 190):** Section 502(c)(7) prohibits the act of "accessing a 'computer, computer system, or computer network,'" which "typically requires the

entry of log-in credentials and/or a password, and therefore necessarily requires an affirmative act." *W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *6 (C.D. Cal. Oct. 6, 2017) (quoting CDAFA § 502(c)(7)). Plaintiffs have not alleged Yahoo accessed any computers, computer systems, or computer networks, let alone used log-in credentials.

- **Section 502(c)(8) (CAC ¶ 192):** Plaintiffs have not plausibly alleged Yahoo "introduce[d] any computer contaminant." CDAFA § 502(c)(8). This subsection is aimed at "viruses or worms[] and other malware that usurps the normal operation of the computer." *In re iPhone Application Litig.*, 2011 WL 4403963, at *13 (N.D. Cal. 2011) (citation omitted). There is no allegation that ConnectID "usurps" or otherwise impairs computers.
- **Sections 502(c)(2), (6), and (13) (CAC ¶¶ 189, 191):** Section 502(c)(2) prohibits the "unauthorized taking or use of information," *Christensen*, 828 F.3d at 789, and Sections 502(c)(6) and (13) prohibit "unauthorized access," *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *17 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021). Yahoo did not act knowingly or without permission from the website operators—to the contrary, the Complaint acknowledges that the third parties chose to integrate ConnectID onto their websites. *See, e.g.*, CAC ¶¶ 54, 61. Any access to or use of data therefore was not "unauthorized."

### E. Plaintiffs' Intrusion Upon Seclusion (Count 2) and Constitutional Privacy (Count 3) Claims Fail Because Plaintiffs Have Not Pleaded an Actionable Invasion of Privacy

Plaintiffs also attempt to invoke California constitutional and common law invasion of privacy claims, but fail to plead any of their requisite elements. The "California Constitution and the common law both set a high bar for an invasion of privacy claim," *Belluomini v. Citigroup,*

*Inc.*, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013), and courts typically assess them together, *Hernandez*, 47 Cal. 4th at 288. For both, a plaintiff must demonstrate a reasonable expectation of privacy and a serious invasion of privacy. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs fail to plausibly allege either element and fail to allege a legally protected privacy interest as required for the constitutional claim.

*First*, plaintiffs do not adequately allege a reasonable expectation of privacy. This factor requires that the plaintiff "conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Courts consider whether a plaintiff had advance notice of relevant policy statements and the opportunity to "consent to or reject the very thing that constitutes the invasion." *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 450 (2002). Here, plaintiffs consented to the relevant terms and conditions, and had the opportunity to opt out of the ConnectID framework. *Supra* Sections II.B-C. There was no reasonable expectation of privacy.

Even assuming plaintiffs did not consent and there was no opportunity to opt out (they did, and there was), "[c]ourts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (citation omitted). Data such as hashed emails, URLs, and searches are "not something over which a consumer has an objectively reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (collecting authority and finding no expectation of privacy over keystrokes and URLs of websites visited).

*Second*, plaintiffs do not allege an invasion that is "sufficiently serious" as to "constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. The "egregious breach" standard sets a high bar; "routine commercial behavior" will not suffice. *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (no liability where defendant collected plaintiff's home addresses to mail coupons and advertisements). Plaintiffs allege Yahoo collected data "to serve targeted advertisements," CAC ¶¶ 143, 156, which amounts to the kind of "routine commercial behavior" contemplated in *Folgelstrom*. There is no plausible allegation that Yahoo engaged in any behavior other than simply providing services relating to targeted advertising, a commonplace practice online. *See Gonzales*, 305 F. Supp. 3d at 1093 ("Without more allegations as to what, if anything, Uber did with this information, Plaintiff has not plausibly alleged a serious invasion of privacy."); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." (emphasis in original)). There is thus no basis for finding an egregious breach of social norms, particularly given the type of information allegedly at issue. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("disclosure [of unique device identifier number, personal data, and geolocation information to third parties] does not constitute an egregious breach of social norms").

