**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO INC. and YAHOO AD TECH LLC,<br><br>Defendants. | Case No. 1:25-cv-2797-DLC<br><br>Hon. Denise L. Cote |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. FACTUAL ALLEGATIONS ..... 3

A. ConnectID Technology ..... 3

B. Third-Party Privacy Policies ..... 3

C. Yahoo's Privacy Policy ..... 9

D. Plaintiffs' Allegations ..... 9

III. LEGAL STANDARD ..... 10

IV. ARGUMENT ..... 11

A. Plaintiffs Consented to Yahoo's Receipt of Information Through ConnectID by Agreeing to the Privacy Policies of Each Third-Party Platform ..... 11

B. Counts Two Through Seven Independently Fail Because Plaintiffs Have Not Pleaded That Yahoo Acted with Scienter ..... 13

C. Counts Four Through Six Also Fail Because the SAC Does Not State a CIPA Claim ..... 14

1. Plaintiffs' Section 631 Claim Independently Fails Because Plaintiffs Do Not Plead Any Interception or Reading of "Contents" "In Transit" (Count 4) ..... 15

2. Plaintiffs' Section 632 Claim Fails Because Plaintiffs Do Not Plead that Yahoo Accessed "Confidential Communications" Using a "Device" (Count 5) ..... 16

3. Plaintiffs' Section 638.50 and 638.51 Claim Fails Because Yahoo Did Not "Install" a "Pen Register" or "Trap and Trace" Device (Count 6) ..... 18

D. Count Seven Fails Because the SAC Does Not State a Claim Under CDAFA ..... 20

E. Plaintiffs' Intrusion Upon Seclusion (Count 2) and Constitutional Privacy (Count 3) Claims Fail Because Plaintiffs Have Not Pleaded an Actionable Invasion of Privacy ..... 23

F. Count One Fails Because the SAC Does Not State a Claim Under New York's General Business Law ..... 26

1. Plaintiffs Do Not Plead Any Acts That Occurred in New York ..... 26

2. Plaintiffs Fail to Plead Materially Misleading Conduct ..... 27

3. Plaintiffs Fail to Plead Injury ..... 28

4. Plaintiffs Fail to Plead Causation ..... 29

**TABLE OF CONTENTS**
**(*continued*)**

**Page**

G. Count Eight Fails Because There Is No Cognizable Unjust Enrichment Claim ........ 30
H. Count Nine Fails Because Injunctive Relief Is Not a Cognizable Standalone Claim ........ 31
V. CONCLUSION ........ 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
947 F. Supp. 2d 222 (E.D.N.Y. 2013) ....29

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)....16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....10, 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....10

*Belluomini v. Citigroup, Inc.*,
2013 WL 3855589 (N.D. Cal. July 24, 2013)....23

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020)....31

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011)....29

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020)....22

*Broidy Cap. Mgmt. LLC v. Muzin*,
2020 WL 1536350 (D.D.C. Mar. 31, 2020)....23

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024)....11

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)....16, 17

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)....26

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018)....28, 29

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024)....30

*Cooper v. Slice Techs., Inc.*,
2018 WL 2727888 (S.D.N.Y. 2018)....12

*Corsello v. Verizon New York, Inc.*,
967 N.E.2d 1177 (N.Y. 2012)....30

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ....21

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ....20, 21

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ....26

*Edelman v. Starwood Cap. Grp., LLC*,
70 A.D.3d 246 (N.Y. App. Div. 2009) ....31

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) ....15

*Exxon Co., U.S.A. v. Sofec, Inc.*,
517 U.S. 830 (1996) ....21

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....24

*Farina v. Metro. Transportation Auth.*,
409 F. Supp. 3d 173 (S.D.N.Y. 2019) ....26

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) ....13

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ....25

*Francis v. Kings Park Manor, Inc.*,
992 F.3d 67 (2d Cir. 2021) ....3

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....29

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ....30

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....22, 25

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....15

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....20

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2006) ....13, 14, 24

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*Hicks v. PGA Tour, Inc.*,
897 F.3d 1109 (9th Cir. 2018) ....................11

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ....................11, 24, 25

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ....................27

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024)....................25

*INV Accelerator, LLC v. MX Techs., Inc.*,
2020 WL 882902 (S.D.N.Y. Feb. 24, 2020)....................27

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. 2011) ....................23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................25

*Javier v. Assurance IQ, LLC*,
2021 WL 940319 (N.D. Cal. Mar. 9, 2021)....................12

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ....................16

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ....................17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) ....................20

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................15

*LaCourte v. JP Morgan Chase & Co.*,
2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013)....................11

*Lewis v. Superior Court*,
397 P.3d 1011 (Cal. 2017)....................25

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................19

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ....................14

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ....................22

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**


*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ....29

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ....28, 30, 31

*Neitzke v. Williams*,
490 U.S. 319 (1989) ....10

*Network Apps, LLC v. AT&T Mobility LLC*,
2025 WL 1114903 (S.D.N.Y. Apr. 15, 2025) ....12

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) ....29

*Nowak v. Xapo, Inc.*,
2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) ....20

*Oden v. Boston Scientific Corp*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018) ....29

*Patellos v. Hello Prods., LLC*,
523 F. Supp. 3d 523 (S.D.N.Y. 2021) ....30

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972) ....14

*People v. Coria*,
21 Cal. 4th 868 (1999) ....13

*People v. Superior Court (Smith)*,
70 Cal. 2d 123 (1969) ....13, 14

*Popa v. Microsoft Corp.*,
--- F.4th ---, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) ....21, 24

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ....17

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) ....27

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ....16, 17

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....24

*Segen v. Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ....19

**TABLE OF AUTHORITIES**
**(*continued*)**


**Page(s)**

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ....................21

*Shostack v. Diller*,
2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ....................29

*Silverman v. Household Fin. Realty Corp. of New York*,
979 F. Supp. 2d 313 (E.D.N.Y. 2013) ....................27

*Smith v. Chase Manhattan Bank, USA, N.A.*,
293 A.D.2d 598 (N.Y. App. Div. 2002) ....................28

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................12

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009)....................27

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002) ....................24

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024)....................24

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ....................20

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................16

*Twitter, Inc. v. Garland*,
61 F.4th 686 (9th Cir. 2023) ....................19

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ....................13, 23

*W. Air Charter, Inc. v. Schembari*,
2017 WL 10638759 (C.D. Cal. Oct. 6, 2017)....................23

*Weinreb v. 37 Apartments Corp.*,
97 A.D.3d 54 (2012) ....................31

*Whalen v. Pfizer, Inc.*,
862 N.Y.S.2d 812 (Sup. Ct. 2005)....................29

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................29

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020) ....................26

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................25, 26

*Zbitnoff v. Nationstar Mortg., LLC*,
2014 WL 1101161 (N.D. Cal. Mar. 18, 2014)....................25

