**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YAHOO INC.,

Defendant.

Case No. 1:25-cv-02797-DLC

Hon. Denise L. Cote

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 3

  A YAHOO CANNOT ESTABLISH CONSENT ........ 3

  B. PLAINTIFFS PLAUSIBLY ALLEGE INTENT ........ 6

  C. PLAINTIFFS PLAUSIBLY ALLEGE CIPA § 631 CLAIMS ........ 7

  D. PLAINTIFFS PLAUSIBLY ALLEGE CIPA § 632 CLAIMS ........ 9

  E. PLAINTIFFS PLAUSIBLY ALLEGE CIPA § 638.50/638.51 CLAIMS ........ 11

  F. PLAINTIFFS PLAUSIBLY ALLEGE CDAFA CLAIMS ........ 13

  G. PLAINTIFFS PLAUSIBLY ALLEGE PRIVACY CLAIMS ........ 18

  H PLAINTIFFS PLAUSIBLY ALLEGE GBL CLAIMS ........ 21

  I. PLAINTIFFS PLAUSIBLY ALLEGE UNJUST ENRICHMENT ........ 25

  J. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF ........ 27

V. CONCLUSION ........ 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adler v. Community.com, Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........ 9

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........ 3

*Berni v. Barilla S.p.A.*,
964 F.3d 141 (2d Cir. 2020) ........ 27

*Boateng v. BMW* AG,
2024 WL 4471151 (E.D.N.Y. Oct. 11, 2024) ........ 24

*Boelter v. Hearst Commc'ns, Inc.*,
269 F. Supp. 3d 172 (S.D.N.Y. 2017) ........ 26

*Bose v. Interclick, Inc.*,
2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ........ 23

*Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*,
655 F. App'x 9 (2d Cir. 2016) ........ 25

*Brodsky v. Apple Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 17

*Broidy Cap. Mgmt. LLC v. Muzin*,
2020 WL 1536350 (D.D.C. Mar. 31, 2020) ........ 18

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 10, 11, 15

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 3

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 10

*Cherkin v. PowerSchool Holdings, Inc.*,
No. 24-CV-02706, 2025 WL 844378 (N.D. Cal. Mar. 17, 2025) ........ 15

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010) .......... 21

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. July 12, 2018) .......... 24

*Conohan v. Rad Power Bikes Inc.*,
No. CV 25-0106, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 12

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 23, 24, 26

*Cooper v. Slice Techs., Inc.*,
2018 WL 2727888 (S.D.N.Y. 2018) .......... 5

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......... 15

*Custom Packaging Supply, Inc. v. Phillips*,
2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) .......... 16

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 8

*Doe v. Call-On DOC, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) .......... 22

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 21

*Doe v. GoodRx Holdings, Inc.*,
No. 23-CV-00501-AMO, 2025 WL 2052302 (N.D. Cal. July 22, 2025) .......... 10

*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 8

*Exxon Co., U.S.A. v. Sofec, Inc.*,
517 U.S. 830 (1996) .......... 14

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .......... 15

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
2015 WL 13273308 (C.D. Cal. July 29, 2015) .......... 7

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........................................ 20

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025)........ 13, 20

*Galper v. JP Morgan Chase Bank, N.A.*,
802 F.3d 437 (2d Cir. 2015)........................................ 3

*Garon v. Keleops USA, Inc.,*
No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025)........ 13

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014)........................................ 25

*Golden v. NBCUniversal Media, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023)........................................ 26

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)........................................ 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)........................................ 8

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)........................................ 15, 16

*Griffith v. TikTok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023)........................................ 10, 18

*Gutierrez v. Lemonade, Inc.*,
No. 21-CV-7070, 2022 WL 3214852 (S.D.N.Y. Aug. 9, 2022)........................ 27

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)........................................ 15

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2006)........................................ 7

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994)........................................ 19

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009)........................................ 23

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) ........ 20

*In re Apple Inc. Device Performance Litig.*,
347 F. Supp. 3d 434 (N.D. Cal. 2018) ........ 16

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 8

*In re Chantix (Varenicline) Mktg.*, Sales Pracs. & Prods. Liab. Litig. (No. II,
735 F. Supp. 3d 352 (S.D.N.Y. 2024) ........ 26

*In re Facebook Privacy Litigation*,
572 F. App'x 494 (9th Cir. 2014) ........ 15

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 26

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 15, 18, 20, 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ........ 20

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........ 17

*In re Meta Healthcare Pixel Litig.*,
713 F. Supp. 3d ........ 14, 16, 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........ 3

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d ........ 22, 25, 26

*In re Meta Pixel Tax Filing Cases*,
No. 22-CV-07557, 2025 WL 2243615 (N.D. Cal. Aug. 6, 2025) ........ 11, 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 7, 21

*INV Accelerator, LLC v. MX Techs., Inc.*,
2020 WL 882902 (S.D.N.Y. Feb. 24, 2020) ........ 23

*Javier v. Assurance IQ, LLC*,
No. 4:20-CV-02860-JSW, 2021 WL 940319 (N.D. Cal. Mar. 9, 2021) .................................... 5

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................................... 9

*Kane v. Univ. of Rochester*,
No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ......................... 22, 23, 25

*King v. Hard Rock Cafe Int'l (USA), Inc.*,
2025 WL 1635419 (E.D. Cal. June 9, 2025) ................................................................ 10

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ..................................... 13

*Koch v. Christie's Intern. PLC*,
699 F.3d 141 (2d Cir. 2012) ........................................................................................ 22

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........................................................................................ 8

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ............................................................................ 12

*Lewis v. Superior Court*,
397 P.3d 1011 (Cal. 2017) ........................................................................................... 21

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................................................... 12

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ........................................................................................ 7

*McDonald v. Kiloo ApS*,
385 F. Supp. 3d 1022 (N.D. Cal. 2019) ....................................................................... 24

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) ................................................................... 16, 17

*Meyerson v. Prime Realty Services, LLC*,
796 N.Y.S.2d 848 (N.Y. Sup. Ct. 2005) ....................................................................... 23

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......................................... 11

*Molayem v. Ralph Lauren Corp.*,
No. 24-CV-4816, 2025 WL 2773290 (S.D.N.Y. Sept. 29, 2025) .......... 16

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) .......... 12

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) .......... 24

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) .......... 26

*Nick v. Target Corp.*,
2017 WL 10442061 (E.D.N.Y. Sept. 13, 2017) .......... 23

*Oden v. Boston Scientific Corp*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018) .......... 25

*Patellos v. Hello Prods., LLC*,
523 F. Supp. 3d 523 (S.D.N.Y. 2021) .......... 26

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972) .......... 7

*People v. Superior Court,*
*(Smith)*, 70 Cal. 2d 123 (1969) .......... 6

*Popa v. Microsoft Corp.*,
--- F.4th ---, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 14, 19

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 10

*Rider v. Uphold HQ Inc.*,
657 F. Supp. 3d 491 (S.D.N.Y. 2023) .......... 23

*Riganian v. LiveRamp Holdings, Inc.*,
No. 25-CV-00824, 2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... *Passim*

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .......... 10

*Rodriguez v. Google LLC*,
772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 14

