**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO INC. and YAHOO AD TECH LLC,<br><br>Defendants. | Case No. 1:25-cv-2797-DLC<br><br>Hon. Denise L. Cote |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CASE

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 1

A. Yahoo's Arbitration Agreements ........ 1

1. 2018 Terms ........ 2

2. 2025 Terms ........ 5

B. Plaintiffs' Assent to Yahoo's Arbitration Agreements ........ 7

C. Plaintiffs' Allegations ........ 9

D. Procedural History ........ 10

III. LEGAL STANDARD ........ 10

IV. ARGUMENT ........ 11

A. Yahoo's Motion Is Timely ........ 12

B. The FAA Governs the Arbitration Agreement in Yahoo's Terms of Service ........ 12

C. The Current Accountholders Agreed to Arbitrate Their Disputes with Yahoo ........ 13

1. The Current Accountholders Repeatedly Assented to Yahoo's Terms ........ 13

2. The Arbitration Procedures in the 2025 Terms Apply to the Current Accountholders' Claims ........ 16

D. Any Questions About the Scope and Enforceability of the Arbitration Agreement Should Be Resolved by the Arbitrator ........ 18

E. If the Court Addresses the Enforceability or Scope of Yahoo's Terms, It Should Conclude That Yahoo's Arbitration Agreement Is Enforceable and Applies to the Current Accountholders' Claims ........ 20

1. The Arbitration Agreement Is a Valid Contract ........ 20

2. The Arbitration Agreement Is Not Unconscionable ........ 22

3. The Arbitration Agreement Covers Plaintiffs' Claims ........ 24

F. Litigation Should Be Stayed While Arbitration Proceeds ........ 26

V. CONCLUSION ........ 29

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc.*,
2019 WL 623864 (S.D.N.Y. Feb. 14, 2019)....21

*Aekyung Co. v. Intra & Co.*,
2000 WL 1521202 (S.D.N.Y. Oct. 13, 2000)....28

*Al Thani v. Hanke*,
2021 WL 4311391 (S.D.N.Y. Sept. 21, 2021)....20

*Alvarez v. Experian Info. Sols., Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023)....12

*Bassett v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015)....16, 21

*Birmingham Assocs. Ltd. v. Abbott Lab'ys*,
547 F. Supp. 2d 295 (S.D.N.Y. 2008)....28

*Brevard v. Credit Suisse*,
2024 WL 36991 (S.D.N.Y. Jan. 3, 2024)....18

*BSG Res. (Guinea) Ltd. v. Soros*,
2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017)....26, 27

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)....13

*Byrne v. Charter Commc'ns, Inc.*,
581 F. Supp. 3d 409 (D. Conn. 2022)....27, 28

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019)....16

*Catz v. Precision Glob. Consulting*,
2021 WL 1600097 (S.D.N.Y. Apr. 23, 2021)....23, 24

*In re Celsius Network LLC*,
647 B.R. 631 (Bankr. S.D.N.Y. 2023)....14

*Chen-Oster v. Goldman, Sachs & Co.*,
449 F. Supp. 3d 216 (S.D.N.Y. 2020)....22

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)....27

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005)....19

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**


*Daly v. Citigroup, Inc.*,
939 F.3d 415 (2d Cir. 2019)....................11, 12

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
923 F.2d 245 (2d Cir. 1991)....................24

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)....................11

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015)....................13

*Doyle v. UBS Fin. Servs., Inc.*,
144 F.4th 122 (2d Cir. 2025)....................12

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018)....................11

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................24

*Getz v. Verizon Commc'ns, Inc.*,
2018 WL 5276426 (S.D.N.Y. Oct. 24, 2018)....................11

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019)....................18

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*,
363 F.3d 137 (2d Cir. 2004)....................13

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015)....................26

*Kim v. Evergreen Adult Day Care in NY Inc.*,
2024 WL 989909 (E.D.N.Y. Mar. 6, 2024)....................27

*Kuehn v. Citibank, N.A.*,
2012 WL 6057941 (S.D.N.Y. Dec. 6, 2012)....................22

*Levy v. Credit Plus, Inc.*,
2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023)....................14

*Marciano v. DCH Auto Grp.*,
14 F. Supp. 3d 322 (S.D.N.Y. 2014)....................22

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)....................28, 29

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
514 U.S. 52 (1995)....................13

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*McDougall v. Samsung Elecs. Am., Inc.*,
2023 WL 6445838 (S.D.N.Y. Oct. 3, 2023) ....................23

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................13, 14, 15, 16

*Molina v. Kaleo, Inc.*,
363 F. Supp. 3d 344 (S.D.N.Y. 2019) ....................23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ....................13

*O'Callaghan v. Uber Corp. of Cal.*,
2018 WL 3302179 (S.D.N.Y. July 5, 2018) ....................23

*Oestreicher v. Equifax Info. Servs., LLC*,
2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024) ....................17, 22

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.*,
2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000) ....................28

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ....................19, 24

*Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*,
2000 WL 1457079 (S.D.N.Y. Sept. 28, 2000) ....................20, 22

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) ....................15

*Purcell v. Navient Sols., LLC*,
2019 WL 188693 (S.D.N.Y. Jan. 14, 2019) ....................24

*Reid v. Supershuttle Int'l, Inc.*,
2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ....................17

*Rent-A-Ctr., W. Inc. v. Jackson*,
561 U.S. 63 (2010) ....................18

*Roberts v. Edith Roman Holdings, Inc.*,
2011 WL 2078223 (S.D.N.Y. May 19, 2011) ....................17

*Roitman v. T-Mobile USA Inc.*,
2025 WL 3156503 (E.D.N.Y. July 28, 2025) ....................23

*Rothstein v. Auto Club S.*,
2019 WL 5722215 (S.D.N.Y. Aug. 26, 2019) ....................21

*Sacchi v. Verizon Online LLC*,
2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) ....................15

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*Saizhang Guan v. Uber Techs., Inc.*,
236 F. Supp. 3d 711 (E.D.N.Y. 2017) ....................17, 18

*Schwartz v. Sterling Ent. Enters.*,
2021 WL 4321106 (S.D.N.Y. Sept. 23, 2021)....................19

*Shore v. Parklane Hosiery Co.*,
565 F.2d 815 (2d Cir. 1977)....................27

*Smith v. Spizzirri*,
601 U.S. 472 (2024)....................26

*Sollinger v. SmileDirectClub, LLC*,
2020 WL 774135 (S.D.N.Y. Feb. 18, 2020)....................16

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
592 F.3d 329 (2d Cir. 2010)....................24

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960)....................24

*Valle v. ATM Nat'l, LLC*,
2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ....................15

*Wang v. Haitou Glob. (Cayman) Inc.*,
2025 WL 618612 (S.D.N.Y. Feb. 25, 2025)....................10

*Wu v. Uber Techs., Inc.*,
43 N.Y.3d 288 (2024) ....................13, 14, 15

**Statutes**

9 U.S.C. § 2....................13

9 U.S.C. § 3....................1, 26

9 U.S.C. § 4....................12

## I. INTRODUCTION

More than seven months after bringing this case, plaintiffs recently disclosed to Yahoo that they are or were Yahoo accountholders. Yahoo accountholders are subject to Yahoo's Terms of Service, which contain a broad, clear, and conspicuous arbitration clause requiring arbitration of any and all claims against Yahoo. Five of the six plaintiffs—Davis, Hunting, Corvi, Hackett, and Lowery—have active Yahoo accounts, and Yahoo's records demonstrate that they agreed to the arbitration clause. Their claims must be arbitrated, and the case must be stayed as to them. *See* 9 U.S.C. § 3.

