**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YAHOO INC. and YAHOO AD TECH LLC,

Defendants.

Case No. 1:25-cv-2797-DLC

Hon. Denise L. Cote

**DECLARATION OF ROBERT GURWIN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CASE**

I, Robert Gurwin, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an adult over the age of 18 and a resident of the state of California. The information set forth herein is true and correct and is based on my own personal knowledge (unless otherwise stated), and if asked to testify thereto, I would do so competently.

2. I am currently employed as Vice President and Chief Counsel by Yahoo Holdings Inc. in the Legal Department. I have been employed by Yahoo since 2017, and by predecessor companies since 2005 (i.e., AOL, formerly known as America Online, and Oath Inc.). In my present role, I provide legal support for various parts of the Yahoo business, including the Identity team and platforms managing user registration and authentication.

3. Yahoo Inc., together with its affiliates and subsidiaries, including Yahoo Ad Tech LLC (collectively, "Yahoo"), is a technology and online media company headquartered in New York. Yahoo provides a wide range of online products and services, including email, digital content, and advertising-related technologies, through its websites, applications, and platforms. Users may access these offerings (such as Yahoo Mail) through a Yahoo account, which serves as the gateway to Yahoo's services.

4. I am knowledgeable about Yahoo's Terms of Service and account registration processes, including the systems that support these procedures. Through my position and tenure at Yahoo, as well as a review of records and information maintained in the ordinary course of business, I am well-acquainted with the layout of relevant screens and the sign-up flows pertinent to this matter.

5. I make this declaration in support of Yahoo's Motion to Compel Arbitration and Stay Proceedings. I am authorized to make these statements on behalf of Yahoo. In my position as Vice President and Chief Counsel for Yahoo, I have access to and knowledge of the matters and

information set forth in this declaration. The information set forth in this declaration is based on data that is maintained in the regular course of Yahoo's business. In preparing this declaration, I have carefully reviewed and become familiar with both the business records used to determine the information included here and the other documents referenced in this declaration.

6. Yahoo first incorporated an arbitration agreement in its Terms of Service ("Terms" or "TOS") in April 2018. Attached as **Exhibit 1** is a true and correct copy of Yahoo's Terms from April 13, 2018 ("2018 Terms"). Users who created a Yahoo account after the 2018 Terms went into effect were required to accept the Terms as part of the account creation process.

7. For users who created a Yahoo account prior to the 2018 Terms going into effect, Yahoo provided notice of the changed Terms and sought acceptance through pop-up notifications. When these accountholders logged in—either via the website or the mobile app—a message appeared informing users of the "New Privacy and Terms." The notification explained that by clicking the "I Accept" button, the user accepted the "new Terms of Service and Privacy Policy," with both documents linked in blue font for review. Accountholders were required to review the entire notification, which outlined critical points such as the inclusion of a "mutual arbitration clause," prior to accepting the Terms or dismissing the notification.

8. The images below, which are also attached as **Exhibit 2-A**, are true and correct representative copies of the notifications that accountholders saw when logging into their account via the website as of April 14, 2018, after the 2018 Terms went into effect, with the email address of a user redacted for privacy. The options to select "I Accept" or "I'll do this later" were not clickable until the user scrolled through the full notification.


YAHOO!
New Privacy and Terms
Yahoo is now part of Oath, the media and tech company behind today's top news, sports and entertainment sites and apps.
By choosing "I accept" below, you agree to Oath's new Terms of Service and Privacy Policy. Below is a summary of some of the key updates. To learn more about our approach to privacy, click here.
How we collect and use data.
• We've updated some of the ways we collect and analyze user data in order to deliver services, content, relevant advertising and abuse protection.
• This includes: analyzing content and information when you use our
I Accept
I'll do this later
Scroll to continue