*Third*, claims alleging violations of California's constitutional right to privacy must also allege a "legally protected privacy interest." *Lewis v. Superior Court*, 397 P.3d 1011, 1018 (Cal. 2017). Under California law, legally protected privacy interests extend only to "*sensitive* and *confidential* information." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (emphasis in original) (quoting *Hill*, 7 Cal. 4th at 35). This requires a plaintiff to make specific

allegations that the substance of the intercepted communication "actually include[s] content that qualifies under California law as 'confidential' or 'sensitive,'" such as financial information. *Id.* Plaintiffs do not articulate any legally protected privacy interest, *see* CAC ¶¶ 125-48, and allege only categories of information collected rather than "exactly what private information" is at issue, *Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014); *see also Yahoo Mail*, 7 F. Supp. 3d at 1041 (no privacy interest in "email *generally*, regardless of the specific content in the emails at issue"). Plaintiffs' constitutional privacy claim should be dismissed for failure to satisfy this element as well.

### F. Count One Fails Because the Complaint Does Not State a Claim Under New York's General Business Law

Plaintiffs, none of whom are New York residents, fail to plead foundational elements of their GBL claim, which narrowly prohibits "materially misleading" conduct in New York that injures plaintiffs. *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019).

#### 1. Plaintiffs Fail to Plead Any Acts That Occurred in New York

Plaintiffs do not allege that any relevant conduct occurred in New York, which is fatal to their GBL claim. The GBL applies only to conduct that occurs "in this state." GBL § 349(a). The statutory language requires that "the deception of a consumer must occur in New York." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 325 (2002). Where, as here, the transaction is internet-based, courts look to where the plaintiffs were located when they used the relevant website. For example, in *Chiste v. Hotels.com L.P.*, non-New York plaintiffs used defendants' online travel companies to book hotel rooms in New York and alleged misleading acts in connection with the reservation. 756 F. Supp. 2d 382, 395 (S.D.N.Y. 2010). The court dismissed the plaintiffs' Section 349 claim because the allegedly deceptive act took place when the plaintiffs visited the websites from their home states (outside New York), not when they checked into the hotels (in New York).

*Id.* at 403. Numerous courts, including the Second Circuit, have reached similar conclusions regarding out-of-state website use. *See, e.g.*, *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 7-8 (2d Cir. 2012); *Wheeler v. Topps Co., Inc.*, 652 F. Supp. 3d 426, 431-32 (S.D.N.Y. 2023). Plaintiffs are Vermont and California residents who do not allege any purported misconduct occurred, or any websites were visited, in New York, *see* CAC ¶¶ 12-36, precluding their GBL claim as a matter of law.

Nor do plaintiffs identify any allegedly deceptive acts in New York. While Yahoo is headquartered in New York, it is "well-settled" that a plaintiff cannot bring a GBL claim "just because he or she transacted with a seller who resides in New York." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020); *see also Pentair Water Treatment (OH) Co. v. Cont'l Ins. Co.*, 2009 WL 1119409, at *4 (S.D.N.Y. Apr. 26, 2009) ("New York law is clear that the fact that [defendant's] principal place of business is in New York is not sufficient to render GBL § 349 applicable."). Because plaintiffs do not allege they were exposed to deceptive materials while in New York, their GBL claim should be dismissed.

**2. Plaintiffs Fail to Plead Materially Misleading Conduct**

Even if plaintiffs had satisfied the territorial limitations of the GBL (and they have not), they fail to allege facts satisfying the core elements of Section 349.

Section 349 is not a general "unfairness" statute. The statute is limited to consumer-oriented acts that are "misleading in a material respect." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). This requires an "actual misrepresentation or omission that is misleading." *Silverman v. Household Fin. Realty Corp. of New York*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013); *see also Farina*, 409 F. Supp. 3d at 213. The limited scope of Section 349 was designed to avoid the "potential for a tidal wave of litigation against businesses that was not intended by the

Legislature." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995). Accordingly, a plaintiff's failure "to identify any 'material' 'deceptive acts' engaged in by the defendant" is fatal to any claim under Section 349. *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (citation omitted); *see also Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) (dismissing Section 349 claim because plaintiffs "failed to identify any specific deceptive statement … or the additional disclosures [defendant] should have made").