**Statutes**

Cal. Penal Code § 502....................10, 11, 13, 14, 20, 22, 23

Cal. Penal Code § 631....................10, 11, 13, 15, 16

Cal. Penal Code § 632....................10, 11, 13, 16, 17

Cal. Penal Code § 638.50....................10, 19

Cal. Penal Code § 638.51....................10, 11, 13, 18

Cal. Penal Code § 638.52....................19

N.Y. Gen. Business Law § 349....................10, 26

**Other Authorities**

Device, Merriam-Webster Online (2025)....................17

Device, Black's Law Dictionary (12 ed. 2024) ....................17

# I. INTRODUCTION

Yahoo's first motion to dismiss exposed numerous defects in plaintiffs' claims that required dismissal. Rather than oppose that motion, plaintiffs amended their complaint for a second time. But the second amended complaint, Dkt. 46 ("SAC"), does not cure the defects in plaintiffs' original pleadings, and dismissal is still warranted. Plaintiffs again allege *Yahoo* violated the law when *third-party websites* used Yahoo ConnectID, a tool for optimizing digital advertising, to send pseudonymized information about users to Yahoo. That theory is still wrong, and plaintiffs still fail to plausibly state any claim against Yahoo.[1]

Each third-party website plaintiffs allege they logged on to—CBS Sports, Realtor.com, US Magazine, and FanDuel—disclosed its use of tools like ConnectID and the types of information collected. Accordingly, plaintiffs consented to the collection of their pseudonymized data when they agreed to those websites' privacy policies. Consent defeats each of plaintiffs' claims, and plaintiffs' amendments do not address (let alone rebut) their consent through these third-party policies. Plaintiffs also fail to plausibly allege that *Yahoo* engaged in any affirmative or intentional unlawful conduct—another element of many of plaintiffs' claims—when the third-party websites used ConnectID. The SAC and judicially noticeable facts show that ConnectID helps publishers connect advertisers with the right audience *without* collecting plaintiffs' personally identifiable information. Plaintiffs fail to plead any unlawful conduct by Yahoo, and the SAC should be dismissed in its entirety.

In addition to these overarching pleading failures, each count in plaintiffs' grab-bag SAC suffers from independent, claim-specific defects that compel dismissal.

---

[1] The SAC names both Yahoo Inc. and Yahoo Ad Tech LLC as defendants, but refers to them collectively as "Yahoo." SAC at 1. ConnectID is a service provided by Yahoo Ad Tech LLC, not Yahoo Inc. Where relevant, this motion differentiates between the two entities. Otherwise, "Yahoo" refers to both Defendants, accepting plaintiffs' allegations for purposes of this motion only.

*First*, plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") fail because plaintiffs do not allege that the communications at issue contained "contents" or were "in transit" when they allegedly were intercepted or read (as required under Section 631) or were "confidential" (as required under Section 632). Plaintiffs' alternative theory that ConnectID qualifies as a "pen register" or "trap and trace" device under Sections 638.50 and 638.51 fares no better. The statute forbids only *installing* or *using* such a device, which plaintiffs do not plausibly allege Yahoo did. Moreover, plaintiffs cannot establish that ConnectID is a "pen register" or "trap and trace device" in the first place.

*Second*, plaintiffs' claim for alleged violations of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA") fails because they do not allege any "damage or loss" or other discrete elements required under the statute.

*Third*, plaintiffs' claims for intrusion upon seclusion and constitutional invasion of privacy require a serious invasion of a reasonable expectation of privacy. Plaintiffs do not plausibly plead either element.

*Fourth*, plaintiffs' claim under New York General Business Law ("GBL") Section 349 should be dismissed because plaintiffs (all but one of whom are not even New York residents) do not plead any materially misleading representations or omissions that caused them injury.

*Fifth*, plaintiffs' tagalong claims fail because their unjust enrichment claim is impermissibly duplicative, and their injunctive relief "claim" is not a standalone claim.

Yahoo identified these problems in its first motion to dismiss. After amending, plaintiffs have failed to fix them. Nor could they, because the third-party websites' use of ConnectID does not result in any cognizable claim against Yahoo. The SAC should be dismissed with prejudice.

## II. FACTUAL ALLEGATIONS[2]

### A. ConnectID Technology

ConnectID is a tool offered by Yahoo Ad Tech to third parties (including advertisers and web developers) to analyze users' online activity to assess and improve the effectiveness of advertising. SAC ¶¶ 48, 89-94. In general, websites that use ConnectID collect email addresses or phone numbers from users when users create an account or log into the website. *See id.* ¶¶ 6, 92. The information is then hashed, meaning it is transformed into a long alphanumeric string that does not contain the underlying email address or phone number and from which that information cannot be reverse-engineered. *Id.* ¶¶ 6, 62-65. That hashed value is sent to Yahoo Ad Tech with information about the website (*e.g.*, the website's URL). *Id.* Yahoo Ad Tech uses the hashed value to match the user with a ConnectID profile that reflects the user's online activity. *Id.* ¶ 62. Users' personally identifiable information is not part of their ConnectID profile. *Id.* ¶¶ 89-92.

ConnectID operates only on websites or internet-connected services that choose to integrate it. *Id.* ¶¶ 62, 70. The responsibility for integrating and configuring ConnectID lies with third parties—website and app developers, publishers, and advertisers—that implement it on their platforms. *Id.* ¶¶ 70-87.

### B. Third-Party Privacy Policies[3]

Plaintiffs allege they used their email addresses to log into four websites that use ConnectID: CBS Sports, Realtor.com, US Magazine, and FanDuel. *Id.* ¶¶ 14, 19, 24, 29, 34, 39.[4] Those websites have their own privacy policies addressing their use of tools like ConnectID to

---

[2] For purposes of this Motion only, Yahoo accepts as true facts alleged in the SAC. *See Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).
[3] As explained in Yahoo's Request for Judicial Notice ("RJN"), the privacy notices referenced in the SAC are incorporated by reference and judicially noticeable.
[4] Plaintiffs allege "use" of Walmart's and Healthline's websites, but not that they logged in or provided an email address to those websites. SAC ¶¶ 100, 103.

collect certain user data and their practices of sharing collected data with third parties. Users of those websites must agree to those policies to create accounts with those sites. RJN Exs. 7-10.

The privacy policy of CBS Sports' parent company, Paramount, states that Paramount "collect[s] and receive[s] device IDs and other unique identifiers and online activity data using device-based tracking technologies such as cookies, pixels, tags, beacons, scripts, and similar technologies," which are shared with business partners and advertisers. *Id.* Ex. 1-A at 4, 9-10; *see* 1-B–1-F. The collected data is used to track user activity "[a]cross the Paramount Services"—including CBS Sports—"as well as Third-Party Services" to build a user profile that "help[s] … display personalized ads." *Id.* Ex. 1-A at 5; *see* 1-B–1-F. CBS Sports provides a link to Paramount's Privacy Policy on its sign-up page, and users must agree to Paramount's Privacy Policy before they can create a CBS Sports account. *See id.* Ex. 7.