*Rojas v. HSBC Card Servs. Inc.*,
20 Cal. App. 5th 427 (2018) ........................................ 6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ........................................ 19

*Segen v. Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ........................................ 13

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........................................ 15

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........................................ 12

*Shostack v. Diller*,
2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ........................................ 24

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ........................................ 5, 6

*Smith v. Rack Room Shoes, Inc.*,
No. 24-CV-06709-RFL, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) .............. 9, 10, 14

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (N.Y. 2000) ........................................ 24

*Suarez v. California Nat. Living, Inc.*,
2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) ........................................ 21

*Tate v. VITAS Healthcare Corp.*,
762 F. Supp. 3d 949 (E.D. Cal. 2025) ........................................ 11

*TBG Ins. Servs. Corp. v. Superior Ct.*,
96 Cal. App. 4th 443 (2002) ........................................ 19

*Thomas v. Papa Johns Int'l, Inc.*,
2024 WL 2060140 (S.D. Cal. May 8, 2024) ........................................ 19

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) ........................................ 14

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................ 9

*Twitter, Inc. v. Garland*,
61 F.4th 686 (9th Cir. 2023) .......... 13

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015).......... 6, 15, 16, 18

*W. Air Charter, Inc. v. Schembari*,
2017 WL 10638759 (C.D. Cal. Oct. 6, 2017).......... 17

*Whalen v. Pfizer, Inc.*,
862 N.Y.S.2d 812 (Sup. Ct. 2005) .......... 25

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019) .......... 14, 15

*Wright v. Publishers Clearing House, Inc.*,
439 F. Supp. 3d 102 (E.D.N.Y. 2020).......... 22

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) .......... 11

*Zarif v. Hwareh.com, Inc.*,
2025 WL 486317 (S.D. Cal. Feb. 13, 2025).......... 16

*Zbitnoff v. Nationstar Mortg., LLC*,
2014 WL 1101161 (N.D. Cal. Mar. 18, 2014) .......... 21

Statutes

Cal. Penal Code § 631(a) .......... 13

Cal. Penal Code § 632(a) .......... 9

Cal. Penal Code § 638.51.......... 11, 12

Cal. Penal Code § 632.......... 10

NY GBL § 349(a).......... 21, 22, 23, 24

## I. INTRODUCTION

Yahoo has spent the better part of two decades building tools designed to collect and benefit from private data it should have never have had access to in the first place. Through this technology, Yahoo intercepts data across thousands of websites—from hospitals, to travel websites, to online gambling platforms—to learn everything it can about a person. Yahoo uses this data to create individually identifiable profiles anchored by its proprietary ConnectID, a unique identifier Yahoo assigns that connects directly to PII (i.e., email addresses and phone numbers). Yahoo then uses this data to profit from its massive advertising system, which includes everything from custom audiences based on these profiles to selling ads through a real-time bidding process.

Yahoo's Motion to Dismiss barely touches on these allegations. Instead, Yahoo spends pages arguing that its *clients* are the ones that should be held accountable instead of Yahoo, the entity that created ConnectID, intercepted Plaintiffs' data, stored it on its own systems, and used it in its own machine learning models and advertising services for profit. Not so. Whatever liability Yahoo's clients may have (if any) does not absolve Yahoo of its own wrongdoing, including its interception and use of private data for Yahoo's benefit.

Equally wrong is Yahoo's claim that Plaintiffs and Class Members consented to being individually profiled by Yahoo. None of the obtuse statements in Yahoo's scattershot bundle of exhibits, even if read together, come close to establishing actual, affirmative consent to the widespread, continuous tracking and profiling Yahoo engages in here.

Its claim-specific arguments fare no better. While Yahoo challenges nearly every element of every claim asserted by Plaintiffs, each of the arguments Yahoo puts forth have been rejected by other Courts as inconsistent with the law.

For these reasons, Yahoo's Motion to Dismiss should be denied in its entirety.

## II. FACTUAL BACKGROUND

Yahoo's ConnectID is a persistent, cross device, cross platform unique identifier that Yahoo created to track users across the internet. ¶¶ 59-61.[1] The moment a user logs into or signs up for a service that uses Yahoo's tracking technology, Yahoo assigns the individual a ConnectID mapped directly their email addresses and/or phone numbers. ¶¶ 61, 63, 93. That ConnectID allows Yahoo to track them across the internet (and devices), circumventing anti-tracking technologies, like Apple's "Do Not Track" function and certain browsers' cookie restrictions. ¶¶ 7, 108-110. It also allows Yahoo to leverage other unique device and user identifiers that it also intercepts, such as IP addresses, cookies, and advertising ids (e.g., IDFA/AAID), to create detailed profiles on individuals. ¶¶ 5, 67, 83, 85, 89-90.[2]

These individually identifiable profiles—that Yahoo does not dispute it maintains (Mot. at 3)—are filled with information it intercepts from thousands of websites Plaintiffs and Class Members used, ranging from hospitals (like St. Jude's) to hotel booking platforms (such as Marriott). ¶¶ 104-105. Yahoo tracks and intercepts data reflecting each user's individual actions on these websites, including full-string URLs that reflect private information (*i.e.*, what was searched, what was being viewed on webpages relating from anything from health appointments to booking hotels, etc.). ¶¶ 89-91, 99-106. These profiles are then enriched and fed into Yahoo's machine learning model, as well as each of Yahoo's advertising products, including custom audiences and its demand/supply-side platforms used for real-time bidding. ¶¶ 92-96.

---

[1] Unless otherwise noted, citations to "¶ __" are citations to the Second Amended Consolidated Class Action Complaint ("Complaint"), ECF No. 46.

[2] While Yahoo emphasized at least some of this information is hashed, experts and the Federal Trade Commission ("FTC") agree that this does nothing to protect the underlying information. ¶¶ 64-65.

All of this occurred without consent, as at no point did Plaintiffs or Class Members agree to Yahoo's omnipresent tracking and profiling scheme. ¶¶ 132-138.

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the court "is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## IV. ARGUMENT

### A. Yahoo Cannot Establish Consent

Yahoo bears the burden of establishing consent.[3] *Calhoun v. Google, LLC,* 113 F.4th 1141, 1147 (9th Cir. 2024). Consent is only effective if the disclosure "explicitly notif[ies]" the user of "the particular conduct" or "substantially the same conduct" and the tortfeasor "did not exceed the scope of that consent." *Id.* If a "reasonable user" could have "plausibly understood the [purported] disclosures 'as *not* disclosing that [the defendant] would engage in particular conduct'" then there is no consent. *Id.*; *In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 794 (N.D. Cal. 2022) (confirming terms "must have only one plausible interpretation for a finding of consent.").

Yahoo cannot meet its burden because, as shown below, none of the documents it cites can establish actual consent. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401-03 (E.D.N.Y. 2015) (explaining the "touchstone" of a "binding agreement" is "[m]utual manifestation of assent" which requires "notice" and "unequivocal acceptance of the terms").

[3] Yahoo violates this Court's word count limitation both by attaching over twenty exhibits and by including screenshots of purported sign-up screens that include additional text.