The sixth plaintiff—Baker—also created two Yahoo accounts, but they were deactivated for inactivity; as a result, Yahoo is currently unable to determine from its records whether he agreed to the arbitration clause, and therefore is not presently moving to compel arbitration of his claims.[1] Nevertheless, the case should be stayed in full because a stay of Baker's claims while the same claims proceed through arbitration would avoid potential preclusion issues, promote judicial economy, and prevent prejudice to Yahoo.

The Court should compel arbitration for Davis, Hunting, Corvi, Hackett, and Lowery, and should stay the case in full pending resolution of those proceedings.

## II. FACTUAL BACKGROUND

### A. Yahoo's Arbitration Agreements

Yahoo provides a wide range of online products and technologies—such as email and advertising-related tools like ConnectID—through its websites, applications, and platforms. Yahoo's Terms of Service ("Terms" or "TOS"), which govern all uses of Yahoo's products and technologies, collectively refer to these offerings as "Services." *See* Gurwin Decl. Ex. 1 § 1 ("2018

[1] Yahoo reserves the right to move to compel arbitration of Baker's claims if it later discovers he agreed to the arbitration clause.

TOS"); Ex. 4 § 1 ("March 2025 TOS"); Ex. 6 § 1 ("May 2025 TOS"). Yahoo has always required users of its Services to accept its Terms when they sign up for an account.

**1. 2018 Terms**

In April 2018, Yahoo updated its Terms and introduced an arbitration clause. 2018 TOS § 14.2. The 2018 Terms informed users in bold and capital letters at the beginning of the document that they contained an arbitration agreement:

> **U.S. USERS: THESE TERMS CONTAIN A BINDING ARBITRATION AGREEMENT AND CLASS ACTION AND JURY TRIAL WAIVER CLAUSES IN SECTION 14.2 BELOW, WHICH ARE APPLICABLE TO ALL U.S. USERS**

2018 TOS § 1. The reference to Section 14.2 links directly to the arbitration clause, which stated in bold and capital letters:

> **BINDING ARBITRATION AGREEMENT. AGREEMENT TO ARBITRATE FOR U.S. USERS. YOU AND US BOTH AGREE TO RESOLVE ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS THAT IN ANY WAY ARISE OUT OF OR RELATE TO THESE TERMS OR FROM ANY SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH SERVICES) … ONLY BY ARBITRATION ON AN INDIVIDUAL BASIS OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY AGREEING TO THESE TERMS, ARBITRATION OR A SMALL CLAIMS ACTION WILL BE THE SOLE AND EXCLUSIVE MEANS OF RESOLVING ANY DISPUTE BETWEEN US. YOU ALSO UNDERSTAND THAT BY AGREEING TO THESE TERMS, YOU AND WE ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY (EXCEPT FOR MATTERS THAT MAY BE BROUGHT IN SMALL CLAIMS COURT), AND THAT YOU AND WE ARE GIVING UP THE RIGHT TO PROCEED WITH ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION.**

*Id.* § 14.2(b). The arbitration clause further explained that the Federal Arbitration Act ("FAA") applied and set out the governing procedures, including that the user was agreeing to a class action waiver and that Yahoo would reimburse users for filing, administrative, and arbitrator fees. *Id.* §§ 14.2(b)(ii), (v), 14.2(c). The Terms also stated that Yahoo "may modify the Terms from time to time" and that users' "continued use … after the effective date of any modifications to the Terms

means that [the user] agree[s] to the Terms as modified." *Id.* §§ 12(b)-(c); *see also id.* § 3(c) (Yahoo may notify users of changes via email).

Users who created a Yahoo account after the 2018 Terms went into effect were required to agree to those Terms as part of the account creation process. Gurwin Decl. ¶ 6. For users who had already created their Yahoo accounts before the 2018 Terms went into effect, Yahoo implemented a notification system to obtain assent to the updated Terms. Users who logged into their Yahoo accounts on a desktop computer or mobile device would see a notification that Yahoo had updated its Terms of Service, highlighting "key updates"—including the addition of a "mutual arbitration clause" and "class action waiver." Gurwin Decl. ¶¶ 7-12, Exs. 2-3. The notification provided hyperlinks to the new Terms and advised users to "read them carefully." *Id.*






The notification concluded with two choices: "I Accept" or "I'll do this later." *Id.* The user had to scroll through the entire notification to be able to click on either of those options. *Id.*




After being introduced in April 2018, Yahoo's arbitration agreement was not substantively modified until March 2025. Gurwin Decl. ¶ 13.

**2. 2025 Terms**

On March 7, 2025, Yahoo updated its Terms and made changes to the arbitration clause. Gurwin Decl. ¶ 14. As with the 2018 Terms, the March 2025 Terms conspicuously alert users that they contain an arbitration clause and link directly to Section 14.2. March 2025 TOS § 1. The modifications largely concern procedural issues and provide for a 30-day "right to opt out and not be bound by the Arbitration Agreement." *Id.* § 14.2(b)(ix).

Yahoo notified all existing Yahoo accountholders between March 13 and April 8, 2025, about these updated terms via an email with the subject line: "Important updates to our Terms of Service." Gurwin Decl. ¶ 15, Ex. 5. The email specifically noted that Yahoo updated its Terms with respect to "how [Yahoo] will resolve any disputes that may arise over the use of [its] services." Gurwin Decl. Ex. 5. It included a link to the revised Terms, encouraged users to review them, and informed recipients that "[b]y continuing to use [Yahoo's] services, [users] accept and agree to the[] updated Terms." *Id.*

On May 15, 2025, Yahoo made minor changes to the arbitration clause, including changing the opt-out deadline from 30 days after March 7 (the date the arbitration agreement was first revised) to 30 days after the user's agreement to the May 2025 Terms. *See* Gurwin Decl. ¶ 16; May 2025 TOS § 14.2(b)(ix). The arbitration clause has not been substantively modified since May 2025. Gurwin Decl. ¶ 18.[2]