YAHOO!
New Privacy and Terms
regarding user trends.
Sharing Data with Verizon.
• Oath and its affiliates may share the information we receive with Verizon. Learn more about Verizon's privacy practices.
Combining data.
• We also combine data among our services and across your devices. This will provide you with better personalized services and features across your devices and Oath accounts. We've provided information about your choices with respect to your use of our services, and given you control in our Privacy Controls
I Accept
I'll do this later
Scroll to continue


YAHOO!
New Privacy and Terms
Aol.
YAHOO!
tumblr.
HUFFPOST
TC TechCrunch
engadget
Oath:
Key Points in Terms of Service
We've added a mutual arbitration clause.
Hopefully, disputes will never be an issue, but in the case of one, this allows a third-party arbitrator to help us resolve them. We've also added a class action waiver. These provisions are an important part of our relationship with you, so please read them carefully.
We've specified the legal entity that provides each service to you.
I Accept
I'll do this later
Scroll to continue


YAHOO!
New Privacy and Terms
Aol.
YAHOO!
tumblr.
HUFFPOST
TC TechCrunch
engadget
Oath:
New York law now governs and New York, New York is the designated forum.
Business to Business.
The Oath Business-to-Business Privacy Policy applies when you use Flurry, Gemini, ONE by AOL, Convertro, BrightRoll or any other Oath business-to-business products. All other consumer-facing activities are covered by the Oath Privacy Policy. Learn More.
You're also agreeing for the following Child Accounts you created:
[redacted]
I Accept
I'll do this later

9. The images below, which are also attached as **Exhibit 2-B**, are true and correct representative copies of the notifications that accountholders saw when logging into their account via the mobile application or in a mobile browser as of April 14, 2018, after the 2018 Terms went into effect, with the email address of a user redacted for privacy. The options to select "I Accept" or "I'll do this later" were not clickable until the user scrolled through the full notification.




Verizon
5:43 PM
guce.oath.com
YAHOO!
regarding user trends.
Sharing Data with Verizon.
• Oath and its affiliates may share the information we receive with Verizon. Learn more about Verizon's privacy practices.
Combining data.
• We also combine data among our services and across your devices. This will provide you with better personalized services and features across your devices and Oath accounts. We've provided information about your choices with respect to your use of our services, and given you control in our Privacy Controls section.
Scroll to continue
I'll do this later
I Accept


Verizon
5:43 PM
guce.oath.com
YAHOO!
• Applicability of Terms.
If you are using our services on behalf of another account owner (e.g., as an administrator, consultant or analyst) or on behalf of a company, business or other entity, the Terms of Service apply to your activities and are binding on the account owner or entity.
• Indemnity for Non-Personal Use.
If you are using our Services on behalf of a company, business or other entity, or if you are using our Services for commercial purposes, we've added an indemnity provision, which requires you and the entity
Scroll to continue
I'll do this later
I Accept


Verizon
5:43 PM
guce.oath.com
YAHOO!
Key Points in Terms of Service
We've added a mutual arbitration clause.
Hopefully, disputes will never be an issue, but in the case of one, this allows a third-party arbitrator to help us resolve them. We've also added a class action waiver. These provisions are an important part of our relationship with you, so please read them carefully.
We've specified the legal entity that provides each service to you.
For some services, this may be a different entity than the entity that previously
Scroll to continue
I'll do this later
I Accept


Verizon
5:43 PM
guce.oath.com
YAHOO!
forum provisions.
New York law now governs and New York, New York is the designated forum.
Business to Business.
The Oath Business-to-Business Privacy Policy applies when you use Flurry, Gemini, ONE by AOL, Convertro, BrightRoll or any other Oath business-to-business products. All other consumer-facing activities are covered by the Oath Privacy Policy. Learn More.
You're also agreeing for the following Child Accounts you created:
[redacted]
I'll do this later
I Accept

10. On April 20, 2018, Yahoo changed the notifications so that the options to select "I Accept" or "I'll do this later" were no longer visible until the user scrolled through the full notification. The text of the notification did not change.