Plaintiffs fail to clear this bar. They have not identified *any* materially misleading representations or omissions made by Yahoo in connection with ConnectID. *See* CAC ¶¶ 119-24. Plaintiffs make only conclusory allegations that Yahoo's Privacy Policy does not sufficiently disclose ConnectID. *E.g.*, *id.* ¶ 7. This is wrong. Yahoo's Privacy Policy explicitly discloses that Yahoo uses "technical identifiers includ[ing] … [e]ncrypted or one-way cryptographic hashes of personal information such as email addresses [and] phone numbers." RJN Ex. 10-A at 1; *see* 10-B–10-C. Even if there were any question about the sufficiency of Yahoo's disclosure, plaintiffs do not explain how any failure to disclose ConnectID is materially misleading. In fact, the only purported misrepresentation identified by plaintiffs is Yahoo's statement that it does "not share personally identifiable information."[11] CAC ¶ 7. This is not a misrepresentation. As plaintiffs acknowledge, "ConnectID does not itself contain the users' actual email address or phone number."

[11] Plaintiffs also allege that Yahoo asserted that "publishers ... need not concern themselves with obtaining user consent because it already provides 'multiple mechanisms' for users to manage their privacy choices." CAC ¶ 63. This unsourced allegation is wrong. Yahoo *does* provide those mechanisms, and specifically provides third parties with the tools to create their own opt-out toggle. *See supra* Section II.C. In any event, Yahoo's statements *to publishers* do not qualify as "consumer-oriented" statements, so they cannot sustain a GBL claim. *See INV Accelerator, LLC v. MX Techs., Inc.*, 2020 WL 882902, at *6-7 (S.D.N.Y. Feb. 24, 2020).

*Id.* ¶ 55. Yahoo does *not* share personally identifiable information, and plaintiffs do not identify any disclosures Yahoo should have made or any other allegedly misleading statements.

**3. Plaintiffs Fail to Plead Injury**

The GBL claim also should be dismissed because plaintiffs do not plead "actual injury," which is "necessary" under Section 349. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (N.Y. App. Div. 2002). Plaintiffs allege that Yahoo collects a hash of their email addresses (but not the email addresses themselves) and certain internet browsing information. CAC ¶¶ 55, 121. However, "§ 349 injury has been recognized only where *confidential, individually identifiable information*—such as *medical records or a Social Security number*—is collected without the individual's knowledge or consent." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017) (emphases added). Similarly, the collection of "de-anonymized data" does not constitute Section 349 injury where the data is used for marketing and is not "particularly sensitive." *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4, *7-8 (S.D.N.Y. July 12, 2018).

Plaintiffs' allegations that Yahoo collected and tracked their data for the purpose of "creat[ing] user profiles used for [Yahoo's] advertising business" are thus insufficient to state a claim. CAC ¶ 122. Plaintiffs do not allege that Yahoo ever accessed, let alone collected, confidential information akin to medical records or Social Security numbers. Plaintiffs' alleged injury is limited to the collection of hashed email addresses and other anonymized data. No New York authority recognizes a privacy right in "anonymous (or perhaps pseudonymous) internet browsing history information." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *11 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32. Thus, there is no "actual injury" for purposes of the GBL.

*See Amalfitano v. NBTY Inc.*, 128 A.D.3d 743, 744-45 (2015).[12]

**4. Plaintiffs Fail to Plead Causation**

Section 349 requires "each Plaintiff [to] individually plead that the disclosures he or she received were inadequate, misleading, or false, and that she was injured *as a result of* the insufficient or false disclosures." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (emphasis added). "The causation element is essential: The plaintiff must show that the defendant's 'material deceptive act' caused the injury." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74 (S.D.N.Y. 2006) (cleaned up). To satisfy this pleading burden, plaintiffs must "set[] forth certain statements contained on [d]efendant's website" that they "actually saw" prior to transacting with Yahoo. *Oden v. Boston Scientific Corp*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018).

Plaintiffs have not alleged "where, when and how" they encountered any statements from Yahoo, which are prerequisites to pleading causation. *Id.* Plaintiffs do not allege they read Yahoo's Privacy Policy or were otherwise exposed to *any* alleged misrepresentations. Plaintiffs "could not have been injured by" statements they never saw. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, at *3 (Sup. Ct. 2005) (table) ("to assert a GBL § 349 claim, a plaintiff must allege that s/he was *exposed* to the alleged misrepresentations").