Move Inc., the parent company of Realtor.com, likewise discloses that Move collects user data on its websites (including Realtor.com) through automated means such as "cookies, web beacons, web server logs, JavaScript and other similar technologies," and that this information is shared with third parties to deliver targeted advertising. *Id.* Ex. 2-A at 4-6; 2-B at 3-5. Realtor.com also requires users to agree to Move's Privacy Policy when they create an account. *See id.* Ex. 8.




A360 Media, the parent company of US Magazine, also discloses that A360 uses cookies and other technologies on its websites (including the US Magazine website) such as "tracking pixels, tags, or similar tools," *id.* Ex. 4-A at 2; *see* 4-B–4-I, to gather user data, including "browsing habits," as users interact with its services. *Id.* Ex. 5-A at 1; *see* 5-B–5-C. A360's policy also states that personal information is collected from and shared with third parties for the purpose of providing users with tailored content and advertisements. *Id.* Ex. 4-A at 3-4; *see* 4-B–4-I. Users must agree to the terms of the A360 Privacy Policy to create an account with US Magazine. *See id.* Ex. 9.




FanDuel's privacy policy discloses that FanDuel employs "cookies and other similar technologies … to collect data" about users' online activity for targeted advertising purposes. *Id.*

Ex. 6-A at 7; *see* 6-B–6-C.[5] To create an account, users must agree to FanDuel's privacy policy. *See id*. Ex. 10.




[5] If this case survives Yahoo's motion, Yahoo will demonstrate that FanDuel does not use ConnectID.

**C. Yahoo's Privacy Policy**

Yahoo offers a variety of services, ranging from consumer-facing email and search tools to business-side "marketing and ad tech." SAC ¶¶ 1-2.[6] In connection with these services, including non-consumer-facing offerings like ConnectID, Yahoo provides detailed information about its privacy practices. *See* RJN Exs. 11-13. Yahoo discloses that it uses "[e]ncrypted or one-way cryptographic hashes of personal information such as email addresses [or] phone numbers" "to provide our digital advertising services on our properties and for our business partners." *Id.* Ex. 12-A at 2; *see* 12-B–12-D. Yahoo discloses that these hashes—*i.e.*, the information received via ConnectID—"may be used to identify a user across multiple devices" and are shared with third parties to provide better functionality across sites and to personalize advertisements. *Id.* Ex. 12-A at 4; *see id.* Ex. 12-B–12-D.

Yahoo provides several options for users to manage their privacy preferences. *See id.* Ex. 14. Yahoo offers a "Connect ID Opt-out Portal" accessible to all, regardless of whether they have a Yahoo account. *See id.* Exs. 12-A, 15. Yahoo also enables third parties that choose to incorporate ConnectID to establish a streamlined opt-in and opt-out toggle by providing ready-to-use code, available through Yahoo's Privacy Center. *See id.* Ex. 16. This feature can be embedded within the third party's privacy policy or privacy settings on its website. Yahoo follows a user's opt-out preferences across browsers and platforms. *See id.* Exs. 12-A, 15.

**D. Plaintiffs' Allegations**

Plaintiffs allege they are California, Vermont, and New York residents with online accounts at websites that allegedly use ConnectID: CBS Sports, Realtor.com, US Magazine, and FanDuel.

---

[6] Yahoo Inc. offers consumer-facing services, while Yahoo Ad Tech offers ad-tech-related services.

SAC ¶¶ 13-42.[7] They claim that when they created or logged into their accounts on these websites, Yahoo (1) "intercepted" their email addresses; (2) used those email addresses to assign or generate a ConnectID profile; (3) tracked plaintiffs "across the internet and developed a unique user profile"; and (4) intercepted plaintiffs' "searches" and "full-string URLs" without their consent. *Id.* Plaintiffs bring claims for violation of GBL § 349 (Count I); invasion of privacy under common law (Count II) and the California Constitution (Count III); violations of CIPA §§ 631 (Count IV), 632 (Count V), and 638.50 and 638.51 (Count VI); violations of CDAFA § 502 (Count VII);[8] unjust enrichment (Count VIII); and injunctive relief (Count IX). *Id.* ¶¶ 153-242.

## III. LEGAL STANDARD

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a motion to dismiss, the Court must disregard legal conclusions. *Id.* at 678-79. The remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the complaint pleads facts "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Claims may be dismissed based on a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

[7] If Yahoo later determines, or plaintiffs disclose, plaintiffs are Yahoo accountholders, Yahoo reserves the right to compel plaintiffs to arbitrate their claims.

[8] Citations to California Penal Code § 502 use "CDAFA" and citations to California Penal Code §§ 631, 632, 638.50, and 638.51 use "CIPA" to clarify the relevant Act for each statute.

## IV. ARGUMENT

### A. Plaintiffs Consented to Yahoo's Receipt of Information Through ConnectID by Agreeing to the Privacy Policies of Each Third-Party Platform

Plaintiffs complain about practices disclosed to them in the privacy policies of CBS Sports, Realtor.com, US Magazine, and FanDuel, and to which they agreed when they created accounts on each platform. Plaintiffs' assent to those policies—which disclosed the collection and sharing of the information at issue—is fatal to all their claims, each of which requires the absence of consent.[9]

The privacy policies of the third parties referenced in the SAC "explicitly notify users of the conduct at issue," which establishes consent. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (quotation marks omitted). The policies disclose the websites' use of "tracking technologies," a term that includes ConnectID; the collection of email addresses, telephone numbers, and browsing data; and the sharing of such data with third parties. *See* RJN Ex. 1-A at 4, 9-10 (disclosing that Paramount collects "unique identifiers and online activity data" and shares data with "business partners"); *id.* Ex. 2-A at 3-6 (disclosing that Move Inc. collects "email address and telephone and/or mobile numbers" and "search queries" and shares data with "business partners"); *id.* Ex. 4-A at 2-3 (disclosing that A360 Media collects "e-mail address," "telephone number," and "navigation events and session information" and "shar[es] personal information with third parties," including "to tailor and provide you with content and advertisements"); *id*. Ex. 6A

[9] *See, e.g.*, CIPA § 631 (prohibiting wiretapping "without the consent of all parties to the communication"); *id.* § 632 (prohibiting eavesdropping and recording "without the consent of all parties to a confidential communication"); *id.* § 638.51(b)(5) (no liability "[i]f the consent of the user of that service has been obtained"); CDAFA § 502(c) (no liability unless defendant acted "without permission"); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 5 (1994) (no invasion of privacy where plaintiff "manifest[s] ... voluntary consent to the invasive actions"); *LaCourte v. JP Morgan Chase & Co.*, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013) (no GBL claim without plaintiff being "personally misled or deceived"); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) ("consent ... defeats" an unjust enrichment claim).

at 2-3, 7 (disclosing that FanDuel collects a user's "email address" and "Log File Information," such as browser data, which it may share with third parties "to deliver targeted advertisements"); *see generally id.* Exs. 1-6. Plaintiffs affirmatively allege they created accounts on these websites, meaning they were required to agree to the websites' respective privacy policies disclosing the practices at issue. *See supra* Section II.B. This "[k]nowing authorization of the practice constitutes [p]laintiffs' consent," *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018), and defeats all their claims.