***Paramount's Privacy Policy*** makes no mention of Yahoo's data interception, ConnectID, comprehensive user profiles, or Yahoo's use of data for its own benefit. ECF No. 51-1. The vague mention of unidentified "business partners" with whom it may "share" certain information raises more questions than it answers. *Id*. at 12. While Paramount identifies certain entities, such as Google and Nielsen in its policies, Yahoo is notably omitted from this list. *Id*. at 16. Consumers thus would have no idea how to even begin figuring out that Yahoo was a "business partner" or that it was surveilling their private interactions from these statements.

***Move Inc.'s Privacy Policy*** suffers from the same flaw. ECF No. 51-2. While it says that Move Inc. may disclose certain data to "Business Partners," Yahoo again is not listed among those third parties. *Id.*at 8. Compounding the issue, Move Inc.'s disclosures *expressly promise* that neither "Amplitude nor [Move Inc.] will "use this data to identify individual users or to match it with further data on an individual user"—the exact conduct Yahoo engages in. *Id*.

***A360 Media's Privacy Policy*** contains even less information. ECF No. 51-4. It makes no mention of collecting "browsing habits,"[4] or that it will "share[]" data with "third parties" for "advertisements" like Yahoo misleading suggests. Mot. at 6. It merely states that A360 may "disclose" data for mergers and bankruptcy, or otherwise to non-defined "service providers" and also non-defined "business partners and affiliates"—none of which include Yahoo. ECF No. 51-4 at 6. Where it states it uses "pixels" it says only that A360 Media may collect "technical information" and "navigation events and session information"—whatever that is—to "understand how" its own users "use [its] Services." *Id*. at 4-5. No one would suspect Yahoo's expansive profiling activities from any of these provisions.

[4] The term "browsing habits" is found in an entirely separate document. ECF No. 51-5 at 3.

***FanDuel's Privacy Policy*** states what data it personally will collect and mentions it may personally use "unique (anonymous) cookie identifiers" and "mobile device identifiers," but makes no mention of Yahoo's ConnectID or Yahoo's development of user profiles. ECF No. 51-6 at 9. Like above, it mentions Google Analytics by name but fails to make any reference to Yahoo.

***Yahoo's Representations***. Yahoo's purported "consumer-facing" representations fail for the reasons set forth in Paragraphs 133 through 138 of the Complaint. Among other things, not one of these documents—which Yahoo fails to explain how consumers can even locate—explain what ConnectID is, including the Yahoo ConnectID opt-out page. *See* ECF Nos. 51-11, 51-12, 51-13, 51-15. No reasonable consumer—even if she did stumble upon the Yahoo Connect ID opt-out page—would opt-out of something never explained to them.

This hodgepodge of incomplete and vague statements strung together from hundreds of pages bears little resemblance to the cases Yahoo relies on that have found consent as a matter of law based on clear disclosures. *See* Mot. at 12 (citing *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (finding Facebook had consent to collect Facebook users' information from third party websites because Facebook's terms stated "we collect information when you visit or use third-party websites"); *Javier v. Assurance IQ, LLC,* No. 4:20-CV-02860-JSW, 2021 WL 940319, at *1 (N.D. Cal. Mar. 9, 2021) (finding consent in an action against a website owner and its vendor because policy disclosed website owner would collect the activity on their own "Services" and use "third party vendors to assist" in that collection); *Cooper v. Slice Techs., Inc.*, 2018 WL 2727888, at *4-5 (S.D.N.Y. 2018) (finding defendant could sell anonymized data because the policy expressly stated it could sell this data to third parties). The terms Yahoo points to come nowhere close to these types of disclosures and cannot establish consent to widespread profiling by Yahoo, an unknown third party, across the entire internet. ¶ 104.

### B. Plaintiffs Plausibly Allege Intent

Intent means to act on "purpose" or with "knowledge to a substantial certainty" as opposed to "innocent[ly]" or "by chance." *See Rojas v. HSBC Card Servs. Inc.,* 20 Cal. App. 5th 427, 435 (2018) (quoting *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 134 (1969)). Knowledge that one's conduct is "unlawful" is entirely "irrelevant." *United States v. Christensen*, 828 F.3d 763, 775 (9th Cir. 2015).

In *Rojas*, the Court found a defendant acted with "intent" because it was "purposefully" recording "*all* . . . calls" of which 317 were "confidential" conversations. 20 Cal. App. 5th at 435 (emphasis in original). And in *Christensen* the Ninth Circuit found a defendant acted with intent—despite that he thought his "software" was used "for lawful purposes" like Yahoo claims here[5]—because the defendant "knew or had reason to know that the design" of his software "rendered it primarily useful" for the "interception of . . . communications." 828 F.3d at 792.

Here, Yahoo acted with intent because it (i) created its technology for the purpose of recording private communications on third-party websites, (ii) intercepted and used that data to create ConnectID user profiles, and (iii) fed that data into its own models and products for profit. *See* Section II. Indeed, Yahoo built its technology to subvert privacy-preserving mechanisms just to accomplish this goal. *See* Section II. Nothing about this was "innocent" or "by chance." *Rojas*, 20 Cal. App. 5th at 435.

This intentional conduct stands in stark contrast to the *Smith* decision Yahoo relies on, where confidential communications were recorded by *accident* as part of "testing" recording equipment. *See Rojas*, 20 Cal. App. 435 (distinguishing *Smith* on the same grounds). Unlike *Smith*,

---

[5] Yahoo's suggestion that it did not "know" it intercepted "private communications" is not believable given that its technology was installed on inherently sensitive websites and it possesses all the data collected on its own servers.

Yahoo was not "testing" anything—this is how it designed its technology to operate. The other cases Yahoo cites are distinguishable on similar grounds. *See* Mot. at 14 (citing *People v. Buchanan*, 26 Cal. App. 3d 274, 287-88 (1972) (no intent when conversation was "inadvertently overheard" and immediately "reported"); *Hernandez v. Hillsides, Inc.,* 47 Cal. 4th 272, 286 (2006) (no liability when defendant was attempting to "videotape a nighttime intruder" and accidentally recorded plaintiff); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.,* 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (finding "seller" and "installer" did not act with intent when they had no other role in the police department's separate use of a recording device); *Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 728 (2022) (finding intent lacking because "critical piece of evidence" of who actually did the recording was missing)).

**C. <u>Plaintiffs Plausibly Allege CIPA § 631 Claims</u>**

CIPA § 631 prohibits the intentional interception, reading, or learning of "contents" of a communication while "in transit." Plaintiffs allege that Yahoo violated CIPA § 631 because its technology embedded on third-party websites immediately transmits the substance of Plaintiffs' communications on these websites to Yahoo's servers in real-time. *See* Section II. Examples of these intercepts are listed in the complaint. ¶¶ 97-106.

Yahoo's argument that the "in transit" element is lacking because hashing of emails apparently causes a non-specified "delay[]" fails for multiple reasons. Mot. at 15.

First, this fact-based contention cannot be credited on a motion to dismiss. *See In re Yahoo Mail Litig.,* 7 F. Supp. 3d 1016, 1027 (N.D. Cal. 2014) (rejecting Yahoo's counter-factual narrative to rebut the "in transit" element on the pleadings).