Following these changes and the email notice, Yahoo implemented a system to ensure that accountholders would be required to affirmatively agree to the Terms in order to continue using the Services. Gurwin Decl. ¶ 17, Ex. 7. Under this system, which is still in place, Yahoo displays notifications to users after they log into their Yahoo account on a desktop computer, in a mobile

[2] Unless otherwise noted, references to the "2025 Terms" and citations to the "2025 TOS" refers to the May 2025 Terms.

application, or on a mobile browser, and also displays notifications to users when their logged-in sessions are automatically extended. *Id.* The notification explains that Yahoo "updated [its] Terms of Service," includes a blue, underlined hyperlink to the 2025 Terms, and provides the option for users to click "Agree," meaning they "accept and agree to these updated Yahoo Terms of Service." *Id.*









On a desktop computer or mobile browser, a user can close the notification without agreeing to Yahoo's Terms, but the user would see the notification again the next time they log into their account or when their session is extended. Gurwin Decl. ¶ 17. On the mobile application, a user can similarly dismiss the notification, but the notification will continue to be shown until the user clicks "Agree." *Id.*

**B. Plaintiffs' Assent to Yahoo's Arbitration Agreements**

Plaintiffs Lowery, Davis, Hackett, Hunting, and Corvi (the "Current Accountholders") are Yahoo accountholders who signed up for accounts with Yahoo between 2002 and 2024. *See* Gurwin Decl. ¶¶ 22, 29, 37, 42, 47; Third Amended Complaint ("TAC") ¶¶ 19-48. As set forth below, all of them expressly and repeatedly agreed to Yahoo's Terms, including the arbitration provision. Plaintiff Baker also signed up for Yahoo accounts "approximately a decade ago," TAC ¶ 15, but those accounts were later deactivated for inactivity and Yahoo is unable at this time to determine whether Baker assented to the Terms. Gurwin Decl. ¶ 52.

- **Lowery** assented to the 2018 Terms on November 23, 2022, when he created his Yahoo account and was required to agree to the Terms. Gurwin Decl. ¶¶ 23-25. He

later assented to the 2025 Terms: he received email notice of the changed Terms on March 15, 2025, and continued to use his Yahoo account, he affirmatively clicked "Agree" to the 2025 Terms on December 18, 2025, and he did not opt out of arbitration by the deadline of January 17, 2026. *Id.* ¶¶ 26-28.

- **Davis**, who has four different Yahoo accounts, assented to the 2018 Terms four times. While logged into various Yahoo accounts created before 2018, he affirmatively clicked "I Accept" on November 10, 2018, January 24, 2019, and May 5, 2020. *Id.* ¶ 30. He also created a new, additional Yahoo account on April 15, 2024, and accepted the 2018 Terms as part of the account creation process. *Id.* ¶ 31-33. Davis later assented to the 2025 Terms: he received email notice to each account of the changed Terms on March 14 and 15, 2025, and continued to use all four Yahoo accounts, for two of the accounts, he affirmatively clicked "Agree" to the 2025 Terms on September 19 and 23, 2025, and he did not opt out by the deadlines of October 19 and 23, 2025. *Id.* ¶¶ 34-36.
- **Hackett** assented to the 2018 Terms on April 25, 2018 by clicking "I Accept" in response to Yahoo's notification. *Id.* ¶ 38. He later assented to the 2025 Terms: he received email notice of the changed Terms on March 15, 2025, and continued to use his Yahoo account, he affirmatively clicked "Agree" to the 2025 Terms on October 14, 2025, and he did not opt out by the deadline of November 13, 2025. *Id.* ¶¶ 39-41.
- **Hunting** assented to the 2018 Terms on May 18, 2018 by clicking "I Accept" in response to Yahoo's notification. *Id.* ¶ 43. He later assented to the 2025 Terms: he received email notice of the changed Terms on March 15, 2025, and continued to

use his Yahoo account, he affirmatively clicked "Agree" to the 2025 Terms on October 22, 2025, and he did not opt out by the deadline of November 23, 2025. *Id.* ¶¶ 44-46.

- **Corvi** assented to the 2018 Terms on April 13, 2018 by clicking "I Accept" in response to Yahoo's notification. *Id.* ¶ 48. He later assented to the 2025 Terms: he received email notice of the changed Terms on March 14, 2025, and continued to use his Yahoo account, he affirmatively clicked "Agree" to the 2025 Terms on November 20, 2025, and he did not opt out by the deadline of December 20, 2025. *Id.* ¶¶ 49-51.

### C. Plaintiffs' Allegations

Plaintiffs brought this suit in 2025 alleging that third-party websites used one of Yahoo's online tools, ConnectID, to send Yahoo information reflecting their online activity. In each iteration of the complaint, plaintiffs alleged that they maintained online accounts at these third-party websites; they did not allege that they held any accounts with Yahoo. Dkt. 46 ("SAC") ¶¶ 13-42. Plaintiffs claim that when they created or logged into their accounts on these websites, Yahoo (1) "intercepted" their email addresses; (2) used those email addresses to assign or generate a ConnectID profile; (3) tracked plaintiffs "across the internet and developed a unique user profile"; and (4) intercepted plaintiffs' "searches" and "full-string URLs" without their consent. *Id.* Based on these allegations, plaintiffs brought claims for violation of New York and California state privacy and consumer protection laws (Counts I, IV-VII); invasion of privacy under California common law and the California Constitution (Counts II, III); unjust enrichment (Count VIII); and injunctive relief (Count IX). *Id.* ¶¶ 153-242.

**D. Procedural History**

Yahoo moved to dismiss the First and Second Amended Complaints on the merits. Dkts. 40, 49. The information in the complaints—plaintiffs' first and last names, states of residence, and the fact that they maintained accounts with third-party websites—did not allow Yahoo to determine whether plaintiffs held Yahoo accounts or agreed to Yahoo's Terms. Gurwin Decl. ¶¶ 19-20. Yahoo can affirmatively identify users only if the user provides certain information, such as their Yahoo account username, their email address, or the phone number linked to their account. *Id.* ¶ 19. In both of its motions to dismiss, Yahoo stated that if it "determines, or plaintiffs disclose, at a later date that plaintiffs are Yahoo accountholders, Yahoo reserves the right to compel plaintiffs' claims to arbitration." Dkt. 41 at 7 n.6; Dkt. 50 at 10 n.7.

After this Court ordered plaintiffs to amend the complaint to allege more facts about whether they consented to Yahoo's alleged receipt of data about them, Dkt. 62, plaintiffs pleaded for the first time that they are all Yahoo users. *See* TAC ¶¶ 13-42. Around the same time, in correspondence dated November 21 and December 2, 2025, plaintiffs disclosed their Yahoo account usernames—information that Yahoo could not have identified from its business records with only plaintiffs' names and approximate account creation dates, the only information about plaintiffs that had been pleaded in any of the complaints. Arber Decl. ¶¶ 3-4; Gurwin Decl. ¶¶ 19-21. In light of the new information, Yahoo now moves to compel the Current Accountholders (Lowery, Davis, Hackett, Hunting, and Corvi) to arbitrate their claims.