11. The images below, which are also attached as **Exhibit 3-A**, are true and correct representative copies of the notifications that accountholders saw when logging into their account via the website as of April 20, 2018.









12. The images below, which are also attached as **Exhibit 3-B**, are true and correct representative copies of the notifications that accountholders saw when logging into their account via the mobile application or mobile browser as of April 20, 2018.



Verizon LTE 12:56 PM

abuse protection.

- This includes: analyzing content and information when you use our services (including emails, instant messages, posts, photos, attachments, and other communications), linking your activity on other sites and apps with information we have about you, and providing anonymized and/or aggregated reports to other parties regarding user trends.

**Sharing Data with Verizon.**

- Oath and its affiliates may share the information we receive with Verizon. Learn more about Verizon's privacy practices.

**Combining data.**

- We also combine data among our services and across your devices. This will provide you with better personalized services and features across your devices and Oath accounts. We've provided information about your choices with respect to … , and given you contro… section.

Scroll to continue

Verizon LTE 12:56 PM

**Key Points in Terms of Service**

- **We've added a mutual arbitration clause.**

  Hopefully, disputes will never be an issue, but in the case of one, this allows a third-party arbitrator to help us resolve them. We've also added a class action waiver. These provisions are an important part of our relationship with you, so please read them carefully.

- **We've specified the legal entity that provides each service to you.**

  For some services, this may be a different entity than the entity that previously provided the service. We've also reserved the right to transfer the providing entity for each service in the future.

- **General provisions that apply to billing, auto-renewal, and refunds have been added.**

  Unless the additional terms for a service override th… …e provisions apply to y… …ces.

Scroll to continue



Verizon LTE 12:56 PM

the Terms of Service apply to your activities and are binding on the account owner or entity.

- **Indemnity for Non-Personal Use.**

  If you are using our Services on behalf of a company, business or other entity, or if you are using our Services for commercial purposes, we've added an indemnity provision, which requires you and the entity to protect us against certain legal actions.

- **We've updated our choice of law and forum provisions.**

  New York law now governs and New York, New York is the designated forum.

**Business to Business.**

- The Oath Business-to-Business Privacy Policy applies when you use Flurry, Gemini, ONE by AOL, Convertro, BrightRoll or any other Oath business-to-business products. All other consumer-facing activities are covered by the Oath Privacy Policy. Learn More.

I'll do this later    I Accept

13. There were no substantive modifications to the arbitration clause between April 13, 2018 and March 7, 2025.

14. The language of the arbitration clause was updated on March 7, 2025. Attached as **Exhibit 4** is a true and correct copy of the Terms effective on March 7, 2025 ("March 2025 Terms").

15. Yahoo provided email notice to Yahoo accountholders between March 13 and April 8, 2025, about the updated arbitration clause. Attached as **Exhibit 5** is a true and correct representative copy of the email sent to Yahoo users in March 2025 with the subject line: "Important updates to our Terms of Service," with the email address of the recipient redacted for privacy. The email notified users about Yahoo's revised Terms regarding dispute resolution for its services. It included a link to the March 2025 Terms and recommended users review it. The message further clarified that continued use of Yahoo services constituted acceptance of these updated terms.

16. On May 15, 2025, Yahoo made minor changes to the arbitration clause. Attached as **Exhibit 6** is a true and correct copy of the Terms effective on May 15, 2025 ("May 2025 Terms"). The changes included changing the deadline to opt out of the arbitration clause from 30 days after March 7 to 30 days after the user's agreement to the May 2025 Terms.