Plaintiffs have not pleaded a New York transaction, materially misleading conduct, injury,

---

[12] Although one court in this District concluded that allegations of web monitoring through "flash cookies" and browser "history sniffing" code constituted Section 349 injury, *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *1, *8-9 (S.D.N.Y. Aug. 17, 2011), the *Bose* court relied on cases finding injury based on the disclosure of medical records or Social Security numbers. Multiple courts have since deemed its reasoning unpersuasive. *See Mount*, 2016 WL 5080131, at *13; *Cohen*, 2018 WL 3392877, at *9; *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). This Court should too.

or causation. Their GBL claim should be dismissed on any or all of these independent grounds.

**G. Count Eight Fails Because There Is No Cognizable Unjust Enrichment Claim**

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing 'that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Mount*, 684 F. App'x at 36 (citation omitted). Unjust enrichment is "not a catchall cause of action to be used when others fail" and is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Plaintiffs' unjust enrichment claim is duplicative of their other claims because "the conduct underlying the unjust enrichment claim is the same underlying its [other] claims." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 386 (S.D.N.Y. 2024). Plaintiffs' unjust enrichment claim is based on Yahoo's alleged "acqui[sition]" of "unique identifiers and other personal data and private online communications" "for targeted advertising." CAC ¶¶ 198-99. This is the same alleged conduct that underlies all of plaintiffs' claims. *See*, *e.g.*, *id.* ¶¶ 121-23 (Yahoo "intercept[ed] Plaintiffs' … email addresses" and "track[ed] Plaintiffs' … communications" "for advertising purposes"); *id.* ¶¶ 127, 143 ("identifiable and private information" was allegedly "intercepted, stored, and used … to track [plaintiffs] … and to serve targeted advertisements"). Because plaintiffs do not "distinguish their unjust enrichment claim from their other claims," *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 537 (S.D.N.Y. 2021), dismissal is warranted.

Alternative pleading cannot save this claim: "[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Golden v.*

*NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 168 (S.D.N.Y. 2023) (citation omitted). If plaintiffs' other claims succeed, the unjust enrichment claim is impermissibly duplicative. If the other claims are defective, the unjust enrichment claim cannot be used to remedy those defects.

Even putting those flaws aside, plaintiffs have not adequately pleaded that Yahoo was enriched at their expense. Plaintiffs fail to explain how they "suffer[ed] any loss in connection with that use." *Edelman v. Starwood Cap. Grp., LLC*, 70 A.D.3d 246, 247 (N.Y. App. Div. 2009) (affirming dismissal of unjust enrichment claim where defendant's use of proprietary information "did not come at plaintiffs' expense"); *see also supra* pp. 18, 26. Plaintiffs have failed "to allege specific loss or deprivation of opportunity to profit from that information"—a necessary predicate for an unjust enrichment claim. *See Mount*, 684 F. App'x at 37.

### H. Count Nine Fails Because Injunctive Relief Is Not a Cognizable Standalone Claim

Injunctive relief is not a standalone claim in New York, so to the extent the other claims are dismissed, the injunctive relief "claim" should be too. *See Weinreb v. 37 Apartments Corp.*, 97 A.D.3d 54, 58-59 (2012) (injunctive relief "not available when the plaintiff does not have any remaining substantive cause of action"). Moreover, because plaintiffs are now aware of ConnectID, "there is no reason to believe" they will unwittingly expose their data to ConnectID "in the future," making injunctive relief inappropriate. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

## V. CONCLUSION

The Court should dismiss the Complaint with prejudice.

Dated: August 4, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren Goldman*

Lauren Goldman
lgoldman@gibsondunn.com
Jacob Arber
jarber@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Eric D. Vandevelde (*pro hac vice*)
evandevelde@gibsondunn.com
Ilissa Samplin
isamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000

*Attorneys for Defendant Yahoo, Inc.*

## CERTIFICATE OF COMPLIANCE

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,714 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 4, 2025

By: */s/ Lauren Goldman*
Lauren Goldman