Plaintiffs do not dispute that they agreed to these third-party privacy policies, nor do they dispute that these policies disclosed the sharing of information with companies like Yahoo. Instead, the SAC alleges only that plaintiffs did not assent to *Yahoo's* policies and that *Yahoo's* disclosures are insufficient. SAC ¶¶ 132-38. To be sure, Yahoo's disclosures are transparent and adequate. *See supra* Section II.C. But plaintiffs' consent is independently established by the *third-party* privacy disclosures they agreed to when they created their accounts. In the face of such judicially noticeable facts, the Court should not credit plaintiffs' bare legal conclusion that they did not consent. *See Iqbal*, 556 U.S. at 678-79; *see also, e.g.*, *Network Apps, LLC v. AT&T Mobility LLC*, 2025 WL 1114903, at *14 (S.D.N.Y. Apr. 15, 2025) ("a court need not accept as true any allegations that *contradict* matters properly subject to judicial notice" (citation omitted)). Courts regularly find consent to data collection and dismiss complaints where the user agreed to online terms disclosing data collection. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 2021 WL 940319, at *3 (N.D. Cal. Mar. 9, 2021) (collecting cases); *Cooper v. Slice Techs., Inc.*, 2018 WL 2727888, at *4-5 (S.D.N.Y. 2018) ("because Plaintiffs consented to [defendant's] sale of anonymized data [through privacy policy], they have failed to state a claim"). For example, in *Javier*, the court explained that where a privacy policy "discloses each action that [a plaintiff] now challenges," including the

collection and sharing of personal information, and where the plaintiff has agreed to that policy, the claims should be "dismiss[ed] based on consent." 2021 WL 940319, at *3-4.

The privacy policies of the relevant third parties disclosed the collection and sharing of the data at issue and plaintiffs assented to those policies. Plaintiffs' claims should be dismissed.

### B. Counts Two Through Seven Independently Fail Because Plaintiffs Have Not Pleaded That Yahoo Acted with Scienter

All of plaintiffs' California-law claims require that Yahoo acted with scienter. *See* CIPA § 631(a) ("willfully"); *id.* § 632(a) ("intentionally"); CDAFA § 502(c)(1)-(3), (6)-(8), (12)-(13) ("knowingly"); *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2006) ("intentionally").[10] Plaintiffs have not plausibly alleged scienter, which is an independent basis to dismiss Counts Two through Seven.

Section 632's intent requirement is satisfied only if a plaintiff shows that a defendant acted "with the purpose or desire of recording a *confidential* conversation, or with the knowledge to a substantial certainty that [its] use of the equipment will result in the recordation of a *confidential* conversation." *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 134 (1969) (emphases added). Yahoo Ad Tech's creation and offering of ConnectID to others is not the type of "conscious[] and deliberate[]" conduct that establishes an intent to record a confidential communication. *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015) (interpreting analogous federal law); *see also Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (no liability for merely selling and installing recording device). Because

---

[10] CIPA § 638.51 does not contain an express intent requirement, but it is a criminal statute that does not expressly or implicitly exclude such a requirement. Thus, intent is an implicit requirement. *See People v. Coria*, 21 Cal. 4th 868, 876 (1999) (intent is "an invariable element of every crime unless excluded expressly or by necessary implication" (citation omitted)).

plaintiffs allege only that Yahoo made ConnectID available to third parties, SAC ¶¶ 70-87, they have not plausibly alleged that Yahoo intentionally recorded confidential communications.

Plaintiffs also do not plead the requisite scienter because "deploying recording devices that *might* happen" to record confidential information does not give rise to a claim under Section 632. *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022); *see also Smith*, 70 Cal. 2d at 133 ("mere intent to activate a tape recorder" does not amount to intentional capturing of content captured). Section 631 likewise requires conscious intent to engage in the conduct prohibited by the statute—namely, to read or learn the "contents" of a communication. *People v. Buchanan*, 26 Cal. App. 3d 274, 287-88 (1972) (under Sections 631 and 632, scienter requirement not satisfied where switchboard operator "inadvertent[ly]" overheard a telephone conversation). But there are no allegations that Yahoo "willfully" receives "content" as opposed to non-content information. In sum, an *affirmative desire* to intercept a communication without consent is required for a Section 631(a) or 632(a) violation, and none is alleged here.

For similar reasons, plaintiffs have not plausibly pleaded that Yahoo violated other provisions of CIPA or CDAFA or invaded their privacy rights under California law. Because Yahoo merely made ConnectID available to third parties, which in turn allegedly collected nonconfidential information, Yahoo did not act with the requisite intent to intrude on any private communications, *Hernandez*, 47 Cal. 4th at 286-87, or "know" of any allegedly unauthorized use, CDAFA § 502(c)(1)-(3), (6)-(8), (13). Plaintiffs do not allege any facts showing any misuse of ConnectID by the websites at issue, let alone Yahoo's knowledge of any such misuse.

### C. Counts Four Through Six Also Fail Because the SAC Does Not State a CIPA Claim

Multiple additional pleading deficiencies compel dismissal of plaintiffs' CIPA claims.

**1. Plaintiffs' Section 631 Claim Independently Fails Because Plaintiffs Do Not Plead Any Interception or Reading of "Contents" "In Transit" (Count 4)**

Section 631 prohibits intentionally intercepting, reading, or learning the "contents" of a communication while "in transit." CIPA § 631(a). The SAC alleges Yahoo intercepts and reads the contents of plaintiffs' communications with third-party websites. SAC ¶ 190. But it also alleges that the third-party websites "hash" the email addresses before sending any information to Yahoo Ad Tech, *id.* ¶ 62, and that the websites send those email addresses along with any "content" information, *see* SAC ¶ 65-67. Accordingly, the delay in processing the email address delays the sending of any content information. *See, e.g.*, SAC ¶¶ 75, 78, 81, 83, 85.[11] In short, Yahoo Ad Tech does not receive the information *while it is in transit* from a user to a third-party website. Rather, the third party sends it to Yahoo Ad Tech after a delay. That is fatal to a Section 631 claim. *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) ("communication 'must be acquired during transmission, not while [it is] in electronic storage'" (citation omitted)); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 & n.6 (9th Cir. 2002) (under federal Wiretap Act, interception requires "acqui[sition] during transmission, not while it is in electronic storage").