Second, Yahoo ignores that any hashing would only apply to data its software had *already intercepted*. Any post-interception delay caused by running the hash function does not unwind the violation.

Finally, brief delays or even "transitory storage" do not change whether communications are intercepted in transit so long as they are "en route" when intercepted. *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1081-82 (N.D. Cal. 2015) (explaining that even if defendants "are factually correct" that a communication spends some period in "transitory storage" this is irrelevant because the communication is already "en route"); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024) (sustaining wiretap claim where communications are "first routed" to the defendant's "server"). Here, there is no dispute that, Plaintiffs and Class Members' communications on third party websites are immediately directed to Yahoo such that any "delay" would occur post-interception "en route" to Yahoo. ¶ 98. Neither of the cases Yahoo cites even tangentially support its delay theory it asks this Court to endorse. *See* Mot. at 15 (citing *Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claim because there were no allegations of "what was intercepted, when the interception took place, and how the interception took place."); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 & n.6 (9th Cir. 2002) (no interception when communications were read only after they were posted on an online bulletin)).

Yahoo's separate argument that it only intercepts "record information" is also wrong. Plaintiffs clearly allege the interception of "content"—*i.e.*, private searches—in addition to "record information" like in the cases Yahoo cites. Mot. at 15 (citing *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (finding "IP addresses, locations, browser types, and operating

systems" are not "content"); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (solely IP addresses).

Finally, Yahoo's argument that it does not "learn" or "read" the contents of communications (Mot. at 16) is baseless—that is the entire purpose of Yahoo's technology. *See Smith v. Rack Room Shoes, Inc.*, No. 24-CV-06709-RFL, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (finding third parties read contents of communications through similar trackers where they intercepted "personally identifiable browsing [] history" and "used the information as a building block in their effort to compile detailed profiles"); *Riganian v. LiveRamp Holdings, Inc.*, No. 25-CV-00824, 2025 WL 2021802, at *10 (N.D. Cal. July 18, 2025) (allegations that defendant "intercept[s] communications while in transit" and "connects" the data to an "identity profile" "in real time" sufficient to allege CIPA claims).

The cases Yahoo cites do not support its position. *Torres v. Prudential Fin., Inc.*, involved the interception of *unreadable* content that needed to be "reassembled" post-storage. 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025). And *Adler v. Community.com, Inc.* involved an attempt to read a text message only after it was received and stored by the intended recipient, such that there was no interception at all. 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021). These post-transmission issues in *Torres* and *Adler* are not present here. The Court should sustain Plaintiffs' CIPA § 631 Claims.

### D. Plaintiffs Plausibly Allege CIPA § 632 Claims

CIPA § 632 prohibits any person "intentionally" and "without the consent of all parties" from using a "recording device" to "eavesdrop" or "record [a] confidential communication." Cal. Penal Code § 632(a). Here, Plaintiffs allege that Yahoo uses its technology to record Plaintiffs' private communications to create individually identifiable user profiles. *See* Section II. This

plausibly pleads a CIPA § 632 claim. *See Griffith v. TikTok, Inc.*, 697 F. Supp. 3d 963, 973 (C.D. Cal. 2023)(sustaining Section 632 claim premised on a technology that collects users' identifying information and browsing data to create user profiles); *Rack Room Shoes*, 2025 WL 1085169, at *3 (same); *Doe v. GoodRx Holdings, Inc.*, No. 23-CV-00501-AMO, 2025 WL 2052302, at *2, 14 (N.D. Cal. July 22, 2025) (similar). Yahoo's assertion that there is a "presumption" that online communications are inherently not confidential is legally incorrect. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023) ("California courts have never recognized a legal 'presumption' that internet communications are not confidential under Section 632."); *Griffith*, 697 F. Supp. 3d at 971 (same). Even if such a presumption existed, Plaintiffs' allegations that Yahoo's conduct is widespread and records communications involving private medical information, travel arrangements, and more (*see* Section II), would be sufficient to rebut this presumption. *See Rack Room Shoes,* 2025 WL 1085169, at *5 (finding "personally identifiable browsing history" is sufficiently confidential under Section 632).

In the cases Yahoo cites, plaintiffs either: (1) failed to specify what actual data was intercepted; or (2) alleged the interception of data from a singular website found, by itself, to be insufficiently private to support a Section 632 claim. *See* Mot. at 17 (citing *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (involving the interception of chat messages on a singular platform by the platform owner); *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *5-6 (E.D. Cal. June 9, 2025) (involving a singular website and noting that plaintiff's allegations were "vague[]" and did not "describe her browsing activity" that was allegedly intercepted); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (involving mouse movement on a singular clothing site); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (involving allegations of non-descript data from "third-

party apps" through "secret scripts" that the court noted was "woefully underdeveloped")).[6] These cases are not comparable to Yahoo's continuous profiling of Plaintiffs and Class Members based on their private searches and conduct on *thousands* of non-Yahoo properties.[7]

Finally, Yahoo's argument that its technology is not a "device" ignores that nearly all courts have found that software like Yahoo's meets this requirement. *See Tate v. VITAS Healthcare Corp.,* 762 F. Supp. 3d 949, 958 (E.D. Cal. 2025) (finding that "software" qualifies as a "device" under CIPA 632); *Yockey v. Salesforce, Inc.,* 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024) ("The Court agrees with those Ninth Circuit district court decisions that have found that software qualifies as a device.") (citing cases). Yahoo cites no authority holding otherwise.

### E. <u>Plaintiffs Plausibly Allege CIPA § 638.50/638.51 Claims</u>

CIPA § 638.51 states that a person "may not install or use a pen register or a trap and trace device without first obtaining a court order." *See* Cal. Penal Code § 638.51. Several courts have found that technology that records identifying information—like Yahoo's here—qualifies as a pen register or trap and trace device. *See Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (finding software that intercepts users' IP addresses are pen registers); *In re Meta Pixel Tax Filing Cases*, No. 22-CV-07557, 2025 WL 2243615, at *6 (N.D. Cal. Aug. 6, 2025) (finding pixel technology constitutes a pen register); *Riganian*, 2025 WL 2021802, at *11 (finding JavaScript code that tracks users' name, email, and phone number were pen registers).

Yahoo's assertion that it cannot be held liable because it does not "us[e]" a device and merely "offer[s]" it to others (Mot. at 18) without merit. As alleged here, Yahoo uses its technology

---

[6] *Rodriguez* has been specifically criticized for imposing this non-existent presumption. *See Brown v. Google LLC*, 685 F. Supp. 3d 909, 938 (N.D. Cal. 2023).
[7] Yahoo's consent-based argument fails for the reasons described in Section IV.A.

to intercept identifiable information, process that data on its own servers, and monetize it for its own gain. *See* Section II. Yahoo cannot escape liability by pointing out other entities also "use" the technology.