## III. LEGAL STANDARD

On a motion to compel arbitration, courts apply a standard similar to the summary judgment standard and "consider 'all relevant, admissible evidence submitted by the parties and contained in pleadings,' including affidavits." *Wang v. Haitou Glob. (Cayman) Inc.*, 2025 WL 618612, at *2 (S.D.N.Y. Feb. 25, 2025) (Cote, J.). The FAA "establishes a 'liberal federal policy

favoring arbitration agreements,' requiring courts 'rigorously to enforce arbitration agreements according to their terms.'" *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018)); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed" (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985))). A "party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Getz v. Verizon Commc'ns, Inc.*, 2018 WL 5276426, at *2 (S.D.N.Y. Oct. 24, 2018) (Cote, J.) (citation omitted). Courts "routinely enforce agreements to arbitrate within the context of putative class actions." *Id.*

## IV. ARGUMENT

Now that five of the six plaintiffs have disclosed that they created Yahoo accounts and agreed to the arbitration clause in Yahoo's Terms, Yahoo moves to compel arbitration and stay this proceeding. Under the FAA, a court must compel arbitration if the parties have agreed to arbitrate disputes. The five Current Accountholders repeatedly assented to Yahoo's arbitration clause, both by affirmatively agreeing to Yahoo's Terms and by using Yahoo's services. Their claims must be resolved by an arbitrator and must be stayed here pending arbitration. And while those arbitrations proceed, this case also should be stayed as to the sixth plaintiff in light of potential preclusion issues, to promote judicial efficiency, and to prevent prejudice to Yahoo.

Plaintiffs should not be permitted to evade their contractual obligation to arbitrate. The parties agreed to delegate questions of arbitrability to the arbitrator, so any argument that Yahoo's Terms do not apply must be decided by the arbitrator. And even if the Court were to address those questions, the Terms are clearly valid, effective, and applicable to the claims alleged in this case.

The Court should compel the Current Accountholders to arbitrate their claims and stay this proceeding in full.

**A. Yahoo's Motion Is Timely**

Because Yahoo only recently learned that the Current Accountholders agreed to arbitration, this motion is timely. The information disclosed in plaintiffs' prior complaints did not permit Yahoo to determine whether plaintiffs had Yahoo accounts, when they created those accounts, or if and when they agreed to Yahoo's Terms. Gurwin Decl. ¶¶ 19-21.

Yahoo learned for the first time that each plaintiff was a Yahoo accountholder when plaintiffs' counsel informed Yahoo of that fact by correspondence dated November 21 and December 2, 2025. Arber Decl. ¶¶ 3-4. On December 3, in the TAC, plaintiffs then disclosed the date each account was created. Dkt. 64. On December 11, Yahoo informed the Court and plaintiffs' counsel that it was evaluating a motion to compel arbitration. *See* Dkt. 65. No discovery or other merits briefing has since occurred in this case. *See* Dkt. 32 (ordering stay of discovery).

Additionally, in its prior briefing, Yahoo alerted plaintiffs and the Court that it would have grounds to arbitrate if it later discovered that plaintiffs were Yahoo accountholders. Yahoo has thus acted at all times consistently with its right to arbitrate. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 31 (E.D.N.Y. 2023) (no waiver after eighteen months of discovery because defendant moved to arbitrate shortly after learning of plaintiff's account and arbitration agreement), *aff'd*, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024); *see also Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 130 (2d Cir. 2025) (waiver depends on whether "the moving party knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right").

**B. The FAA Governs the Arbitration Agreement in Yahoo's Terms of Service**

The FAA requires courts to compel arbitration "in accordance with the terms" of a valid agreement to arbitrate. 9 U.S.C. § 4; *see Daly*, 939 F.3d at 41. Where the terms of an agreement

indicate that the parties agreed to be bound by the FAA, "ambiguities as to the scope of the arbitration clause [are] resolved in favor of arbitration," *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62-64 (1995) (citation omitted), and "challenge[s] to the validity of the contract as a whole" are resolved by the arbitrator, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 442-43, 449 (2006). *See also e.g.*, *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58-59 (2015). Here, Yahoo's Terms expressly invoke the FAA, so the FAA governs the interpretation of the Terms and the arbitration clause contained in them. May 2025 TOS § 14.2(b)(ii); March 2025 TOS § 14.2(b)(ii); *see also* 2018 TOS § 14.2(b)(ii).

**C. The Current Accountholders Agreed to Arbitrate Their Disputes with Yahoo**

The FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must "move" parties "out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Because the parties here agreed to delegate threshold issues of arbitrability to the arbitrator, *infra* Section IV.D, the only question for the Court to decide is whether the parties entered into a contract that included an arbitration agreement. They unquestionably did.

**1. The Current Accountholders Repeatedly Assented to Yahoo's Terms**

Under New York law, contracts are formed by an "objective manifestation of assent." *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 303 (2024).[3] Assent may be established if the offeree (here,

[3] Yahoo is a New York entity and the Terms contain a New York choice-of-law clause, so New York state law applies. 2025 TOS § 14.2(e). To the extent plaintiffs dispute this, the Court may "dispense with choice of law analysis" if there are no substantive differences in the relevant state laws. *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). The states in which plaintiffs reside apply "substantially similar rules" for assessing contract formation, so there is no conflict here. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (comparing New York and California state law) (citation omitted).

each of the Current Accountholders) had inquiry notice, meaning the "terms are clearly and conspicuously presented to the offeree as a contract and made available for review." *Id.* at 299. For web-based contracts, the "clarity and conspicuousness are a function of the design and content of the relevant interface." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

Each of the Current Accountholders repeatedly manifested assent to Yahoo's Terms and its arbitration clause.

*First*, between 2018 and 2025, each of the Current Accountholders agreed to the 2018 Terms, which contain an arbitration clause. Plaintiffs Davis and Lowery created Yahoo accounts after the 2018 Terms were operative and agreed to them as part of the sign-up process: The account registration page linked to the 2018 Terms and informed prospective accountholders that they would "agree to the Terms" by continuing to create their account. *See Levy v. Credit Plus, Inc.*, 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 27, 2023) (finding plaintiff agreed to arbitrate by creating account after receiving "reasonably conspicuous notice"). Plaintiffs Corvi, Hackett, Hunting, and Davis, who all created accounts predating the 2018 Terms, agreed to the Terms in or after 2018 by affirmatively clicking a button to manifest their assent. Yahoo's notification for the 2018 Terms "highlight[ed] key changes," "linked to the full Terms," and noted "the importance of reading the updated Terms," thus communicating the pertinent information clearly and obtaining affirmative consent via a clicked agreement. *In re Celsius Network LLC*, 647 B.R. 631, 655 (Bankr. S.D.N.Y. 2023) (enforcing modified terms).