17. After the May 2025 Terms went into effect, Yahoo implemented a procedure to continue informing accountholders of the revised 2025 Terms and request their express acceptance. Upon logging into their accounts via Yahoo's website, mobile application or browser, or when automatically extending an active session, accountholders received a notification indicating that "[Yahoo] updated [its] Terms of Service." By selecting the "Agree" button, users acknowledged and accepted the updated terms. Although users could close the notification on the website (desktop and mobile browser) without agreeing to Yahoo's Terms, the message would reappear each time they logged in or upon session extension until they accepted the Terms. Similarly, users could dismiss the notification by clicking "Cancel" in the mobile app, but the notification would continue to be shown until accepted. The images below, which are also attached as **Exhibits 7-A** and **7-B**, are true and correct representative copies of the message notifications that accountholders would see when logging into their account after the May 2025 Terms went into effect, with the name and email addresses of users redacted for privacy.


yahoo!
Help
Terms
Privacy
yahoo!shopping
The Checkout
Inbox first. Shopping cart next.
A newsletter about what's worth buying now.
Sign Up
yahoo!
[redacted]
We have updated our Terms of Service
By clicking "Agree" below, you accept and agree to these updated Yahoo Terms of Service.
Agree


yahoo!
Help
Terms
Privacy
yahoo!
[redacted]
We have updated our Terms of Service
By clicking "Agree" below, you accept and agree to these updated Yahoo Terms of Service.
Agree




18. There have been no substantive modifications to the arbitration clause since May 15, 2025.

19. Yahoo maintains an Account Management Tool to track certain data concerning Yahoo accountholders. This tool captures each instance a user agreed to any version of the Terms, including when creating an account or indicating acceptance by clicking "Agree." The tool requires a Yahoo account username, internal Yahoo identifier, alternate email address, or the phone number linked to the account to identify the account creation and TOS acceptance dates.

20. Yahoo does not have any tools by which it can determine whether an individual has a Yahoo account using only the individuals' first and last name and state of residence.

21. I understand that plaintiffs identified their Yahoo email addresses through counsel. I reviewed the information available through the Account Management Tool for each plaintiff to determine when their Yahoo accounts were created and when they accepted versions of Yahoo's Terms containing an arbitration agreement.

22. ***<u>Lowery's Account Creation and Assent to Yahoo's TOS</u>***. According to Yahoo's Account Management Tool, Ratiek Lowery created an account on or around November 23, 2022,

with the email address provided to Yahoo through his counsel, and he accepted the then-applicable Terms on the same date. He received email notice of the updated 2025 Terms on March 15, 2025, and then also received notice via one of the methods described above. *See supra* ¶¶ 15, 17. He affirmatively accepted Yahoo's 2025 Terms on December 18, 2025.

23. Lowery's first acceptance of Yahoo's Terms was part of the process of creating his Yahoo account. To sign up for a Yahoo account on or around November 23, 2022, prospective accountholders like Lowery are prompted to enter their full name and birth year and create a unique Yahoo email and password. After completing these fields, the prospective accountholder would proceed to finalize the account creation by clicking the blue "Continue" button. In November 2022, a notice was displayed above the "Continue" button that read: "By clicking 'Continue', you agree to the Terms and the Privacy Policy." The words "Terms" and "Privacy Policy" were in blue and hyperlinked to Yahoo's Terms of Service and Privacy Policy in effect at that time. The image below, which is also attached as **Exhibit 8**, is a true and correct representative copy of the appearance of the account sign-up screen on the Yahoo website as it existed at the time Lowery signed up for a Yahoo account in November 2022.



24. When a prospective accountholder selected the hyperlinked "Terms," Yahoo's applicable Terms would appear on a separate page, allowing the individual to review or print the document. Attached as **Exhibit 9-D**[1] is a true and correct copy of Yahoo's Terms dated May 26, 2022, which were in effect on November 23, 2022. There were no substantive changes to the arbitration provision between the 2018 Terms and the Terms Lowery agreed to on November 23, 2022.

25. Prior to accepting Yahoo's Terms, prospective accountholders, including Lowery, had the opportunity to thoroughly review the Terms at their convenience. They also retained the option to discontinue the account creation process. By choosing to proceed and selecting "Continue," these individuals indicated their agreement to the Terms.