Plaintiffs attempted to remedy this defect by alleging that Yahoo "immediately intercepts" the A3 and IDSYNC cookies, which are allegedly "unique identifiers," and IP addresses. SAC ¶¶ 98, 101-03. These allegations do not save plaintiffs: As plaintiffs acknowledge, their claims are about ConnectID, a "cookieless identifier." *See* SAC ¶¶ 68. In any event, "identifiers" and IP addresses are record information, not contents, so their collection cannot support a Section 631 claim even if they were intercepted in transit. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("record information" including identifying information is not content);

[11] Should this case proceed, the evidence will show that ConnectID does not capture any "contents."

*Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (IP addresses are not content).

Even if plaintiffs had pleaded *interception* in transit (they have not), their claim would still fail because they have not pleaded that Yahoo "acted to learn the contents of the messages while they were, in a technical sense, in transit." *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021). Section 631 requires not only in-transit interception but also that a defendant "reads" or "learns" the contents of a communication "while the same is in transit." CIPA § 631(a). But processing or hashing data—the only conduct alleged in the SAC—is not "reading." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025). Plaintiffs do not plead any facts to support their conclusory assertion that Yahoo "reads" anything (let alone "contents") in transit. *See* SAC ¶ 190.

**2. Plaintiffs' Section 632 Claim Fails Because Plaintiffs Do Not Plead that Yahoo Accessed "Confidential Communications" Using a "Device" (Count 5)**

Section 632 prohibits "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication." CIPA § 632(a). Plaintiffs allege neither that Yahoo received any "confidential" communication nor that Yahoo used any "device."

Under CIPA, the term "confidential communication" "excludes a communication made" when "the parties to the communication may reasonably expect that the communication may be overheard or recorded." CIPA § 632(a). "[G]enerally[,] … Internet-based communications are not 'confidential' … because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014). To state a claim, then, a plaintiff "must plead unique, definite circumstances rebutting California's presumption against online confidentiality." *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021).

Here, plaintiffs have not established a reasonable expectation of privacy. Plaintiffs shared their email addresses and online activity with third-party website operators after accepting the websites' privacy policies that explicitly disclosed they would collect and share hashed versions of that information. At a bare minimum, plaintiffs must have expected *the third-party websites themselves* to record the information plaintiffs provided, which is enough to defeat their claim. *See Rodriguez*, 2021 WL 2026726, at *7 (plaintiffs' expectation that Google would not record communications with third-party apps "does not reasonably give rise to the expectation that *nobody* (including the apps' developers) would record the communications"). And in light of the privacy policies, plaintiffs also lacked any "objectively reasonable expectation" that the information would not be shared. *Campbell*, 77 F. Supp. 3d at 848 (citation omitted). Even aside from the agreed-to policies, information of the type allegedly collected from plaintiffs—hashed email addresses and online activity on media and entertainment websites, not medical or financial platforms—falls far short of meeting the standard for a "confidential communication" under Section 632. *See, e.g.*, *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) (email address and other interactions with website are not confidential communications under § 632); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (browsing activity and form field entries are not confidential).

The Section 632 claim also fails because it applies only to the use of "electronic amplifying or recording device[s]." CIPA § 632(a). A "device" is a physical object—"a piece of equipment"—not software. Device, Merriam-Webster Online (2025); *see* Device, Black's Law Dictionary (12 ed. 2024) ("A mechanical invention … an apparatus or an article of manufacture"). ConnectID is not a physical object, so it is not covered by Section 632. And even if software could

be a device, ConnectID does not qualify because it is ultimately integrated into third-party websites, *see* SAC ¶¶ 70-87, and thus is not a separate, standalone "device." Section 632 does not apply.

**3. Plaintiffs' Section 638.50 and 638.51 Claim Fails Because Yahoo Did Not "Install" a "Pen Register" or "Trap and Trace" Device (Count 6)**

Plaintiffs assert a separate theory that ConnectID is a "pen register" or "trap and trace" device under Sections 638.50 and 638.51, which prohibit installing such devices without a court order. However, plaintiffs pleaded themselves out of this claim by acknowledging that Yahoo is *not* the "installer" of such a device. Even if Yahoo were, ConnectID is not a "pen register" or a "trap and trace device."

***Plaintiffs do not plausibly allege installation or use by Yahoo.*** Section 638.51 prohibits only "install[ing] or us[ing] a pen register or a trap and trace device," CIPA § 638.51(a), and plaintiffs have not alleged that Yahoo did either of those things. To the contrary, Yahoo "offer[s]" and "provide[s]" ConnectID to third-party websites and services, SAC ¶ 47, which, in turn, decide whether to "integrate" ConnectID on their own websites or platforms, *id.* ¶ 71. Plaintiffs vaguely allege Yahoo "control[s]" and "operate[s]" certain integration methods, but these conclusory allegations are at odds with plaintiffs' own explanation that Yahoo "provides explicit instructions to its clients to enable Yahoo's software on their web properties." *Id.* ¶¶ 71, 73, 77. Creating technology (which Yahoo did) is not the same as installing or using it (which the third-party websites did). And the alleged data collection depends on "how ConnectID is configured," SAC ¶ 65, which also is determined by third-party websites, not Yahoo.

***ConnectID is not a "pen register" or "trap and trace device" in any event.*** Sections 638.50 and 638.51 were never meant to apply to internet software like ConnectID. These provisions authorize law enforcement's use of "pen registers/trap and trace devices *used in*

*telephone surveillance*." RJN Ex. 20 at 4-5 (emphases added).[12] There is not a single reference to the "internet" or "software" in the legislative history of Section 638.50 or 638.51, although it is replete with references to "telephones" (numbers, lines, and calls). *See* RJN Exs. 17-23. The California legislature also provided in a contemporaneously enacted provision that court orders authorizing the use of a pen register must include information associated with "the *telephone line* to which the … device is to be attached." CIPA § 638.52(d)(1), (3) (emphasis added). These provisions were enacted in 2015, when the legislature would have been well aware of the internet and online tracking technology. There is no indication the legislature intended to expand the definition of a pen register or trap and trace device to encompass online software tools.

Indeed, in *Licea v. Hickory Farms LLC*, the court dismissed a complaint alleging a Section 638.51 violation based on the defendant's alleged use of IP address tracking software because the plaintiff did not include "any actual specific reference to a mobile phone or other … cellular device." 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). Plaintiffs here similarly fail to allege that they accessed the websites from their phones, precluding a Section 638.51 claim.

Even if Section 638.51 could be interpreted to apply to website technologies, pen registers and trap and trace devices are incapable of recording or capturing the "contents of a communication." CIPA § 638.50(b)-(c). They collect only "dialing, routing, addressing, or signaling" information. *Id.* Plaintiffs thus plead themselves out of a claim by (incorrectly) alleging that ConnectID collects "contents." *E.g.*, SAC ¶¶ 12, 16-17, 190. Plaintiffs may plead claims in the alternative, but "cannot plead contradictory … facts." *Segen v. Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008). If ConnectID is capable of collecting contents (as plaintiffs allege

[12] This accords with the terms' traditional meaning: Pen registers and trap and trace devices "capture the phone number associated with an outgoing or incoming call," respectively. *Twitter, Inc. v. Garland*, 61 F.4th 686, 691 n.2 (9th Cir. 2023).

but which Yahoo intends to dispute), it cannot be a pen register or trap and trace device. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025) (dismissing Section 638.51 claim because device allegedly collecting contents cannot be a pen register).