Its separate argument that CIPA § 638.50/638.51 do not apply to "internet software" is equally baseless. Mot. at 19. The legislature clearly intended to capture modern technologies, not just telephones, in enacting this law. *See* S. Comm. on Pub. Safety, Analysis of A.B. 929, 2015-2016 Reg. Sess. (Cal. June 16, 2015) at 10 (choosing to define these terms more broadly in recognition of the "age of rapidly changing technology"). Indeed, the Southern District of New York has already held that software trackers like the one at issue here fall squarely within § 638.51's ambit. *See Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 40 (S.D.N.Y. 2025) ("[T]he Trackers qualify as a 'device or process' because they constitute 'software that identifies consumers, gathers data, and correlates that data.'").

Yahoo's request that the Court cabin the reach of CIPA § 638.50/638.51 because a *separate* provision—CIPA § 638.52—is limited to "telephone lines" is a red herring. Section 638.52's focus on a specific type of pen register, does not limit § 638.50/638.51. If anything, it *confirms* these sections are broader in scope because they lack that express limitation. *See Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930 (N.D. Cal. 2024) (confirming § 638.52's narrower scope does not not "alter the statutory definition of a pen register stated in § 638.50(b)."); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1076 (C.D. Cal. 2024) (same); *Conohan v. Rad Power Bikes Inc.*, No. CV 25-0106, 2025 WL 1111246, at *6 (C.D. Cal. Apr. 3, 2025) (same).

While Yahoo manages to dig up one case that suggested CIPA § 638.52 may be limited to "mobile devices" (Mot. at 19 (citing *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024)), that decision is not persuasive and at least one court has pointed out it

ignores the plain language used in CIPA § 638.52. *See Garon v. Keleops USA, Inc.,* No. 25-CV-02124-DMR, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025) (rejecting *Licea* as inconsistent with "the plain statutory language").[8]

Finally, Yahoo's claim that it cannot be held liable because it intercepts *both* identifying information (under CIPA § 638.52) and contents (under CIPA § 631) is meritless. Violating both provisions is not a way out of CIPA liability. *See Meta Pixel Tax Filing*, 2025 WL 2243615, at *5 (rejecting the same "loophole" argument as "troubling" given it would permit "unauthorized pen register" and noting courts have "unsurprising[ly]" permitted both claims at the same time); *see also Riganian*, 2025 WL 2021802, at *12 (allowing Section 631(a) and Section 638.51 claims to proceed concurrently); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *12 (N.D. Cal. July 14, 2025) (same). The cases Yahoo cites do not support its two-violations equal none argument. Mot. at 19-20 (citing *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-cv-01473-NW, 2025 WL 1745726, at *5 (N.D. Cal. June 24, 2025) (finding the only conceivable explanation was the defendant intercepted data "input" by the user, which would be exclusively "content information"); *Segen v. Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) (finding a plaintiff cannot plead both that someone approved a backdating scheme while simultaneously arguing no one had done so)).

**F. <u>Plaintiffs Plausibly Allege CDAFA Claims</u>**

Yahoo's conduct violates each of the CDAFA sections set forth in the Complaint; none of Yahoo's arguments to the contrary pass scrutiny.

[8] While Yahoo also cites *Twitter, Inc. v. Garland*, 61 F.4th 686, 691 n.2 (9th Cir. 2023), that decision was evaluating First Amendment violations, not CIPA claims.

***CDAFA Standing.*** Plaintiffs' allegations that Yahoo's invasive technology takes up device resources and causes unwanted identifiers to self-propagate on Plaintiffs' devices and browsers, are sufficient to meet CDAFA's standing requirement. *See Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200 (N.D. Cal. 2019) (finding "depletion of device resources" establishes CDAFA standing); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1110 (N.D. Cal. 2025) (holding "even small harms" like "depletion" of "bandwidth" establish CDAFA standing); *In re Meta Healthcare Pixel Litig*., 713 F. Supp. 3d at 656 (finding use of storage and device resources sufficient for CDAFA standing).

Yahoo's claim that Plaintiffs' allegations about how its technology depletes bandwidth and processing times are speculative and "abstract" cannot be reconciled with Plaintiffs' actual pleading. *See* ¶¶ 124-131. The cases it cites—where these types of allegations were lacking—are thus distinguishable on their face. *See* Opp. at 20 (citing *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018) (no damage of loss because the defendant's "bots" did not "actually alter, damage, delete or destroy data" and Ticketmaster's systems "continued to function as intended, without damage or alteration[.]"); *Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *5 n.5 (9th Cir. Aug. 26, 2025) (dismissing complaint because there was "no allegations plausibly linking" the use of session replay technology to the "potential" for "identity theft")). Yahoo cites no authority for its separate assertion that, even if this harm did occur, its customers should be the only ones liable for what Yahoo's own technology did. This argument is illogical and should be rejected.[9]

[9] While Yahoo cites *Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 842 (1996), that decision has nothing to do with CDAFA and was evaluating whether bifurcating trials was proper.

Plaintiffs separately have CDAFA standing because Yahoo obtained unjust profits as a result of its CDAFA violations, which it should be required to disgorge. *See Rack Room Shoes*, 2025 WL 2210002, at *3 (explaining "disgorgement theory" can satisfy CDAFA standing); *Rodriguez*, 772 F. Supp. 3d at 1110 (finding CDAFA standing where "Google profited from the misappropriation of their data"). Yahoo cites only one case—*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025)—even addressing a disgorgement theory. But that decision, which held that unjust "profit[s]" cannot confer CDAFA standing absent a corresponding "loss," is inconsistent with controlling precedent. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 600 (9th Cir. 2020) (recognizing that disgorgement of profits under California law does not require a "corresponding loss").

The remaining cases Yahoo relies on involved allegations of CDAFA harm based on a diminution in value theory (Opp. at 20-21 (citing *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1021 (C.D. Cal. 2023); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (same)), and did not include these other theories described above. While Plaintiffs maintain that theory also supports CDAFA standing, *see Williams*, 498 F. Supp. 3d at 1200 (accepting a diminution in value theory in light of *In re Facebook Privacy Litigation*, 572 F. App'x 494 (9th Cir. 2014)), Yahoo cannot dispute Plaintiffs' other bases for CDAFA standing.

***"Without Permission" Requirement.*** This requirement is satisfied so long as a defendant acts without consent. *See Brown*, 685 F. Supp. 3d at 940 & n.38; *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016). This requirement is satisfied for the reasons stated in Section IV.A.

Yahoo's claim that "without permission" requires the circumvention of code-based barriers is inconsistent with the law. *See Christensen*, 828 F.3d at 789 (rejecting the idea that "technical

circumvention [is] necessary"); *see also Cherkin v. PowerSchool Holdings, Inc.*, No. 24-CV-02706, 2025 WL 844378, at *6 (N.D. Cal. Mar. 17, 2025) ("Ninth Circuit precedent makes clear that is not necessary to constitute a violation of CDAFA"); *see also Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1049 (S.D. Cal. 2023) (similar).[10] But even if this were a requirement, Plaintiffs' allegations that Yahoo's technology is an "end-run" to established privacy frameworks would meet it. ¶¶ 6-7, 59-69, 115; *see also Greenley*, 684 F. Supp. 3d at 1049 (rejecting assertion that circumvention of code-based barriers is a requirement but noting that allegations that defendant's technology is an "end-run" to built-in "privacy framework" would satisfy this requirement).