*Second*, in March 2025, each of the Current Accountholders assented to Yahoo's updated 2025 Terms, which contained a revised arbitration provision setting out a different arbitral procedure and governing body (NAM instead of AAA). Yahoo provided individual email notice to the Current Accountholders, who all chose to continue using Yahoo's services. *See supra* pp.

8-9. Clear communication via email of updated terms combined with the offeree "actively us[ing] their account" is sufficient to bind the offeree. *Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (collecting authority). Here, the email notice Yahoo sent to the Current Accountholders informed them that Yahoo changed "how we will resolve any disputes that may arise over the use of our services" and "encourage[d]" users to review the March 2025 Terms in bolded text with a link to the agreement. Gurwin Decl. Ex. 5. The March 2025 Terms, in turn, specifically alerted users of the arbitration clause in bolded, capitalized language in the first section of the contract. March 2025 TOS § 1. Because the Current Accountholders continued to use Yahoo's services after receiving clear notice of the revised terms, they had inquiry notice of the 2025 arbitration clause and agreed to be bound by it. *See Sacchi v. Verizon Online LLC*, 2015 WL 765940, at *8 (S.D.N.Y. Feb. 23, 2015) (finding assent based on continued use of Verizon services after receiving emailed notice of amendments); *see also Wu*, 43 N.Y.3d at 299 (inquiry notice is sufficient for contract formation).

*Third*, since March 2025, the Current Accountholders have taken additional steps to confirm their affirmative assent to the 2025 Terms. *See supra* pp. 8-9. In addition to receiving email notice, they were presented with the 2025 Terms via a notification from Yahoo when they used Yahoo's services; that notification alerted them that Yahoo had updated its Terms, with a link to review the 2025 Terms. *See Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 550 (S.D.N.Y. 2018) ("Certainly when combined with the clickwrap modified agreements, these emails gave inquiry notice of Airbnb's arbitration provision."). The notification is "uncluttered," the "entire screen is visible at once" so the "user does not need to scroll … to find notice," the text "contrasts with the bright white background," and the hyperlink to the 2025 Terms is "in blue and underlined." *Meyer*, 868 F.3d at 78 (finding these indicators established reasonable notice as a matter of law). The

Current Accountholders had the opportunity to review the 2025 Terms, and all of them clicked "Agree." *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (granting motion to compel arbitration where plaintiff was presented with new Terms of Service and clicked to accept). The 2025 Terms thus satisfy all the hallmarks of a "clickwrap" agreement, which courts "routinely uphold" as valid because "the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'" *Meyer*, 868 F.3d at 75; *see also Sollinger v. SmileDirectClub, LLC*, 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) ("As a general matter, in New York, clickwrap agreements are valid and enforceable contracts" (cleaned up)).

*Fourth*, each of the Current Accountholders assented again when they did not opt out of the arbitration clause, even though they were given an opportunity to do so. *See supra* pp. 8-9; *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (finding assent to arbitration agreement when plaintiff "clicked 'I Accept' … when later confronted with the updated Terms of Service, and when he did not opt-out of the arbitration agreement").

Because each of the Current Accountholders agreed to arbitrate their claims against Yahoo, the court should compel them to do so.

**2. The Arbitration Procedures in the 2025 Terms Apply to the Current Accountholders' Claims**

The arbitration procedures set forth in the 2025 Terms (as opposed to the 2018 Terms) apply to the Current Accountholders' claims here. As set forth above, the Current Accountholders were bound by the March 2025 Terms after they received email notice in March 2025 and continued to use Yahoo's services. *See supra* pp. 8-9. The Current Accountholders did not join this litigation until well after March 2025. *See* Dkt. 21 (plaintiffs Davis, Hunting, Corvi, and Hackett added to First Amended Complaint on June 6, 2025); Dkt. 46 (plaintiff Lowery added to Second Amended Complaint on September 5, 2025). The Current Accountholders' agreement to

the March 2025 Terms thus predates their participation in this litigation, and the March 2025 Terms—and the arbitration provisions contained in them—should govern. And even if notification and continued use were not enough to establish assent (it is), plaintiffs' allegations of ongoing conduct and request for injunctive relief, TAC ¶¶ 247-48, indicate that at least some of the conduct underlying their claims arose after the Current Accountholders affirmatively assented to the May 2025 Terms by clicking "Agree." Conduct that "postdate[s] [the] issuance" of an arbitration clause is plainly subject to it. *See, e.g.*, *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 726 (E.D.N.Y. 2017).

Additionally, and regardless of when the Current Accountholders agreed to the March or May 2025 Terms relative to the conduct underlying this suit, the 2025 Terms control because they apply even to disputes that pre-date the user's agreement to those Terms. Consistent with longstanding "contract principles," arbitration agreements need not "pre-date the actions giving rise to the dispute." *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902, at *5 (E.D.N.Y. Mar. 20, 2024) (citation omitted) (enforcing arbitration agreement formed mid-litigation). Indeed, "[t]he Second Circuit has held that arbitration clauses without an express limitation to 'future disputes' should be applied to any preexisting claims." *Reid v. Supershuttle Int'l, Inc.*, 2010 WL 1049613, at *5 (E.D.N.Y. Mar. 22, 2010). There is no such temporal limitation in the 2025 Terms, and therefore no basis to find the Terms unenforceable as to earlier conduct.

Further, the 2025 Terms contain a merger clause. New York law "gives full effect to merger clauses," and "[w]hen the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished." *Roberts v. Edith Roman Holdings, Inc.*, 2011 WL 2078223, at *3 (S.D.N.Y. May 19, 2011). Thus, because the 2025 Terms state that they form the "entire agreement" between the parties, May 2025 TOS § 1; March 2025

TOS § 1, they supersede any prior agreements.