26. Lowery was sent an email on March 15, 2025, alerting him to Yahoo's revised Terms. Lowery continued logging into his Yahoo account and using Yahoo's services after Yahoo sent this email.

27. Lowery affirmatively accepted the 2025 Terms on December 18, 2025, by clicking "Agree" on Yahoo's website or mobile application when prompted with a notification and link to the 2025 Terms. Attached as **Exhibit 9-H** is a true and correct copy of Yahoo's Terms dated October 27, 2025, which were in effect on December 18, 2025. There were no substantive changes between the May 2025 Terms and the Terms Lowery agreed to on December 18, 2025.

28. The deadline for Lowery to opt out of the updated arbitration agreement was January 17, 2026. Lowery did not opt out of the arbitration agreement.

29. ***<u>Davis's Account Creation and Assent to Yahoo's TOS</u>***. According to Yahoo's Account Management Tool, William Davis created four different Yahoo accounts on or around

[1] The sub-parts of Exhibits 9 and 11-14 are organized in chronological order.

October 22, 2004, January 6, 2011, June 22, 2012, and April 15, 2024 with the email addresses provided to Yahoo through his counsel. He accepted Yahoo's 2018 Terms for all four accounts on November 10, 2018, January 24, 2019, May 5, 2020, and April 15, 2024. He received email notice of the updated 2025 Terms on March 14 and 15, 2025, and then also received notice via one of the methods described above. *See supra* ¶¶ 15, 17. For two of his accounts, he affirmatively accepted Yahoo's 2025 Terms on September 19, 2025, and September 23, 2025.

30. Davis accepted Yahoo's Terms multiple times for all four of his accounts, including affirmatively accepting the Terms on November 10, 2018, January 24, 2019, and May 5, 2020 by clicking "I Accept" on Yahoo's website or mobile application when prompted with a notification and link to the 2018 Terms. Attached as **Exhibit 9-A** is a true and correct copy of Yahoo's Terms dated October 2018, which were in effect on November 10, 2018. Attached as **Exhibit 9-B** is a true and correct copy of Yahoo's Terms dated January 2019, which were in effect on January 24, 2019. Attached as **Exhibit 9-C** is a true and correct copy of Yahoo's Terms dated April 9, 2020, which were in effect on May 5, 2020. There were no substantive changes between the 2018 Terms and the Terms Davis agreed to on November 10, 2018, January 24, 2019, and May 5, 2020.

31. Davis also accepted Yahoo's Terms as part of the process of creating his Yahoo account in April 2024. To sign up for a Yahoo account on or around April 15, 2024, prospective accountholders like Davis were prompted to enter their full name and birth year and create a unique Yahoo email and password. After completing these fields, the prospective accountholder would proceed to finalize the account creation by clicking the "Continue" button. In April 2024, a notice was displayed above the "Continue" button that read: "By clicking 'Continue', you agree to the Terms and acknowledge the Privacy Policy." The words "Terms" and "Privacy Policy" were in blue and hyperlinked to Yahoo's TOS and Privacy Policy in effect at that time. The image below,

which is also attached as **Exhibit 10**, is a true and correct representative copy of the appearance of the account sign-up screen on the Yahoo website as it existed at the time Davis signed up for Yahoo's account in April 2024.




32. When a prospective accountholder selected the hyperlinked "Terms," Yahoo's applicable Terms would appear on a separate page, allowing the individual to easily review or print the document. Attached as **Exhibit 9-E** is a true and correct copy of the text of Yahoo's Terms dated January 31, 2024, which were in effect on April 15, 2024. There were no substantive changes to the arbitration provision between the 2018 Terms and the Terms Davis agreed to on April 15, 2024.

33. Prior to accepting Yahoo's Terms, prospective accountholders, including Davis, had the opportunity to thoroughly review the Terms at their convenience. They also retained the option to discontinue the account creation process. By choosing to proceed and selecting "Continue," these individuals indicated their agreement to the prevailing Terms.