**D. Count Seven Fails Because the SAC Does Not State a Claim Under CDAFA**

Plaintiffs next turn to CDAFA, an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015). Despite plaintiffs' amendments, this is still not a "hacking" case, CDAFA does not apply, and plaintiffs have not met Rule 9(b)'s heightened pleading standard. *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) (CDAFA claims "sound[] in fraud" (citation omitted)). This claim also fails on numerous independent grounds.

*First*, plaintiffs fail to plead "damage or loss by reason of a violation" of CDAFA. CDAFA § 502(e)(1). Under CDAFA, "damage or loss" is limited to injury to "the computer system, network, program, or data contained on that computer, as opposed to data generated by a plaintiff while engaging with a defendant's website." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023). In their initial complaint, plaintiffs made barebones assertions of damage or loss. The SAC does not meaningfully flesh out those assertions. Plaintiffs point to nothing more than generic claims that "tracking technologies" generally or "serving ads" in the abstract *might* take up additional bandwidth or cause slower load times under some circumstances. SAC ¶¶ 123-31. Absent from the SAC are any allegations that either Yahoo or ConnectID caused that harm to plaintiffs' devices. *Cf. Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (even though "[d]efendants' bots place[d] a heavy load on Ticketmaster's system," no CDAFA claim where "Ticketmaster's systems continued to function

as intended"); *Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *5 n.5 (9th Cir. Aug. 26, 2025) (dismissing complaint that identifies "potential harms," but "includes no allegations plausibly linking these potential, generalized harms" to plaintiff's experience). Even if such an inferential leap could be made, plaintiffs do not and cannot explain why such damage would be attributable to *Yahoo* instead of the third-party platforms that installed ConnectID. *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 842 (1996) ("A party whose fault did not proximately cause the injury is not liable at all."). Yahoo does not control whether and how platforms configure ConnectID, serve ads, or take up bandwidth, and cannot be held liable for third-party decisions.

Plaintiffs also allege that Yahoo deprived them of "control over their … sensitive personal data[], the ability to receive compensation for that data, and the ability to withhold their data for sale." SAC ¶ 229. In *Cottle v. Plaid Inc.*, the court rejected near-identical theories, finding the "loss of the right to control their own data, the loss of the value of their data, and the loss of the right to protection of the data" do not qualify as "'damage or loss' within the meaning of the CDAFA." 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021). Plaintiffs' amended allegations regarding the value of personal information *to advertisers* are not enough either. *See* SAC ¶¶ 116-19. Any alleged "profit Defendant made as a result of disclosing Plaintiffs' data" does not show *plaintiffs'* loss, much less any harm to their devices. *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). The alleged loss of control or value of data cannot support a CDAFA claim.

*Second*, plaintiffs do not allege Yahoo acted "without permission" (a requirement of every CDAFA subsection at issue here except § 502(c)(8)), meaning that it "circumvented technological barriers put into place to block access by the defendant." *Custom Packaging*, 2015 WL 8334793, at *3. As discussed above, plaintiffs consented to the collection of their personal information, so Yahoo did not act "without permission." Even putting consent aside, plaintiffs do not identify any

technological barriers they put in place to block Yahoo's access or allege that Yahoo circumvented any such barriers, defeating their CDAFA claim.

*Third*, plaintiffs' CDAFA claim also fails because plaintiffs do not plausibly allege conduct that violates any CDAFA subsection. Plaintiffs' CDAFA claim is predicated on seven different subsections of CDAFA, each with its own discrete requirements. Plaintiffs merely "parrot[] the language of the subsections," making conclusory claims that are insufficient under Rule 8, let alone Rule 9(b). *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018). Plaintiffs also fail to plead essential elements of each subsection.

- **Section 502(c)(1) (SAC ¶ 223):** Plaintiffs do not allege Yahoo "alters, damages, deletes, destroys, or otherwise uses any data." CDAFA § 502(c)(1). "[V]iewing and copying" data, which is all the SAC alleges, is insufficient to state a claim under this provision. *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020).
- **Section 502(c)(3) (SAC ¶ 225):** This subsection prohibits "us[ing] or caus[ing] to be used" "computer services," defined as various "uses of a computer, computer system, or computer network." CDAFA § 502(b)(4), (c)(3). Plaintiffs allege their devices and browsers constitute "computer services," and that Yahoo used those services through its "tracking technology." SAC ¶ 225. But plaintiffs do not explain "how it is even possible for [Yahoo] to 'use' a third-party [website or] app on Plaintiffs' devices." *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) (dismissing analogous claim).
- **Section 502(c)(7) (SAC ¶ 226):** Section 502(c)(7) prohibits the act of "accessing a 'computer, computer system, or computer network,'" which "typically requires the entry of log-in credentials and/or a password, and therefore necessarily requires an

affirmative act." *W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *6 (C.D. Cal. Oct. 6, 2017) (quoting CDAFA § 502(c)(7)). Plaintiffs have not alleged Yahoo accessed any computers, computer systems, or computer networks, let alone used log-in credentials.

- **Section 502(c)(8) (SAC ¶ 228):** Plaintiffs have not plausibly alleged Yahoo "introduce[d] any computer contaminant." CDAFA § 502(c)(8). This subsection is aimed at "viruses or worms[] and other malware that usurps the normal operation of the computer." *In re iPhone Application Litig.*, 2011 WL 4403963, at *13 (N.D. Cal. 2011) (citation omitted). There is no allegation that ConnectID "usurps" or otherwise impairs computers.

- **Sections 502(c)(2), (6), and (13) (SAC ¶¶ 224, 227):** Section 502(c)(2) prohibits the "unauthorized taking or use of information," *Christensen*, 828 F.3d at 789, and Sections 502(c)(6) and (13) prohibit "unauthorized access," *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *17 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021). Yahoo did not act knowingly or without permission from the website operators—to the contrary, the SAC acknowledges that the third parties chose to integrate ConnectID onto their websites. *See, e.g.*, SAC ¶¶ 70-71. Further, plaintiffs consented to the collection of their personal information. Any access to or use of data therefore was not "unauthorized."

### E. Plaintiffs' Intrusion Upon Seclusion (Count 2) and Constitutional Privacy (Count 3) Claims Fail Because Plaintiffs Have Not Pleaded an Actionable Invasion of Privacy

Plaintiffs attempt to invoke California constitutional and common law invasion of privacy claims, but fail to plead the requisite elements. The "California Constitution and the common law both set a high bar for an invasion of privacy claim," *Belluomini v. Citigroup, Inc.*, 2013 WL

3855589, at *6 (N.D. Cal. July 24, 2013), and courts typically assess them together, *Hernandez*, 47 Cal. 4th at 288. For both, a plaintiff must demonstrate a reasonable expectation of privacy and a serious invasion of privacy. *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs fail to plausibly allege either element and fail to allege a legally protected privacy interest as required for the constitutional claim.