***Specific Subsections.*** Even if Yahoo were correct that CDAFA requires compliance with Rule 9(b), which Plaintiffs dispute,[11] each of their CDAFA claims are pled with enough specificity to meet this requirement. *See Molayem v. Ralph Lauren Corp.*, No. 24-CV-4816, 2025 WL 2773290, at *5 (S.D.N.Y. Sept. 29, 2025) (recognizing the "purpose of the Rule 9(b) pleading standard" is just to "give defendants notice of the particular misconduct").

<u>Section 502(c)(1)</u>. Plaintiffs allege that Yahoo placed cookies and other identifiers in their local storage and redirected their private data to their own servers. ¶¶ 67, 78, 131. This is sufficient to allege alteration, damage, or use of data under subsection (c)(1). *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d at 656 (finding allegations that tracking technology places "cookies[]" on their "devices" and "redirect[s]" data to defendant's own servers sufficient to allege defendant "altered" their "data or devices"); *Zarif v. Hwareh.com, Inc.*, 2025 WL 486317, at *13 (S.D. Cal.

---

[10] Yahoo cites *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) as support for this requirement, but that decision is inconsistent with the Ninth Circuit's decision in *Christensen.*

[11] *In re Apple Inc. Device Performance Litig*., 347 F. Supp. 3d 434, 455 (N.D. Cal. 2018) (noting Rule 9(b) applies to CLRA, UCL, and FAL but making no such acknowledgment in sustaining CDAFA claims).

Feb. 13, 2025) (sustaining CDAFA claims where tracking technology "interfaced with [plaintiffs computer] and "made use of [her] data" from that computer"). Yahoo's reliance on *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1020 (C.D. Cal. 2020) is misplaced, as that case did not involve data at all but a "digital copy" of an "unpublished manuscript" which the court found was categorically distinct" from the subject matter covered by CDAFA. *Id.*

Section 502(c)(3). Plaintiffs allege Yahoo, through its own technology, used and accessed Plaintiffs' computers and browsers. ¶¶ 67, 78, 89. Yahoo's counter-factual narrative that its *customers* accessed Plaintiffs' devices must be rejected as disputing facts inappropriately on the pleadings. *See* Section III. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 132 (N.D. Cal. 2020) does not support Yahoo's position. There, the plaintiff's allegations were not only "boilerplate," but it did not appear "possible" that Apple could access their devices in light of the plaintiff's other allegations that their devices were "locked." Plaintiffs' allegations here are not just "possible" but supported through plausible allegations and actual examples.

Section 502(c)(7). There is no question that Yahoo accessed Plaintiffs' devices and browsers in violation of Section 502(c)(7). ¶¶ 67, 78, 89. Yahoo's assertion that it cannot be held liable unless it used "log-in credentials" or a "password" to access their devices and browsers is devoid of legal support. Nothing in *W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *6 (C.D. Cal. Oct. 6, 2017) supports this claim, as that decision merely noted that accessing an email account fell under 502(c)(3) (*i.e.*, it is "computer software" run on a computer) rather than 502(c)(7), which prevents accessing a "computer, computer system, or computer network" like Yahoo did here.

Section 502(c)(8). Yahoo's technology, which "consume[s] computer resources" and "modif[ies]" "record[s]" and "transmit[s] data" is a computer contaminant under 502(c)(8). *See In*

*re iPhone Application Litig.*, 2011 WL 4403963, at *13 (N.D. Cal. Sept. 20, 2011) (citing CDAFA § 502(c)(8)); *see also Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d at 656 (finding pixel technology that "log[s]" and "track[s]" actions qualifies as a "contaminant"). Yahoo's claim that it must "usurp[]" or "impair[] computers" is inconsistent with the plain text of this provision.

Sections 502(c)(2), (6), and (13). Throughout the Complaint, Plaintiffs detail how Yahoo accessed and used Plaintiffs' private data without consent or authorization. ¶¶ 6-11, 65-69, 72, 88-96. Yahoo's own authority confirms this is sufficient to allege violations under these subsections. *See* Mot. at 23 (citing *Christensen*, 828 F.3d at 789 (confirming "access" includes "taking, copying, or using" information "improperly"); *Broidy Cap. Mgmt. LLC v. Muzin*, 2020 WL 1536350, at *17 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) (confirming providing a "means of accessing" includes anyone who "make[s], procure[s], or furnish[es]" the "method" to access a computer system)). Yahoo's claim that it did not act "knowingly" in violation of these subsections fails for the reasons stated in Section IV.B, and its claim that it had "permission" and "consent" fail for the reasons stated in Section IV.A. Whether Yahoo did or did not have "permission" from its website customers does not change it did not have permission from *Plaintiffs* and the *Class* whose data it unlawfully accessed and used.

### G. Plaintiffs Plausibly Allege Privacy Claims

Courts evaluating common law and constitutional privacy claims evaluate whether: "(1) there exists a reasonable expectation of privacy, and (2) [if] the intrusion was highly offensive." *See Facebook Tracking*, 956 F.3d at 601. Plaintiffs' allegations that Yahoo secretly monitored and tracked them across the internet to develop individually identifiable profiles satisfies both these requirements. *See Riganian*, 2025 WL 2021802, at *3, 5-6 (finding secretly "tracking" individuals'

online "activity" to generate "uniquely identifying profiles" is a privacy intrusion); *Facebook Tracking*, 956 F.3d at 604 (9th Cir. 2020) (same); *Griffith*, 697 F. Supp. at 970 (same).

Yahoo's argument that Plaintiffs lack an expectation of privacy because they consented to Yahoo's conduct fails for the reasons stated in Section IV.A. The lack of consent here distinguishes this case from the two cases cited by Yahoo. *See* Mot. at 24 (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) (finding no expectation of privacy in athletic drug testing because defendant provided "advance notice and the opportunity to consent to testing"); *TBG Ins. Servs. Corp. v. Superior Ct.*, 96 Cal. App. 4th 443, 450 (2002) (finding no expectation of privacy because employee consented to workplace monitoring)).

Yahoo's argument that the data is not sufficiently sensitive to warrant an expectation of privacy equally fails. Mot. at 24. Consumers do not expect to be tracked and profiled across the internet by an unknown third party. *See Riganian,* 2025 WL 2021802, at *3. The cases Yahoo cites involving the collection of data from a single website are not comparable to Yahoo's expansive cross-platform surveillance here. Mot. at 24 (citing *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 525 (C.D. Cal. 2021) (collection of mouse clicks and keystrokes by session replay provider on Nike's website not sufficiently sensitive); *Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *4 (S.D. Cal. May 8, 2024) (same on Papa John's website); *Popa v. Microsoft Corp.*, No. 24-14, 2025 WL 2448824, at *5 (9th Cir. Aug. 26, 2025) (finding collection of "pet-store preferences and her street name" from a pet store website not sensitive). Indeed, Yahoo's own authority recognizes that the circumstances are *different* where a defendant develops comprehensive "profiles" that are not "limited" to a singular website. *Id.* (noting several cases have found privacy violations where the data collection is "vast" and involves "profil[ing]").