Provisions in earlier versions of Yahoo's Terms, read in conjunction with the 2025 Terms, also underscore that the 2025 Terms apply here. *Saizhang Guan* is instructive: there, the court concluded that a later-in-time arbitration agreement governed "even if the conduct underlying the present dispute occurred prior to [the agreement's] issuance" because the earlier agreement provided that the contract could be modified and the later agreement had a merger clause. 236 F. Supp. 3d at 726. So too here. In addition to having a merger clause, Yahoo's 2018 Terms informed users that they should "look at the Terms regularly" and that Yahoo "may modify the Terms from time to time," 2018 TOS § 12(b), putting users on notice that the Terms were subject to change. Just as in *Saizhang Guan*, the later-in-time 2025 Terms control.[4]

### D. Any Questions About the Scope and Enforceability of the Arbitration Agreement Should Be Resolved by the Arbitrator

The fact that the Current Accountholders assented to the arbitration agreement should be the end of the matter, and they should be compelled to arbitrate. Any arguments concerning "arbitrability," such as the enforceability of the contract and whether it covers the specific claims asserted in this litigation, have been delegated to the arbitrator to resolve. *See* May 2025 TOS § 14.2(b); March 2025 TOS § 14.2(b); 2018 TOS § 14.2(b); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, … a court possesses no power to decide the arbitrability issue."); *Rent-A-Ctr., W.,*

[4] Even if the 2025 Terms do not apply here (they do), the Current Accountholders are still bound to arbitrate pursuant to the 2018 Terms. The Current Accountholders assented to the 2018 Terms before initiating the present litigation and are bound to its terms, which require arbitration of disputes between Yahoo and its users. *Supra* pp. 7-9; 2018 TOS § 14.2; *Brevard v. Credit Suisse*, 2024 WL 36991, at *6 (S.D.N.Y. Jan. 3, 2024) (compelling arbitration where plaintiff argued 2015 contract was invalid because plaintiff "had already acceded to arbitration in the 2014 agreement," explaining that "the ultimate inquiry is 'whether the parties have entered into *a* valid agreement to arbitrate'" (citation omitted; emphasis in original)), *appeal dismissed*, 2025 WL 832508 (2d Cir. Feb. 21, 2025).

*Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) (upholding delegation of "'gateway' questions of 'arbitrability,'" including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy").

The 2025 Terms provide that the parties agree to arbitrate "any and all disputes, controversies or claims that in any way arise out of or relate to these terms or from any services you receive from us (or from any advertising for any such services)," including "any claim that all or any part of this arbitration agreement is void or voidable [and] whether a claim is subject to arbitration." 2025 TOS § 14.2(b) (capitalization modified; emphasis omitted). Nearly identical language has been deemed "inclusive, categorical, unconditional and unlimited," meaning it grants a broad delegation to the arbitrator. *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996). "The words 'any and all' are elastic enough to encompass disputes over whether a claim is timely and whether a claim is within the scope of arbitration." *Id.* Pursuant to the "plain language" of the 2025 Terms, the parties "clearly and unmistakably delegated questions of arbitrability to the arbitrator." *Schwartz v. Sterling Ent. Enters.*, 2021 WL 4321106, at *6 (S.D.N.Y. Sept. 23, 2021).

The 2025 Terms also expressly incorporate the arbitration providers' rules, which delegate questions of arbitrability to the arbitrator. 2025 TOS § 14.2(b)(ii) (applying NAM Comprehensive Dispute Resolution Rules and Procedures); *see* Arber Decl. Ex. 1 at 12 ("The Arbitrator(s) shall have the authority to determine jurisdiction and arbitrability including, but not limited to, any issue regarding the validity, existence, formation, or scope of the agreement under which Arbitration is being sought…."). "[W]hen, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

The 2018 Terms likewise delegate questions of arbitrability to the arbitrator. 2018 TOS § 14.2(b) (agreement to arbitrate "any and all disputes, controversies or claims" (capitalization modified; emphasis omitted)); 2018 TOS § 14.2(b)(ii) (applying AAA Commercial Arbitration Rules); Arber Decl. Ex. 2 at 14 ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim…."). The "broad arbitration provision" and "incorporation of the AAA rules" provides "'clear and unmistakable' evidence of the parties' agreement to delegate issues of arbitrability to an arbitrator." *Al Thani v. Hanke*, 2021 WL 4311391, at *7 (S.D.N.Y. Sept. 21, 2021). Thus, regardless of whether the 2018 or 2025 Terms apply, all threshold questions about enforceability or scope must be resolved by the arbitrator.

**E. If the Court Addresses the Enforceability or Scope of Yahoo's Terms, It Should Conclude That Yahoo's Arbitration Agreement Is Enforceable and Applies to the Current Accountholders' Claims**

Given the unmistakable delegation in Yahoo's Terms, the arbitrator, and not this Court, should determine any "gateway" issues about the validity and scope of the parties' arbitration agreement. But even if the Court were to resolve those issues, it should still compel the Current Accountholders to arbitrate because the arbitration agreement is a valid contract and its terms clearly cover plaintiffs' claims.

**1. The Arbitration Agreement Is a Valid Contract**

A "contract is enforceable if there is a 'meeting of the minds between the parties regarding material elements of the agreement.'" *Personalized Media Commc'ns, L.L.C. v. StarSight Telecast, Inc.*, 2000 WL 1457079, at *3 (S.D.N.Y. Sept. 28, 2000) (citation omitted) (compelling arbitration). Those material elements "include the identification of the parties, a sufficient description of the subject matter, and consideration." *Id.* Both the 2025 and 2018 Terms meet these requirements.

*First*, the arbitration agreement clearly identifies the parties. The 2025 Terms define "Yahoo" as Yahoo Inc. and related brands and corporate entities, which include Yahoo Ad Tech LLC, and explain that the Terms "form your [*i.e.*, users'] entire agreement with" Yahoo. 2025 TOS §§ 1, 13(b)(i)(2). The 2018 Terms are similarly between Oath (now known as Yahoo Inc.) and its brands and the users of the relevant services. 2018 TOS § 1.

*Second*, the contract sufficiently describes the subject matter. The arbitration clause in both the 2025 and 2018 Terms applies to "any and all disputes, controversies or claims that in any way arise out of or relate to these Terms or from any Services [plaintiffs] receive from [Yahoo] (or from any advertising for any such Services)." 2025 TOS § 14.2(b) (capitalization modified; emphasis omitted); 2018 TOS § 14.2(b). "Terms" and "Services" are both defined terms in the contract, and the term "Services" broadly encompasses Yahoo's "brands, websites, apps, products, services and technologies." 2025 TOS § 1; 2018 TOS § 1.

*Third*, the arbitration agreement is supported by valid consideration. In exchange for the Current Accountholders' agreement to be bound by Yahoo's Terms, including the arbitration clause, Yahoo made its "Services" available to them. 2025 TOS § 1; 2018 TOS § 1; *see Rothstein v. Auto Club S.*, 2019 WL 5722215, at *13 (S.D.N.Y. Aug. 26, 2019) (use of online services constitutes adequate consideration), *aff'd*, 831 F. App'x 589 (2d Cir. 2020). That consideration, which applies to the Terms as a whole, is also sufficient to support the arbitration clause in particular. *See Bassett*, 93 F. Supp. 3d at 104 ("[A]n arbitration clause need not be supported by consideration separate or independent from that supporting the rest of the contract."). The arbitration agreement is also supported by a mutual promise to arbitrate disputes. 2025 TOS § 14.2(b); 2018 TOS § 14.2(b). Mutual promises to arbitrate constitute sufficient consideration. *See, e.g.*, *Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc.*, 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) (Cote, J.) ("Under

New York contract law, mutual promises to arbitrate constitute consideration sufficient to support an arbitration agreement." (cleaned up)); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (similar).