34. Davis was sent emails on March 14 and 15, 2025, alerting him to Yahoo's revised Terms. Davis continued logging into his Yahoo account and using Yahoo's services after Yahoo sent this email.

35. For two of his four accounts, Davis affirmatively accepted the 2025 Terms on September 19, 2025 and September 23, 2025, by clicking "Agree" on Yahoo's website or mobile application when prompted with a notification and link to the 2025 Terms. Attached as **Exhibit 9-F** is a true and correct copy of Yahoo's Terms dated June 9, 2025, which were in effect on September 19, 2025 and September 23, 2025. There were no substantive changes between the May 2025 Terms and the Terms Davis agreed to on September 19, 2025 and September 23, 2025.

36. The deadlines for Davis to opt out of the updated arbitration agreement were October 19, 2025 and October 23, 2025. Davis did not opt out of the arbitration agreement.

37. ***<u>Hackett's Account Creation and Assent to Yahoo's TOS</u>***. According to Yahoo's Account Management Tool, Christopher Hackett created an account on or around March 8, 2008, with the email addresses provided to Yahoo through his counsel. He accepted Yahoo's 2018 Terms on April 25, 2018. He received email notice of the updated 2025 Terms on March 15, 2025, and then also received notice via one of the methods described above. *See supra* ¶¶ 15, 17. He affirmatively accepted Yahoo's 2025 Terms on October 14, 2025.

38. While Hackett created his account at a time when Yahoo's Terms did not include an arbitration clause, Yahoo's records indicate that he affirmatively accepted the 2018 Terms, which did include an arbitration clause, on April 25, 2018, by clicking "I Accept" on Yahoo's website or mobile application when prompted with a notification and link to the 2018 Terms. Attached as **Exhibit 1** is a true and correct copy of Yahoo's Terms dated April 2018, which were

in effect on April 25, 2018. There were no changes between the 2018 Terms and the Terms Hackett agreed to on April 25, 2018.

39. Hackett was sent an email on March 15, 2025, alerting him to Yahoo's revised Terms. Hackett continued logging into his Yahoo account and using Yahoo's services after Yahoo sent this email.

40. Hackett affirmatively accepted the 2025 Terms on October 14, 2025, by clicking "Agree" on Yahoo's website or mobile application when prompted with a notification and link to the 2025 Terms. Attached as **Exhibit 9-G** is a true and correct copy of Yahoo's Terms dated October 10, 2025, which were in effect on October 14, 2025. There were no substantive changes between the May 2025 Terms and the Terms Hackett agreed to on October 14, 2025.

41. The deadline for Hackett to opt out of the arbitration agreement was November 13, 2025. Hackett did not opt out of the arbitration agreement pursuant to the process established in the May 2025 Terms.

42. ***Hunting's Account Creation and Assent to Yahoo's TOS***. According to Yahoo's Account Management Tool, Brian Hunting created an account on or around March 14, 2007, with the email address provided to Yahoo through his counsel. He accepted Yahoo's 2018 Terms on May 18, 2018. He received email notice of the updated 2025 Terms on March 15, 2025, and then also received notice via one of the methods described above. *See supra* ¶¶ 15, 17. He affirmatively accepted Yahoo's 2025 Terms on October 22, 2025.

43. While Hunting created his account at a time when Yahoo's Terms did not include an arbitration clause, Yahoo's records indicate that he affirmatively accepted the 2018 Terms on May 18, 2018, by clicking "I Accept" on Yahoo's website or mobile application when prompted with a notification and link to the 2018 Terms. Attached as **Exhibit 1** is a true and correct copy of

Yahoo's Terms dated April 2018, which were in effect on May 18, 2018. There were no substantive changes between the 2018 Terms and the Terms Hunting agreed to on May 18, 2018.