*First*, plaintiffs do not adequately allege a reasonable expectation of privacy. This element requires that the plaintiff "conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994). Courts consider whether a plaintiff had the opportunity to "consent to or reject the very thing that constitutes the invasion." *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 450 (2002). Here, plaintiffs consented to the relevant terms and conditions and had the opportunity to opt out of the ConnectID framework. *Supra* Sections II.B-C. There was no reasonable expectation of privacy.

Even assuming plaintiffs did not consent and there was no opportunity to opt out (they did, and there was), "[c]ourts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (citation omitted). Data such as hashed emails, URLs, and searches are "not something over which a consumer has an objectively reasonable expectation of privacy." *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (no expectation of privacy over keystrokes and URLs of websites visited); *Popa*, 2025 WL 2448824, at *1, *5 (alleged collection of website interactions, URLs visited, and communications on pet-store website "does not implicate a … sensitive sphere").

*Second*, plaintiffs do not allege an invasion "sufficiently serious" as to "constitute an egregious breach of the social norms underlying the privacy right." *Hill*, 7 Cal. 4th at 37. The "egregious breach" standard sets a high bar; "routine commercial behavior" will not suffice. *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (no liability where defendant collected home addresses to mail advertisements). Plaintiffs allege Yahoo collected data "to serve targeted advertisements," SAC ¶¶ 178, 191, which is the kind of "routine commercial behavior" contemplated in *Folgelstrom*. There is no plausible allegation that Yahoo engaged in any behavior other than providing services relating to targeted advertising, a commonplace practice. *See Gonzales*, 305 F. Supp. 3d at 1093; *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) ("Contemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much." (emphasis omitted)). There is thus no basis for finding an egregious breach of social norms, particularly given the type of information allegedly at issue. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("disclosure [of data to third parties] does not constitute an egregious breach of social norms").

*Third*, claims alleging violations of California's constitutional right to privacy must allege a "legally protected privacy interest." *Lewis v. Superior Court*, 397 P.3d 1011, 1018 (Cal. 2017). Under California law, legally protected privacy interests extend only to "*sensitive* and *confidential* information." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (quoting *Hill*, 7 Cal. 4th at 35). This requires a plaintiff to make specific allegations that the substance of the intercepted communication "actually include[s] content that qualifies under California law as 'confidential' or 'sensitive,'" such as financial information. *Id.* Plaintiffs do not allege "exactly what private information" is at issue. *Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at

*4 (N.D. Cal. Mar. 18, 2014); *see also Yahoo Mail*, 7 F. Supp. 3d at 1041 (no privacy interest in "email *generally*, regardless of the specific content in the emails at issue"). Nor do they ever allege that any of the information they provided to CBS Sports, Realtor.com, US Magazine, or FanDuel was somehow sensitive.

Plaintiffs' constitutional and common law privacy claims should be dismissed.

### F. Count One Fails Because the SAC Does Not State a Claim Under New York's General Business Law

While plaintiffs added a single New York plaintiff, they still fail to plead foundational elements of their GBL claim, which prohibits "materially misleading" conduct that injures plaintiffs. *Farina v. Metro. Transportation Auth.*, 409 F. Supp. 3d 173, 213 (S.D.N.Y. 2019).

#### 1. Plaintiffs Do Not Plead Any Acts That Occurred in New York

Plaintiffs bring their GBL claim on behalf of all "Plaintiffs and Classes," SAC at 32, but no plaintiff alleges acts occurring "in this state" as required by statute. GBL § 349(a). Where the transaction is internet-based, courts look to where the plaintiffs were located when they used the relevant website. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010). Although Yahoo is headquartered in New York, it is "well-settled" that a plaintiff cannot bring a GBL claim "just because he or she transacted with a seller who resides in New York." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020). While Lowery is a New York resident, he does not allege he was in New York when he logged onto his FanDuel account. SAC ¶ 40; *see Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *6 (S.D. Cal. June 13, 2025) (allegation that plaintiff resided in California "d[id] not create a reasonable inference that Plaintiff was in California when she accessed Defendant's website"). The remaining plaintiffs are Vermont and California residents who do not allege any purported misconduct occurred, or any websites were visited, in New York, *see* SAC ¶¶ 13-42, precluding their claim as a matter of law.

### 2. Plaintiffs Fail to Plead Materially Misleading Conduct

Plaintiffs fail to allege facts satisfying the core elements of Section 349, which is not a general "unfairness" statute. The statute is limited to consumer-oriented acts or omissions that are "misleading in a material respect." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *see also Silverman v. Household Fin. Realty Corp. of New York*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013). A plaintiff's failure "to identify any 'material' 'deceptive acts' engaged in by the defendant" is fatal to a Section 349 claim. *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (citation omitted); *see Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) (dismissing Section 349 claim because plaintiffs "failed to identify any specific deceptive statement … or the additional disclosures [defendant] should have made").

Plaintiffs do not clear this bar. They have not identified *any* materially misleading representations or omissions made by Yahoo in connection with ConnectID. *See* SAC ¶¶ 153-59. In fact, plaintiffs' SAC makes clear their GBL claim is predicated on Yahoo's alleged interception, tracking, and profiling of plaintiffs *only*, *see id.*, which was not the subject of any misrepresentations by Yahoo.

Plaintiffs point to Yahoo's statement that it does "not share personally identifiable information." SAC ¶ 8.[13] But this is not a misrepresentation. As plaintiffs acknowledge, "ConnectID does not itself contain the users' actual email address or phone number." *Id.* ¶ 63. Yahoo does *not* share—nor do Plaintiffs allege Yahoo shares—any personally identifiable

[13] Plaintiffs allege Yahoo asserted that "publishers ... need not concern themselves with obtaining user consent because it already provides 'multiple mechanisms' for users to manage their privacy choices." SAC ¶ 72. This is wrong. Yahoo *does* provide those mechanisms, and specifically provides third parties with the tools to create their own opt-out toggle. *See supra* Section II.C. In any event, Yahoo's statements *to publishers* are not "consumer-oriented" statements, so they cannot sustain a GBL claim. *See INV Accelerator, LLC v. MX Techs., Inc.*, 2020 WL 882902, at *6-7 (S.D.N.Y. Feb. 24, 2020).

information. *See id.* ¶ 8 (Yahoo only shares the ConnectID). Rather, plaintiffs allege Yahoo *received* such information—and that third-party websites do the sharing. *E.g.*, *id.* ¶ 99. Plaintiffs fail to identify any disclosures Yahoo should have made or any other allegedly misleading statements or actionable omissions. While they allege in a conclusory fashion that Yahoo does not sufficiently disclose ConnectID, *see, e.g.*, SAC ¶ 132-38, that is contradicted by documents incorporated by reference. Yahoo's Privacy Policy explicitly discloses that Yahoo uses "technical identifiers includ[ing] … [e]ncrypted or one-way cryptographic hashes of personal information." RJN Ex. 12-A at 2; *see* 12-B–12-D.