Yahoo's argument that its invasion was not "sufficiently serious" fails for the same reason. Subverting privacy-preserving technology to track individuals across the internet, and then using the surreptitiously gathered insights to profile and target them without notice and consent is quite serious, and courts have found similar profiling campaigns stated a claim. *See In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 599 (9th Cir. 2020) (explaining profiling based on "personal users' browsing histories" is an invasion of privacy); *Gabrielli*, 2025 WL 1939957, at *1, 10 (finding it sufficiently offensive where defendant tracks "IP address, browsing history, and user preferences" " to build behavioral profiles and serve targeted advertising").

Yahoo cannot avoid this outcome by citing cases about mailing coupons, or merely obtaining someone's name and address, among other less-offensive conduct than what it engages in here. *See* Mot. at 25 (citing *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (involving receipt of home addresses to mail coupons); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (obtaining name and home address but "not allegation as to what Uber did, if anything, with this information); *Hubbard v. Google LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024) (involving collection of data from Google's own web properties, such as YouTube); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (involving collection of app usage data from apps downloaded from Apple's App Store and running on Apple's own devices)).

Its claim that Plaintiffs lack a "legally protected privacy interest" is also baseless. Mot. at 25. While Yahoo would like to pretend this case concerns four isolated websites, Plaintiffs' claims are based on Yahoo's creation of individual profiles from their private activity across a substantial portion of internet, including medical and financial websites that undoubtably involve the transmittal of inherently sensitive information. *See* ¶¶ 104-105. Plaintiffs have a legally protected

privacy interest not to be profiled by Yahoo in *any* manner, but especially not across thousands of web properties. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603-04 (9th Cir. 2020) (finding that Facebook's compiling of "highly personalized profiles" across "countless websites" invaded plaintiffs' "privacy interests"). At this stage, Plaintiffs do not need to plead anything more than that, including the "specific . . . substance of the intercepted communication." *See* Mot. at 25; *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1259 (N.D. Cal. 2024) (rejecting argument that plaintiffs must, "in the absence of discovery" allege "what information was tracked" to state privacy claims).

Yahoo's cases are again distinguishable, involving nothing like the big-brother tactics it engages in. Mot. at 25-26 (citing *Lewis v. Superior Court*, 397 P.3d 1011, 1018 (Cal. 2017) (no violation of a "legally protected privacy interest" when an administrative agency obtained patient information in an investigation into "unprofessional conduct" in light of "government's interest"); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 (N.D. Cal. 2014) (evaluating whether Yahoo users have an expectation of privacy against Yahoo scanning emails on their own server and noting these users may have a "legally protected privacy interest" but that the allegations were "fatally conclusory"); *Zbitnoff v. Nationstar Mortg., LLC*, 2014 WL 1101161, at *4 (N.D. Cal. Mar. 18, 2014) (plaintiff alleged nothing more than "she provided 'private information' to defendants as a requirement for obtaining mortgage" without ever describing what information was provided).

### H. Plaintiffs Plausibly Allege GBL Claims

To establish a GBL § 349 claim, a plaintiff must allege: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. California Nat. Living, Inc.*, 2019 WL 1046662, at *7 (S.D.N.Y. Mar. 5, 2019). Plaintiffs readily meet these requirements.

***GBL Standing***. Plaintiff Lowery, a New York resident, is entitled to bring a GBL claim. Yahoo's own cited authority confirms the same. *See* Mot. at 26 (citing *Chiste v. Hotels.com L.P.,* 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (explaining violation would occur where "each plaintiff used the Internet" which would be in their "home state" unless otherwise alleged); *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020) (explaining a plaintiff can bring a GBL claim where they "directly participated" in a "marketplace located in New York")).[12]

Yahoo speculates it is possible that Lowery was *always* outside of the state where he lives *every time* he accessed any of the thousands of websites using Yahoo's tracking technology. The Complaint is clear that Yahoo's tracking was not one-off or related to isolated website visits—it was a constant surveillance campaign across a broad swath of common web properties. ¶¶ 60-61, 68-69, 97-106. Yahoo's speculation about an implausible counterfactual possibility is inconsistent with the requirement that the Court "draw[] all reasonable inferences in favor of the plaintiff" in ruling on a 12(b)(6) motion. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1015 (drawing "reasonable inference" plaintiffs were in New York at the time of the violation because they were "New York residents").

***Deceptive or Materially Misleading Conduct***. Whether conduct is deceptive or materially misleading turns on whether a "reasonable consumer acting reasonably" would be misled "under the circumstances." *Kane v. Univ. of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *16 (W.D.N.Y. Mar. 19, 2024). Yahoo's conduct is materially misleading because Yahoo did not disclose it was secretly collecting consumers' data and profiling them across the internet and, in

---

[12] Yahoo's reliance on *Doe v. Call-On DOC, Inc.*, 2025 WL 1677632, at *6 (S.D. Cal. June 13, 2025) is misplaced, as that decision was evaluating personal jurisdiction in California against an out-of-state defendant, not the viability of GBL claims.

fact, advised its *own* customers they need not *bother* mentioning Yahoo's conduct because it itself would make adequate disclosures, which it did not do.[13] Yahoo's statement to consumers it does "not share personally identifiable information," ¶ 8, could hardly be more misleading given that it is in the business of doing exactly that through ConnectID; *see also* ¶ 72, 132-138. These non-disclosures and misleading statements—either alone or considered together—are sufficient to allege GBL claims. *See Kane*, 2024 WL 1178340, at *16 (finding use of similar tracking technology, which was represented not to include any "personally identifiable information" but was accompanied by a "Facebook ID" that could be used to identify users, was materially misleading); *Nick v. Target Corp*., 2017 WL 10442061, at *4 (E.D.N.Y. Sept. 13, 2017) (finding use of data for an undisclosed purpose deceptive under GBL); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383 (S.D.N.Y. 2024) (GBL § 349 claim stated where website's Privacy Policy said information would not be shared but Plaintiffs allege it was shared via surreptitious tracking technology). The cases Yahoo cites are not comparable and failed to allege any misleading conduct whatsoever. *See* Mot. at 27 (citing *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (making "no reference" to specific acts, representations, or omissions by the defendant); *Rider v. Uphold HQ Inc.*, 657 F. Supp. 3d 491, 499 (S.D.N.Y. 2023) (similar).[14]

***Injury***. Numerous courts agree that "injury" under Section 349 encompasses invasions of privacy. *See Meyerson v. Prime Realty Services, LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. 2005)

---

[13] Yahoo's claim that it does not obtain or use "personally identifiable information" (Mot. at 27) is inconsistent with the complaint. ¶¶ 6, 61-66. Its separate claim it made adequate disclosures is wrong for the reasons stated in Section IV.A.

[14] Yahoo's claim that its statements to its own clients are irrelevant is wrong. *INV Accelerator, LLC v. MX Techs., Inc.*, 2020 WL 882902, at *6-7 (S.D.N.Y. Feb. 24, 2020) does not support this claim, but merely found that *conduct* directed at "startups and entrepreneurs" did not generally fall under the GBL. *Yahoo's conduct*—which targeted millions of individual consumers—undoubtably meets the "consumer-oriented" conduct requirement.