Each of these material elements is explicitly laid out in Yahoo's Terms, and there was a meeting of the minds as to each element because the Current Accountholders repeatedly assented to the Terms and used Yahoo's services, demonstrating an "intent to be bound." *Personalized Media*, 2000 WL 1457079, at *4. The agreement is thus valid and enforceable.

**2. The Arbitration Agreement Is Not Unconscionable**

There is no basis for disregarding the Terms or the arbitration agreement, or for deeming them invalid. Any argument that Yahoo's arbitration provision is procedurally or substantively unconscionable would fail for two reasons. *First*, because the parties have delegated issues of arbitrability to the arbitrator, *see supra* pp. 18-20, "a party's challenge to the arbitration agreement on unconscionability grounds is a dispute that must be resolved by arbitration." *Kuehn v. Citibank, N.A.*, 2012 WL 6057941, at *3 (S.D.N.Y. Dec. 6, 2012) (Cote, J.).

*Second*, even if the Court were to decide the issue, neither the 2025 nor 2018 Terms are unconscionable. The doctrine of unconscionability is meant to "prevent sophisticated parties with grossly unequal bargaining power from taking advantage of less sophisticated parties." *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 246 (S.D.N.Y. 2020) (citation omitted). A finding of unconscionability under New York law requires both procedural and substantive unconscionability, meaning both the contract formation process and the terms themselves must be unfair. *Id.* at 247.

The 2025 Terms are not procedurally unconscionable. The March 2025 Terms went into effect before this litigation commenced, so plaintiffs cannot claim that the arbitration clause was drafted "*because of* the litigation at hand." *Oestreicher*, 2024 WL 1199902, at *6. Further, the

2025 Terms were "conspicuously presented," and the Current Accountholders had a full and fair opportunity to review them and consult with their attorneys before agreeing. *See id.* The 2025 Terms also provide users 30 days to opt out of the arbitration clause after agreement, 2025 TOS § 14.2(b)(ix), which "alleviates any concern of unconscionability." *Roitman v. T-Mobile USA Inc.*, 2025 WL 3156503, at *9 (E.D.N.Y. July 28, 2025) (collecting cases); *see also O'Callaghan v. Uber Corp. of Cal.*, 2018 WL 3302179, at *9 (S.D.N.Y. July 5, 2018) ("When a party was afforded an opportunity to opt out, the agreement is not procedurally unconscionable.").

The 2025 Terms are also not substantively unconscionable. They provide several safeguards, including binding both parties equally and providing for the reimbursement of prohibitive arbitration costs. 2025 TOS §§ 14.2(b), 14.2(b)(viii); *see Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 351 (S.D.N.Y. 2019) (no substantive unconscionability where terms provide for deferral or reduction of arbitral fees); *Catz v. Precision Glob. Consulting*, 2021 WL 1600097, at *6 (S.D.N.Y. Apr. 23, 2021) ("[A]n arbitration provision that equally binds both parties to arbitration … is not substantively unconscionable.").

For similar reasons, the 2018 Terms are not unconscionable. There are no facts suggesting the Current Accountholders lacked a meaningful choice to contract with Yahoo. *See McDougall v. Samsung Elecs. Am., Inc.*, 2023 WL 6445838, at *6 (S.D.N.Y. Oct. 3, 2023) (no procedural unconscionability where plaintiff alleged only that defendant "had a bargaining advantage and offered a contract of adhesion to an unsophisticated consumer on a 'take-it-or-leave-it' basis"). The 2018 Terms bound both Yahoo and the Current Accountholders equally, 2018 TOS § 14.2(b), and provided for reimbursement of filing fees, the option to pay filing fees directly if the user is unable to pay, and payment of administrative and arbitrator fees, *id.* § 14.2(b)(v). Courts have enforced arbitration agreements in similar circumstances. *See Molina*, 363 F. Supp. 3d at 351;

*Catz*, 2021 WL 1600097, at *6.

**3. The Arbitration Agreement Covers Plaintiffs' Claims**

Whether plaintiffs' claims come within the scope of the parties' arbitration agreement is for the arbitrator to decide. 2025 TOS § 14.2(b); 2018 TOS § 14.2(b); *see PaineWebber*, 81 F.3d at 1199. However, if the Court weighs in on this issue, it should hold that the agreement covers plaintiffs' claims.

"To determine whether the parties intended to submit a given matter to arbitration, the general rule is that courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 344 (2d Cir. 2010) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). For instance, in a case where the parties agreed to arbitrate "all disputes arising out of or in relation to" a trading agreement, the Second Circuit compelled arbitration of a dispute over a separate agreement the parties had entered into because that separate agreement "stemmed" from the trading agreement. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250-52 (2d Cir. 1991). Any "[d]oubts should be resolved in favor of coverage." *United Steelworkers*, 363 U.S. at 583.

The arbitration agreement clearly covers the claims here. The Current Accountholders agreed to arbitrate disputes that "in any way arise out of or relate to these Terms or from any Services [users] receive from [Yahoo] (or from any advertising for any such Services)." 2025 TOS § 14.2(b); 2018 TOS § 14.2(b). "Where, as here, the arbitration clause is broadly worded to include any claim 'arising from or relating to' the agreement, the dispute is presumptively arbitrable." *Purcell v. Navient Sols., LLC*, 2019 WL 188693, at *7 (S.D.N.Y. Jan. 14, 2019). Based

on plaintiffs' allegations, the dispute arises from or relates to both Yahoo's Services and the Terms to which they agreed for several reasons.

*First*, plaintiffs' causes of action all arise from or relate to the Yahoo Inc. and Yahoo Ad Tech LLC brands and Yahoo's ConnectID, which comprise Yahoo's "Services." "Services" are defined broadly in the contract as the "brands, websites, apps, products, services and technologies" provided by the Yahoo family of companies, which includes Yahoo Inc. and Yahoo Ad Tech LLC. 2025 TOS §§ 1, 13(b)(i)(1)-(2); *see* 2018 TOS § 1. Plaintiffs allege that ConnectID is a "service provided by Yahoo Ad Tech LLC" and that ConnectID is used and controlled by Yahoo Inc. TAC ¶ 50 n.1. Their complaint centers around the theory that ConnectID and other related tools constitute "tracking technology" that violates several state laws. TAC ¶¶ 11-12, 110, 194, 207, 227. This case thus arises from and relates to Yahoo's Services, placing plaintiffs' suit squarely within the scope of the arbitration agreement.