44. Hunting was sent an email on March 15, 2025, alerting him to Yahoo's revised Terms. Hunting continued logging into his Yahoo account and using Yahoo's services after Yahoo sent this email.

45. Hunting affirmatively accepted the 2025 Terms on October 22, 2025, by clicking "Agree" on Yahoo's website or mobile application when prompted with a notification and link to the 2025 Terms. Attached as **Exhibit 9-G** is a true and correct copy of Yahoo's Terms dated October 10, 2025, which were in effect on October 22, 2025. There were no substantive changes between the May 2025 Terms and the Terms Hunting agreed to on October 22, 2025.

46. The deadline for Hunting to opt out of the arbitration agreement was November 21, 2025. Hunting did not opt out of the arbitration agreement.

47. ***Corvi's Account Creation and Assent to Yahoo's TOS***. According to Yahoo's Account Management Tool, Louis Corvi created an account on or around November 19, 2002, with the email address provided to Yahoo through his counsel. He accepted Yahoo's 2018 Terms on April 13, 2018. He received email notice of the updated 2025 Terms on March 14, 2025, and then also received notice via one of the methods described above. *See supra* ¶¶ 15, 17. He affirmatively accepted Yahoo's 2025 Terms on November 20, 2025.

48. While Corvi created his account at a time when Yahoo's Terms did not include an arbitration clause, Yahoo's records indicate that he affirmatively accepted the 2018 Terms on April 13, 2018 by clicking "I Accept" on Yahoo's website or mobile application when prompted with a notification and link to the 2018 Terms. Attached as **Exhibit 1** is a true and correct copy of Yahoo's Terms dated April 2018, which were in effect on April 13, 2018.

49. Corvi was sent an email on March 14, 2025, alerting him to Yahoo's revised Terms. Corvi continued logging into his Yahoo account and using Yahoo's services after Yahoo sent this email.

50. Corvi affirmatively accepted the 2025 Terms on November 20, 2025, by clicking "Agree" on Yahoo's website or mobile application when prompted with a notification and link to the 2025 Terms. Attached as **Exhibit 9-H** is a true and correct copy of Yahoo's Terms dated October 27, 2025, which were in effect on November 20, 2025. There were no substantive changes between the May 2025 Terms and the Terms Corvi agreed to on November 20, 2025.

51. The deadline for Corvi to opt out of the arbitration agreement was December 20, 2025. Corvi has not opted out of the arbitration agreement pursuant to the process established in the May 2025 Terms.

52. ***Baker's Account***. According to Yahoo's business records, plaintiff Tyler Baker's Yahoo accounts were deactivated for inactivity in December 2023 and August 2024. Yahoo's Account Management Tool does not maintain the dates a user created their account or accepted Yahoo's Terms for deactivated accounts, so I am currently unable to determine whether and when Baker assented to Yahoo's Terms.

53. ***Yahoo's Privacy Policies.*** Plaintiffs affirmatively assented to Yahoo's Privacy Policy, Yahoo's Collection, Use, and Linking of Technical Identifiers Policy ("Technical Identifiers Policy"), Yahoo's Cookie Policy, and Yahoo's IP Address Policy (collectively, "Yahoo's privacy policies").

54. There have been no substantive modifications to Yahoo's Privacy Policy since April 13, 2018.

55. There were no substantive modifications to Yahoo's Technical Identifiers Policy between September 22, 2021 and February 13, 2025. On or around April 30, 2025, provisions concerning the "[u]se of [i]dentity-based [d]ata" and available opt-out options were incorporated into the policy. No further substantive changes have been made since that date.