**3. Plaintiffs Fail to Plead Injury**

Plaintiffs also fail to plead "actual injury," which is "necessary" under Section 349. *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (N.Y. App. Div. 2002). Plaintiffs allege Yahoo collects a hash of their email addresses and certain internet browsing information. SAC ¶¶ 63, 156. But "§ 349 injury has been recognized only where confidential, individually identifiable information—such as medical records or a Social Security number—is collected without the individual's knowledge or consent." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017). Similarly, the collection of "de-anonymized data" does not constitute Section 349 injury where the data is used for marketing and is not "particularly sensitive." *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4, *7-8 (S.D.N.Y. July 12, 2018).

Plaintiffs' allegations that Yahoo collected and tracked their data for the purpose of "creat[ing] unique user profiles … [for] its advertising business" are thus insufficient to state a claim. SAC ¶ 156. Plaintiffs do not allege Yahoo ever accessed, let alone collected, their confidential information akin to medical records or Social Security numbers. Plaintiffs' alleged injury is limited to the collection of hashed email addresses and anonymized data. No New York authority recognizes a privacy right in "anonymous (or perhaps pseudonymous) internet browsing

history information." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *11 (S.D.N.Y. Aug. 17, 2016), *aff'd*, 684 F. App'x 32. Thus, there is no "actual injury" for purposes of the GBL. *See Shostack v. Diller*, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) ("unquantifiable injury to a privacy interest" is not cognizable injury under the GBL (citation omitted)).[14]

**4. Plaintiffs Fail to Plead Causation**

Section 349 requires "each Plaintiff [to] individually plead that the disclosures he or she received were inadequate, misleading, or false, and that she was injured *as a result of* the insufficient or false disclosures." *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 234 (E.D.N.Y. 2013) (emphasis added). "The causation element is essential: The plaintiff must show that the defendant's 'material deceptive act' caused the injury." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 74 (S.D.N.Y. 2006) (cleaned up). To satisfy this pleading burden, plaintiffs must "set[] forth certain statements contained on [d]efendant's website" that they "actually saw" prior to transacting with Yahoo. *Oden v. Boston Scientific Corp*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018).

Plaintiffs have not alleged "where, when and how" they encountered any statements from Yahoo, which are prerequisites to pleading causation. *Id.* Plaintiffs also do not allege they read Yahoo's Privacy Policy or were otherwise exposed to *any* alleged misrepresentations. Plaintiffs "could not have been injured by" statements they never saw. *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014); *see also Whalen v. Pfizer, Inc.*, 862

---

[14] Although one court in this District concluded that allegations of web monitoring constituted Section 349 injury, *Bose v. Interclick, Inc.*, 2011 WL 4343517, at *1, *8-9 (S.D.N.Y. Aug. 17, 2011), the *Bose* court was not considering allegations of pseudonymized data collection and relied on cases finding injury based on the disclosure of medical records or Social Security numbers. Multiple courts have since deemed its reasoning unpersuasive. *See Mount*, 2016 WL 5080131, at *13; *Cohen*, 2018 WL 3392877, at *9; *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018). This Court should too.

N.Y.S.2d 812, at *3 (Sup. Ct. 2005) (table) ("to assert a GBL § 349 claim, a plaintiff must allege that s/he was *exposed* to the alleged misrepresentations").

Plaintiffs have not adequately pleaded a New York transaction, materially misleading conduct, injury, or causation. Their GBL claim should be dismissed on any or all of these independent grounds.

**G. Count Eight Fails Because There Is No Cognizable Unjust Enrichment Claim**

"To state a claim for unjust enrichment under New York law, a plaintiff must plead facts showing 'that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover.'" *Mount*, 684 F. App'x at 36 (citation omitted). Unjust enrichment is "not a catchall cause of action to be used when others fail" and is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).

Plaintiffs' unjust enrichment claim is duplicative because "the conduct underlying the unjust enrichment claim is the same underlying its [other] claims." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 386 (S.D.N.Y. 2024). Their claim is based on Yahoo's alleged "acqui[sition]" of "unique identifiers and other personal data and private online communications" "for targeted advertising." SAC ¶¶ 234-35. This is the same alleged conduct that underlies all of plaintiffs' claims. *See, e.g.*, *id.* ¶¶ 156-58, 162, 178. Dismissal is warranted because plaintiffs do not "distinguish their unjust enrichment claim from their other claims." *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 537 (S.D.N.Y. 2021).

"[E]ven pleaded in the alternative, claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Golden v. NBCUniversal Media, LLC*, 688 F. Supp.

3d 150, 168 (S.D.N.Y. 2023) (citation omitted). If plaintiffs' other claims succeed, the unjust enrichment claim is impermissibly duplicative. If the other claims are defective, the unjust enrichment claim cannot be used to remedy those defects.

Even putting those flaws aside, plaintiffs have not adequately pleaded that Yahoo was enriched at their expense. Plaintiffs fail to explain how they "suffer[ed] any loss in connection with" Yahoo's alleged conduct or any enrichment to Yahoo "at plaintiffs' expense." *Edelman v. Starwood Cap. Grp., LLC*, 70 A.D.3d 246, 247 (N.Y. App. Div. 2009); *see supra* pp. 20-21. Plaintiffs have failed "to allege specific loss or deprivation of opportunity to profit from [the] information" at issue—a necessary predicate for an unjust enrichment claim. *See Mount*, 684 F. App'x at 37.

### H. Count Nine Fails Because Injunctive Relief Is Not a Cognizable Standalone Claim

Injunctive relief is not a standalone claim in New York; to the extent the other claims are dismissed, the injunctive relief "claim" should be too. *See Weinreb v. 37 Apartments Corp.*, 97 A.D.3d 54, 58-59 (2012) (injunctive relief "not available when the plaintiff does not have any remaining substantive cause of action"). Moreover, because plaintiffs are now aware of ConnectID, "there is no reason to believe" they will unwittingly expose their data to ConnectID "in the future," making injunctive relief inappropriate. *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020).

## V. CONCLUSION

Plaintiffs have had multiple opportunities to plausibly plead a claim. The Court should dismiss the SAC with prejudice.

Dated: September 26, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren Goldman*

Lauren Goldman
lgoldman@gibsondunn.com
Jacob Arber
jarber@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Eric D. Vandevelde (*pro hac vice*)
evandevelde@gibsondunn.com
Ilissa Samplin
isamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000

*Attorneys for Defendants Yahoo, Inc. and Yahoo Ad Tech LLC*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,748 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: September 26, 2025

By: */s/ Lauren Goldman*
Lauren Goldman