("[I]t cannot be doubted that a privacy invasion claim … may be stated under GBL § 349); *Bose v. Interclick, In*c.,2011 WL 4343517, at *9 (S.D.N.Y. Aug. 17, 2011) ("[C]ourts have recognized … privacy violations as injuries for purposes of Section 349"); *see also Cooper v. Mount Sinai Health Sys., Inc*., 2024 WL 3586357, at *10 (S.D.N.Y. July 30, 2024) (same); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1038 (N.D. Cal. 2019) (same). Yahoo's claim that the data it collected, used, and monetized through individually identifiable profiles is not "sensitive" enough to constitute injury is an affront to the privacy rights of the millions of individuals it harmed. Mot. at 28. The cases it cites do not support this claim. *See* Mot. at 28 (citing *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *11 (S.D.N.Y. Aug. 17, 2016) (recognizing that if the defendant could "link that information to a specific person[]" then it may be a privacy harm); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *4, *7-8 (S.D.N.Y. July 12, 2018) (recognizing trying to identify individual consumers through computer code may be a "tort" and is "unsettling" but finding that alone does not fall under the Wiretap's crime-fraud exception to one-party consent, which is not at issue here).[15]

***Causation***. The GBL's causation requirement is satisfied so long as the plaintiff alleges they "would not have" entered into the transaction with the defendants "if not for [defendants'] deceptive acts." *Boateng v. BMW* AG, 2024 WL 4471151, at *17 (E.D.N.Y. Oct. 11, 2024). The GBL does not contain a separate reliance requirement. *See Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000). Plaintiffs' allegations here, that they would not have otherwise used websites with Yahoo's technology and would not have otherwise suffered privacy violations, are sufficient.

[15] *Shostack v. Diller*, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016), which Yahoo also cites, is distinguishable because the "unquantifiable" privacy injury alleged in that case was merely running a credit report without first verifying whether the request was "legitimate."

Yahoo relies exclusively on cases involving *affirmative* representations, where plaintiffs failed to allege they ever saw those statements, defeating a finding of causation. Mot. at 29 (citing *Oden v. Boston Scientific Corp*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) (failure to allege plaintiff ever "saw" the allegedly false statements in a "brochure"); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (similar); *Whalen v. Pfizer, Inc.*, 862 N.Y.S.2d 812, at *3 (Sup. Ct. 2005) (similar)). Those cases have no applicability here, where Plaintiffs' claims are premised primarily on *omissions* and Yahoo's false statements to its *own* customers, which prevented Plaintiffs from ever uncovering Yahoo's secretive and invasive tracking and profiling activities.

### I. Plaintiffs Plausibly Allege Unjust Enrichment

Plaintiffs allege that Yahoo receives benefits from Plaintiffs by intercepting and monetizing "their unique identifiers" and other valuable private data, ¶¶ 116-122, while Plaintiffs are "harmed" as a result of Yahoo's comprehensive and extremely invasive profiling of them across the internet. ¶¶ 91, 234-238. Plaintiffs further alleged that they "would not have" provided any such data had they "known of Yahoo's misconduct. ¶ 236. These are sufficient to allege an unjust enrichment claim under California or, alternatively, New York law.[16] *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1009 (sustaining unjust enrichment claim premised on allegation that defendant "received, used, and/or sold Plaintiffs' . . . confidential tax and financial information"); *Kane*, 2024 WL 1178340 (sustaining unjust enrichment claim where plaintiffs alleged they would not have

[16] Plaintiffs maintain that deciding choice of law is premature at this stage. *See Bristol–Myers Squibb Co. v. Matrix Lab'ys Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (recognizing that "choice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage").

used defendant's services "had they known about Defendant's disclosure of their Private Information").

Plaintiffs' unjust enrichment claim is not duplicative of other claims, like Yahoo suggests. Mot. at 30. While Plaintiffs' legal claims capture Yahoo's interception, collection, and profiling, they are not adequate to capture Yahoo's subsequent monetization and ongoing use of this data for its own benefit. Courts routinely recognize equitable claims, like unjust enrichment, are proper to capture this type of conduct. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d at 1009 (sustaining unjust enrichment claim where defendant "used, and/or sold" plaintiffs' confidential information and "benefited financially by doing so"); *Boelter v. Hearst Commc'ns, Inc.*, 269 F. Supp. 3d 172, 199 (S.D.N.Y. 2017) (similar).[17]

Yahoo's cited authority, which involve actually duplicative claims, or no allegations of loss at all, are therefore distinguishable. Mot. at 30 (citing *Patellos v. Hello Prods., LLC*, 523 F. Supp. 3d 523, 537 (S.D.N.Y. 2021) (unjust enrichment was entirely duplicative of false advertising claim); *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 167 (S.D.N.Y. 2023) (no dispute unjust enrichment was duplicative of other legal claims); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 386 (S.D.N.Y. 2024) (dismissing unjust enrichment because it was duplicative of implied contract claim); *Edelman v. Starwood Cap. Grp., LLC* A.D.3d 246, 247 (N.Y. App. Div. 2009) (plaintiff did not "suffer any loss" because he had "abandoned" attempts to acquire a company); *Mount*, 684 F. App'x 32, 35-37 (2d Cir. 2017) (no allegations of loss)).[18]

---

[17] Yahoo's argument about "duplicative" unjust enrichment claims is also specific to New York law, and does not apply to unjust enrichment claims under California and Vermont Law. *In re Chantix (Varenicline) Mktg.*, Sales Pracs. & Prods. Liab. Litig. (No. II), 735 F. Supp. 3d 352, 404 (S.D.N.Y. 2024).

[18] California law, in particular, does not require a corresponding loss. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (allowing unjust

### J. Plaintiffs Are Entitled to Injunctive Relief

Because Plaintiffs are at risk of future harm so long as Yahoo has their data, and its technology remains undetectable across the web, injunctive relief is proper. *See Gutierrez v. Lemonade, Inc.*, No. 21-CV-7070, 2022 WL 3214852, at *5 (S.D.N.Y. Aug. 9, 2022) (sustaining injunctive relief claim where defendant' "storage and use of the plaintiffs' data is ongoing"). Yahoo's claim that there is no future risk of harm because they will not encounter this technology "in the future" (Mot. at 31 (citing *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020)) ignores the widespread nature of Yahoo's conduct and that consumers cannot identify and detect this inconspicuous technology by themselves.

## V. CONCLUSION

Yahoo's Motion to Dismiss should be denied for each of the reasons described herein.

Dated: October 17, 2025

*/s/ Gary M. Klinger*
Christian Levis
Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Interim Lead Class Counsel*

Vicki J. Maniatis (NY Bar No. 2578896)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
Tel.: (516) 491-4665
vmaniatis@milberg.com

Gary M. Klinger (*pro hac vice*)

---

enrichment claim to proceed "even if the plaintiffs suffered no economic loss from the disclosure of their information").

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Charles E. Schaffer (*pro hac vice*)
Nicholas J. Elia (*pro hac vice* forthcoming)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

Brett Cohen
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Phone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,405 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 17, 2025 *<u>/s/ Gary M. Klinger</u>*