*Second*, plaintiffs' claims also arise from or relate to Yahoo's Terms, which are defined in the contract as the Terms of Service and "any community guidelines and supplemental terms provided to you for the Services that you use." 2025 TOS § 1; 2018 TOS § 1. The Terms incorporate Yahoo's Privacy Policy, *see* 2025 TOS § 4, which sets out "what information Yahoo … collect[s], why we collect it and what we do with it" in connection with "Yahoo brands, websites, apps, advertising services, products, services or technologies," Gurwin Decl. Ex. 11 ("Privacy Policy") § 2(b). The Privacy Policy explains that Yahoo "collect[s] information when you access content, advertising, sites, interactive widgets, applications, and other products (both on and off of our Services) where Yahoo data collection technologies (such as web beacons, development tools, cookies and other technologies, etc.) are present," as well as when Yahoo "obtain[s] information from third-parties or other companies, such as those that use our Services." *Id.* §§ 4(e)(i), (f)(iv).

The Policy incorporates additional disclosures concerning Yahoo's use of tracking technologies on websites utilizing its services; its collection and use of technical identifiers in connection with digital advertising; and its receipt of IP addresses from its partners. Gurwin Decl. Exs. 12-14. This information is central to plaintiffs' allegations that Yahoo's use of tracking technology and receipt of user data violates privacy laws and that its statements to consumers amount to material misrepresentations. Plaintiffs concede the relevance of these policies by addressing them in their complaint. TAC ¶¶ 8, 78, 117, 120, 138-44, 149. Because Yahoo's policies are bound up with plaintiffs' claims on the merits, their claims "arise from or relate to" the Terms.

The Current Accountholders' claims are thus covered by the Terms and subject to arbitration.

**F. Litigation Should Be Stayed While Arbitration Proceeds**

Upon granting a motion to compel, courts "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."); *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all the claims in an action have been referred to arbitration and a stay requested."). The Current Accountholders agreed to arbitrate their claims against Yahoo. Their claims must be stayed while they proceed in arbitration.

Although Yahoo currently lacks sufficient information to determine whether one plaintiff (Baker) also agreed to arbitration, the Court can and should exercise its "inherent power to manage its docket" to stay this case in full. *BSG Res. (Guinea) Ltd. v. Soros*, 2017 WL 5897450, at *3

(S.D.N.Y. Nov. 29, 2017) (citation omitted). Doing so will avoid potential preclusion issues, promote efficiency, and avoid prejudice to Yahoo.

*First*, to avoid potential preclusion problems, non-arbitrable claims may be stayed in favor of arbitrable claims where common issues will be adjudicated in arbitration, "even where the parties in the litigation and the arbitration are not identical." *BSG*, 2017 WL 5897450, at *3 (citation omitted). Baker does not bring any claims that are not also brought by the other plaintiffs.[5] All of those claims will be resolved in arbitration for the five Current Accountholders "based on similar allegations during an overlapping time period … on behalf of similarly situated [individuals]." *Kim v. Evergreen Adult Day Care in NY Inc.*, 2024 WL 989909, at *6 (E.D.N.Y. Mar. 6, 2024). Allowing Baker's claims—and those of the class he purports to represent—to proceed in parallel in this court with those of the other plaintiffs in arbitration runs the risk that "the purported class's claims, or at least certain issues related to them, could be precluded if the arbitrator rejects the same claims asserted by different plaintiffs." *Id.* (staying non-arbitrating plaintiff's claims); *see also Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 818-19 (2d Cir. 1977) ("complete identity of parties" not required for a finding of preclusion, including where "plaintiffs in the two proceedings differ"), *aff'd*, 439 U.S. 322 (1979); *Byrne v. Charter Commc'ns, Inc.*, 581 F. Supp. 3d 409, 422-23 (D. Conn. 2022) (non-arbitrating plaintiff's claims "could be precluded by a full and fair arbitration that rejects precisely the same claims in what originally was brought

[5] Indeed, Baker brings a narrower set of claims than any other plaintiff. As a Vermont resident, he cannot bring either the California or New York state law claims advanced by his co-plaintiffs. *See* TAC at 34-46 (Counts 2-7 brought only on behalf of California plaintiffs and subclasses); *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 403 (S.D.N.Y. 2010) (plaintiffs conducting internet transactions with defendant "outside of New York" cannot maintain GBL § 349 claim). The only claims Baker asserts are for unjust enrichment and injunctive relief, and those claims are predicated on the same underlying facts as the other claims. *Compare* TAC ¶¶ 234-35, 247 (unjust enrichment and injunctive relief claims alleging Yahoo violates plaintiffs' privacy through ConnectID), *with, e.g.*, *id.* ¶¶ 164, 168, 184 (other claims alleging same).

as one putative class action, albeit asserted by different customers but represented by the same attorneys"). Staying the entire case—including as to Baker—will avoid the potential for inconsistent outcomes.

*Second*, staying the entire case will promote judicial efficiency. *See Birmingham Assocs. Ltd. v. Abbott Lab'ys*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008) ("Stays are particularly appropriate where they 'promote judicial economy, avoidance of confusion and possible inconsistent results.'" (citation omitted)), *aff'd*, 328 F. App'x 42 (2d Cir. 2009). Arbitration of the Current Accountholders' claims will likely "simplify the management of [the remaining] claims in this Court: counsel for both sides presumably will have sharpened their legal arguments during the arbitration and (if discovery becomes necessary) will have resolved most discovery issues, allowing this Court to proceed with greater speed towards resolution of [the remaining] dispute." *Byrne*, 581 F. Supp. 3d at 423. A stay will avoid "piecemeal litigation" and unnecessary "duplication of discovery or issue resolution" while the arbitrations proceed. *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted) (Cote, J.).

*Third*, there is no evidence to suggest that the arbitration will not proceed in a reasonable timeframe or cause prejudice to Baker, and a stay would avoid potential prejudice to Yahoo. "[B]ecause many, if not all, of the issues in the action will be touched on in the arbitration, there is little risk that the evidence supporting [Baker]'s case 'may grow stale, become unavailable, or be lost.'" *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, 2000 WL 1858556, at *10 (S.D.N.Y. Dec. 19, 2000) (citation omitted). On the other hand, Yahoo would be "seriously prejudiced" by having to litigate two overlapping disputes in different venues at the same time. *Aekyung Co. v. Intra & Co.*, 2000 WL 1521202, at *2 (S.D.N.Y. Oct. 13, 2000).

Because the outcomes of the arbitrations will "have a significant bearing on this case," *Maritima*, 2011 WL 1465744, at *5, this case should be stayed in full.

## V. CONCLUSION

For the foregoing reasons, the Court should compel plaintiffs Corvi, Davis, Hackett, Hunting, and Lowery to arbitrate their claims, and should stay all further proceedings pending completion of those arbitrations.

Dated: January 30, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren Goldman*

Lauren Goldman
lgoldman@gibsondunn.com
Jacob Arber
jarber@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Eric D. Vandevelde (*pro hac vice*)
evandevelde@gibsondunn.com
Ilissa Samplin
isamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000

*Attorneys for Defendants Yahoo, Inc. and Yahoo Ad Tech LLC*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,445 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: January 30, 2026

By: *_/s/ Lauren Goldman_*
Lauren Goldman