56. There have been no substantive modifications to Yahoo's Cookie Policy since April 13, 2018.

57. There have been no substantive modifications to Yahoo's IP Address Policy since April 13, 2018.

58. Plaintiff Lowery assented to Yahoo's privacy policies on or around November 23, 2022 when he created his account with Yahoo. Attached as **Exhibits 11-D, 12-A, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on November 23, 2022. Lowery also assented to Yahoo's privacy policies on or around December 18, 2025, when he accepted Yahoo's 2025 Terms. Yahoo's privacy policies were incorporated within Yahoo's Terms. Attached as **Exhibits 11-F, 12-C, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on December 18, 2025.

59. Plaintiff Davis assented to Yahoo's privacy policies on or around April 15, 2024 when he created one of his accounts with Yahoo. Attached as **Exhibits 11-E, 12-A, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on April 15, 2024. Davis also assented to Yahoo's privacy policies on or around November 10, 2018, January 24, 2019, and May 5, 2020, when he accepted Yahoo's 2018 Terms for his other three accounts. The notification issued by Yahoo to prompt users to review and accept the updated 2018 Terms also included a link to the accompanying privacy

policies. Attached as **Exhibits 11-B, 13-A,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy, and IP Address Policy that were in effect on November 10, 2018. Attached as **Exhibits 11-B, 13-A,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy, and IP Address Policy that were in effect on January 24, 2019. Attached as **Exhibits 11-C, 13-B,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy, and IP Address Policy that were in effect on May 5, 2020. Additionally, Davis assented to Yahoo's privacy policies on or around September 19 and September 23, 2025 when he accepted Yahoo's 2025 Terms. Yahoo's privacy policies were incorporated within Yahoo's Terms. Attached as **Exhibits 11-F, 12-B, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on September 19, 2025 and September 23, 2025.

60. Plaintiff Hackett assented to Yahoo's privacy policies on or around April 25, 2018, when he accepted Yahoo's 2018 Terms. The notification issued by Yahoo to prompt users to review and accept the updated 2018 Terms also included a link to the accompanying privacy policies. Attached as **Exhibits 11-A, 13-A,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy and IP Address Policy that were in effect on April 25, 2018. Hackett also assented to Yahoo's privacy policies on or around October 14, 2025, when he accepted Yahoo's 2025 Terms. Yahoo's privacy policies were incorporated within Yahoo's Terms. Attached as **Exhibits 11-F, 12-B, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on October 14, 2025.

61. Plaintiff Hunting assented to Yahoo's privacy policies on or around May 18, 2018, when he accepted Yahoo's 2018 Terms. The notification issued by Yahoo to prompt users to review and accept the updated 2018 Terms also included a link to the accompanying privacy policies.

Attached as **Exhibits 11-B, 13-A,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy, and IP Address Policy that were in effect on May 18, 2018. Hunting also assented to Yahoo's privacy policies on or around October 22, 2025, when he accepted Yahoo's 2025 Terms. Yahoo's privacy policies were incorporated within Yahoo's Terms. Attached as **Exhibits 11-F, 12-C, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on October 22, 2025.

62. Plaintiff Corvi assented to Yahoo's privacy policies on or around April 13, 2018, when he accepted Yahoo's 2018 Terms. The notification issued by Yahoo to prompt users to review and accept the updated 2018 Terms also included a link to the accompanying privacy policies. Attached as **Exhibits 11-A, 13-A,** and **14-A** are true and correct copies of Yahoo's Privacy Policy, Cookie Policy, and IP Address Policy that were in effect on April 13, 2018. Corvi also assented to Yahoo's privacy policies on or around November 20, 2025, when he accepted Yahoo's 2025 Terms. Yahoo's privacy policies were incorporated within Yahoo's Terms. Attached as **Exhibits 11-F, 12-C, 13-C,** and **14-B** are true and correct copies of Yahoo's Privacy Policy, Technical Identifiers Policy, Cookie Policy, and IP Address Policy that were in effect on November 20, 2025.

63. I declare under penalty of perjury under the laws of the United States and the State of New York that the foregoing is true and correct.

Dated: City of Palm Springs, CA
January 30, 2026

By: ______________________
Robert Gurwin