**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**

TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

YAHOO INC., and YAHOO AD TECH LLC,

Defendants.

Case No. 1:25-cv-02797-DLC

Hon. Denise L. Cote

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY CASE**

**TABLE OF CONTENTS**

PAGE

I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. The Nature of This Lawsuit ..... 2
B. Yahoo Delayed in Seeking Plaintiffs' Email Addresses ..... 2
C. Four of the Five Plaintiffs Created Yahoo Accounts Prior to April 2018 ..... 3
D. The Sign-Up Flows in November 2022 and April 2024 ..... 4
E. Yahoo's Post-2018 "Notification" Process Is Deficient ..... 5
F. Yahoo Cannot Identify Which of The [redacted] Plaintiffs Allegedly Saw ..... 7
G. Yahoo Cannot Show What Action Each Plaintiff Allegedly Took to Demonstrate "Assent". 7
H. The 2025 Pop-up Notification Is Deficient ..... 8
I. The 2025 Email Notifications Are Irrelevant & Impermissibly Vague ..... 9
J. Yahoo Does Not Have Evidence of "Continued Use" ..... 9
III. ARGUMENT ..... 10
A. Yahoo's Motion Is Untimely ..... 10
B. Yahoo Cannot Meet Its Burden of Showing Notice and Assent at Sign-Up for Plaintiffs Lowery and Davis ..... 11
C. Yahoo Cannot Show a Valid Modification Post-2018 ..... 12
D. The Scope of the Arbitration Provision Is Not Delegated to the Arbitrator ..... 18
E. Plaintiffs' Claims Do Not Fall Within the 2018 or 2025 Terms ..... 21
F. The 2018 and 2025 Terms Are Unenforceable for Lack of Specificity ..... 24
G. Litigation Should Not Be Stayed ..... 25
IV. CONCLUSION ..... 29

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abebe v. Yum! Brands, Inc.*,
No. 4:23-CV-682, 2024 WL 3891357 (E.D. Tex. Aug. 21, 2024) .......... 14

*Aekyung Co. v. Intra & Co.*,
No. 99 CIV. 11773, 2000 WL 1521202 (S.D.N.Y. Oct. 13, 2000).......... 28

*Al Thani v. Hanke*,
No. 20 CIV. 4765, 2021 WL 4311391 (S.D.N.Y. Sept. 21, 2021) .......... 21

*Alvarez v. Experian Information Solutions, Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023) .......... 11

*Armor All/STP Prods. Co. v. TSI Prods., Inc.*,
337 F. Supp. 3d 156 (D. Conn. 2018) .......... 20, 22

*Arnaud v. Doctor's Assocs. Inc.*,
821 F. App'x 54 (2d Cir. 2020) .......... 12

*Bassett v. Elec. Arts, Inc.*,
93 F. Supp. 3d 95 (E.D.N.Y. 2015) .......... 17

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......... 12

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022).......... 14

*Birmingham Assocs. Ltd. v. Abbott,*
*Lab'ys*, 547 F. Supp. 2d 295 (S.D.N.Y. 2008) .......... 27

*BSG Res. (Guinea) Ltd. v. Soros*,
No. 17 CIV. 2726 (JFK), 2017 WL 5897450 (S.D.N.Y. Nov. 29, 2017) .......... 25

*Byrne v. Charter Commc'ns, Inc.*,
581 F. Supp. 3d 409 (D. Conn. 2022) .......... 27, 28

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019) .......... 16, 17

*Chabolla v. ClassPass Inc.*,
129 F.4th 1147 (9th Cir. 2025).......... 14

*Contec Corp. v. Remote Sol., Co.*,
398 F.3d 205 (2d Cir. 2005) .......... 21

*Cooper v. Ruane Cunniff & Goldfarb Inc.*,
990 F.3d 173 (2d Cir. 2021) .......... 22

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*,
923 F.2d 245 (2d Cir. 1991) .......... 24

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) .......... 22

*DDK Hotels, LLC v. Williams-Sonoma, Inc.,*
6 F.4th 308 (2d Cir. 2021) .......... 19, 20

*Denson v. Donald J. Trump for President, Inc.*,
530 F. Supp. 3d 412 (S.D.N.Y. 2021) .......... 25

*Doyle v. UBS Fin. Servs*., Inc.,
144 F.4th 122 (2d Cir. 2025) .......... 10, 11

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*,
349 F. App'x 551 (2d Cir. 2009) .......... 13

*FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*,
239 F. Supp. 3d 640 (E.D.N.Y. 2017) .......... 22

*In re Celsius Network LLC,*
647 B.R. 631 (Bankr. S.D.N.Y. 2023) .......... 12

*In re Currency Conversion Fee Antitrust Litig.*,
361 F. Supp. 2d 237 (S.D.N.Y. 2005) .......... 16

*In re Windsor Plumbing Supply Co., Inc.*,
170 B.R. 503 (Bankr. E.D.N.Y. 1994) .......... 25

*Katz v. Cellco P'ship*,
794 F.3d 341 (2d Cir. 2015) .......... 25

*Kim v. Evergreen Adult Day Care in NY Inc.*,
No. 22CV548, 2024 WL 989909 (E.D.N.Y. Mar. 6, 2024) .......... 27

*LAVVAN, Inc. v. Amyris, Inc.*,
No. 21-1819, 2022 WL 4241192 (2d Cir. Sept. 15, 2022) .......... 19

*Levy v. Credit Plus, Inc.*,
No. 21-CV-5541, 2023 WL 2644352 (S.D.N.Y. Mar. 27, 2023) .......... 12

*Lipsett v. Popular Bank*,
No. 22-3193, 2024 WL 111247 (2d Cir. Jan. 10, 2024)....................................................... 15

*Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
No. 10 CIV. 8134, 2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)............................................ 26

*Mayfield v. Asta Funding, Inc.*,
95 F. Supp. 3d 685 (S.D.N.Y. 2015) ........................................................................................ 13

*McSweeney v. Cohen*,
No. 24-CV-1503, 2026 WL 658371 (S.D.N.Y. Mar. 9, 2026) ................................................. 10

*Meeg v. Heights Casino*,
No. 17-CV-4059, 2020 WL 1493658 (E.D.N.Y. Mar. 27, 2020) ............................................. 11

*Metro. Life Ins. Co. v. Bucsek*,
919 F.3d 184 (2d Cir. 2019) ...................................................................................................... 18

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ................................................................................................ 16, 17

*Microsoft Corp. v. Samsung Elecs. Co.*,
60 F. Supp. 3d 525 (S.D.N.Y. 2014) ........................................................................................ 22

*Morgan v. Sundance, Inc.*,
596 U.S. 411, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022) ..................................................... 10, 11

*Morrison v. Johnson*,
No. 1:01CV636, 2006 WL 2811802 (N.D.N.Y. Sept. 28, 2006) ............................................. 27

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ............................................................................................. 18, 20

*O'Conner v. Agilant Sols., Inc.*,
444 F. Supp. 3d 593 (S.D.N.Y. 2020) ...................................................................................... 16

*Orange Chicken, L.L.C. v. Nambe Mills, Inc.*,
No. 00 CIV. 4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000)...................................... 28, 29

*Paduano v. Express Scripts, Inc.*,
55 F. Supp. 3d 400 (E.D.N.Y. 2014) ........................................................................................ 26

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ...................................................................................................... 19

*Plazza v. Airbnb, Inc.*,
289 F. Supp. 3d 537 (S.D.N.Y. 2018) ................................................................................ 16, 17

*Purcell v. Navient Sols., LLC*,
No. 18-CV-6045, 2019 WL 188693 (S.D.N.Y. Jan. 14, 2019) .......... 24

*Querette v. Chromalloy Gas Turbine LLC*,
No. 22-CV-00356 (PMH), 2023 WL 145014 (S.D.N.Y. Jan. 10, 2023) .......... 19

*Resorb Networks, Inc. v. YouNow.com*,
51 Misc. 3d 975, 30 N.Y.S.3d 506 (N.Y. Sup. Ct. 2016) .......... 14

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017) .......... 15

*Rodriguez v. Festival Fun Parks, LLC*,
763 F. Supp. 3d 336 (E.D.N.Y. 2025) .......... 14

*Romero v. Goldman Sachs Bank USA*,
No. 1:25-CV-2857, 2026 WL 205599 (S.D.N.Y. Jan. 27, 2026) .......... 13

*Sacchi v. Verizon Online LLC*,
No. 14-CV-423-RA, 2015 WL 765940 (S.D.N.Y. Feb. 23, 2015) .......... 17

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012) .......... 15, 17

*Schwartz v. Sterling Entertainment Enterprises, LLC,*
No. 21-CV-01084-PAC, 2021 WL 4321106 (S.D.N.Y. Sept. 23, 2021) .......... 19

*Sierra Rutile Ltd. v. Katz*,
937 F.2d 743 (2d Cir. 1991) .......... 25

*SlackPass, Inc. v. Frosted, Inc.*,
No. 23-CV-06393, 2026 WL 878691 (S.D.N.Y. Mar. 31, 2026) .......... 10

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 25

*Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*,
442 F. Supp. 3d 519 (D. Conn. 2020) .......... 13

*Sollinger v. SmileDirectClub, LLC*,
No. 19-CV-5977, 2020 WL 774135 (S.D.N.Y. Feb. 18, 2020) .......... 16, 17

*Specht v. Netscape Commc'ns Corp.,*
306 F.3d 17 (2d Cir. 2002) .......... 14, 21, 23

*Staley v. Hotel 57 Servs., LLC*,
No. 23-770, 2024 WL 1090816 (2d Cir. Mar. 13, 2024) .......... 20

*Starke v. SquareTrade, Inc.*,
913 F.3d 279 (2d Cir. 2019) ........................................ 11, 15

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
363 U.S. 574 (1960) ........................................ 24

*Valle v. ATM Nat., LLC*,
No. 14-CV-7993, 2015 WL 413449 (S.D.N.Y. Jan. 30, 2015) ........................................ 15

*Weinstein v. Jenny Craig Operations, Inc.*,
No. 105520/11, 2014 WL 10680367 (N.Y. Sup. Ct. Sep. 08, 2014) ........................................ 16

*Wexler v. AT & T Corp.*,
211 F. Supp. 3d 500 (E.D.N.Y. 2016) ........................................ 22

*Williams v. Swack*, No. 13-CV-00974 S M,
2015 WL 2237216 (W.D.N.Y. May 12, 2015) ........................................ 28

*Wu v. Uber Techs., Inc.*,
43 N.Y.3d 288 (2024) ........................................ 17

*Yuniasih v. Hogsalt,*
No. 25-CV-6754, 2026 WL 915286 (S.D.N.Y. Apr. 3, 2026) ........................................ 13

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ........................................ 12

**STATUTES**

9 U.S.C. § 3 ........................................ 25

## I. INTRODUCTION

Yahoo moves to compel five Plaintiffs to arbitration (ECF No. 72 ("Motion" or "Mot.")) based on a patchwork of incomplete records, each riddled with gaps that prevent this Court from concluding Plaintiffs knowingly assented to arbitrate their claims.

Yahoo's lead argument is that Plaintiffs agreed to arbitrate by clicking "I Accept" in response to a 2018 notification. But Yahoo cannot produce a complete copy of the notification it claims Plaintiffs saw. Its own production [redacted]

Yahoo's scope and delegation arguments are equally deficient. Yahoo's arbitration provision, by its own terms, covers only disputes arising out of "Services" that the user "receive[s] from" Yahoo. Plaintiffs' claims arise from Yahoo's covert interception of their personal data on *third-party* websites—conduct entirely outside Yahoo Mail, Yahoo Sports, or any "Service" Yahoo provided to Plaintiffs. Yahoo's attempt to stretch its consumer terms to cover undisclosed internet-wide surveillance finds no support in the text of its own agreements. And its delegation argument fares no better: a narrow provision covering disputes arising from services a user "receive[s] from" Yahoo does not clearly and unmistakably delegate arbitrability of claims unrelated to those services.

Finally, Yahoo's request for a stay omits critical information. Yahoo argues a stay is necessary to streamline discovery and narrow issues, but the very arbitration rules its terms

incorporate make these purported "efficiencies" effectively impossible by imposing confidentiality requirements. As do Yahoo's own terms, which state that "all arbitration proceedings will be confidential and closed to the public" and "all records relating thereto will be permanently sealed." *See, e.g.*, ECF No. 74-6 at 27. An arbitration conducted under these constraints—with no public record, no discoverable evidence, and sealed proceedings—defeats the surface level efficiencies Yahoo boasts about in its Motion.

For each of these reasons, Yahoo's Motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

### A. The Nature of This Lawsuit

Plaintiff Tyler Baker filed this lawsuit on April 3, 2025 alleging that, when he and Class Members signed into third-party services, Yahoo intercepted their email address and/or phone number, alongside their private searches and queries, and uses this data to profile and target individuals on behalf of its advertiser clients. ECF No. 1 ¶¶ 5, 33–34, 60–66. Nowhere in this complaint did Plaintiff Baker allege any claims based on or relating to the use of Yahoo-branded "Services," such as Yahoo Sports or Yahoo Mail. Indeed, Yahoo admits that Plaintiff Baker does not have an active Yahoo account. Thousands (if not millions) of other individuals in the Class also are not Yahoo account holders.[1]

### B. Yahoo Delayed in Seeking Plaintiffs' Email Addresses

Yahoo maintains [redacted] *See* Transcript of the Deposition of Robert Gurwin ("Gurwin Dep."), Ex. 1 at 15:12–16:5; *see also* Exs. 2–11. Yahoo's declarant and 30(b)(6)

[1] "Plaintiffs" as used herein refers to Plaintiffs William Davis, Brian Hunting, Louis Corvi, Christopher Hackett, and Ratiek Lowery whom Yahoo seeks to compel to arbitration.

designee, Mr. Gurwin, testified that [redacted] *See* Gurwin Dep. at 19:18–22; *id.* at 16:22–18:2; Exs. 2–7, 11.

[redacted] *See* Gurwin Dep. at 23:23–24:10; *see also* Exs. 8–10. [redacted] Gurwin Dep. at 24:12–18.

Accordingly, Yahoo knew that it [redacted] to ensure their data was adequately preserved for purposes of this litigation. Yahoo should have requested this information in April 2025 when Plaintiff Baker filed this lawsuit, in June 2025 when four additional Plaintiffs were added, and certainly in September 2025 when Plaintiff Lowery was added to this case.

Yahoo did not do so, and instead waited until November 12, 2025 to request this information, which was nearly six weeks *after* Plaintiffs sent Yahoo a letter on October 3, 2025 asking it to confirm whether Plaintiffs' data was preserved. Plaintiffs provided this information for Plaintiffs Baker, Hackett, and Lowery on November 21, 2025 (Declaration of Jacob Arber, ECF No. 73 ¶ 3) and for Plaintiffs Corvi, Davis, and Hunting on December 2, 2025. *Id.* ¶ 4.

Yahoo's Motion was not filed until January 30, 2026 (ECF No. 71), nine months after this lawsuit was filed and four months after the last plaintiff was added to this litigation. Yahoo provides no explanation for this delay.

### C. <u>**Four of the Five Plaintiffs Created Yahoo Accounts Prior to April 2018**</u>

Yahoo first added an arbitration clause to its terms in April 2018. *See* Declaration of Robert Gurwin, ECF No. 74 ("Gurwin Declaration") ¶ 6. Four of the five Plaintiffs that Yahoo seeks to compel to arbitration created Yahoo accounts before the 2018 terms went into effect:

- Plaintiff Corvi created his account in November 2002;
- Plaintiff Davis created three of his four accounts in October 2004, January 2011, June 2012, and the fourth in April 2024;
- Plaintiff Hunting created his account in March 2007;
- Plaintiff Hackett created his account in March 2008; and
- Plaintiff Lowery created his account in November 2022.

*See* Gurwin Decl. ¶¶ 22, 29, 37, 42, 47. Yahoo has no records of the sign-up process from earlier than 2018. *See* Declaration of Amanda Fiorilla ¶ 4 ("Fiorilla Decl."). Thus, it is unclear what the sign-up process looked like when Plaintiff Corvi, Davis (for three of his accounts), Hunting, and Hackett signed up for Yahoo accounts or what they did or did not agree to at that time.

### D. <u>The Sign-Up Flows in November 2022 and April 2024</u>

Yahoo produced the sign-up flows that it claims were in use in April 2024 when Plaintiff Davis created his fourth account (ECF No. 74-10) and when Plaintiff Lowery created an account in November 2022. *See* Ex. 12; ECF No. 74-8.

**FIGURE 1**




[redacted]

**E. <u>Yahoo's Post-2018 "Notification" Process Is Deficient</u>**

For users who already held Yahoo accounts when the 2018 terms went into effect, Yahoo claims it obtained assent to its amended terms through a notification displayed on its website after April 2018. *See* Gurwin Decl. ¶¶ 7–13. Yahoo does not have, and did not produce, a full copy of this notification. *See* Fiorilla Decl. ¶ 6. [redacted] *See* Gurwin Dep. at 44:14–45:12 ([redacted]).

From what Yahoo has produced, it is clear [redacted]

[redacted] *See* Ex. 13. Mr. Gurwin himself testified [redacted] Gurwin Dep. at 47:21–48:6.

Yahoo's declarant claims that after April 20, 2018, Yahoo users had to scroll through the full notification and were then presented with two options, "I Accept" or "I'll do this later." *See* Gurwin Decl. ¶ 10. However, documents produced by Yahoo and Mr. Gurwin's testimony confirm [redacted] Yahoo's production [redacted] (Ex. 13 at '008) [redacted] *See id*. at '026.

**FIGURE 2**

[redacted]

**FIGURE 3**

[redacted]

### F. Yahoo Cannot Identify Which of The [redacted] Plaintiffs Allegedly Saw

Yahoo's [redacted]; [redacted]. Mr. Gurwin claimed [redacted] Gurwin Dep. at 32:4–33:4. But the [redacted] described in Section II.E confirm that this is patently untrue.

### G. Yahoo Cannot Show What Action Each Plaintiff Allegedly Took to Demonstrate "Assent"

Yahoo claims that every Plaintiff except Lowery affirmatively "click[ed] 'I Accept'" in

response to the 2018 notification based on [redacted]. *See, e.g.*, Gurwin Decl. ¶¶ 30, 38, 43, 48. However, Mr. Gurwin admitted in his deposition that [redacted]. Specifically, [redacted] Gurwin Dep. at 51:11–15, 52:16–20. That concession matters because [redacted] (*see* Ex.13 at '008–'012), meaning Yahoo's records may reflect [redacted]

The data is also [redacted]. Yahoo's records [redacted] (Ex. 14)—[redacted] Gurwin Dep. at 39:6–20. When asked, Gurwin could not explain [redacted] *Id.* at 39:18–40:3.

**H. <u>The 2025 Pop-up Notification Is Deficient</u>**

Yahoo later changed its terms again in 2025. *See* Gurwin Decl. ¶¶ 14, 16–17. Yahoo's purported notification on these changes said nothing about an arbitration clause and stated only that Yahoo had "updated [its] Terms of Service[.]" *See* ECF No. 74-7.

In any event, no Plaintiff clicked "Agree" on this notification until after that Plaintiff was already a named party in this lawsuit. Plaintiffs Davis, Hackett, Hunting, and Corvi joined this lawsuit on June 6, 2025 (ECF No. 21), and allegedly clicked "Agree" months later—Davis on September 19 and 23, 2025, Hackett on October 14, 2025, Hunting on October 22, 2025, and Corvi on November 20, 2025. *See* Gurwin Decl. ¶¶ 35, 40, 45, 50. Meanwhile, Plaintiff Lowery joined this case on September 5, 2025 (ECF No. 46), and allegedly clicked "Agree" on December 18, 2025. *See* Gurwin Decl. ¶ 27.

### I. The 2025 Email Notifications Are Irrelevant & Impermissibly Vague

Yahoo also emphasizes that emails were sent to Yahoo users between March 13 and April 8, 2025, allegedly notifying them of its changed terms. Gurwin Decl. ¶ 15. Yahoo's own records show that [redacted], which is unsurprising given that they have had these accounts for approximately 18 and 23 years, respectively, and may not actively use them on a regular basis. *See* Ex. 15.

Yahoo's records purportedly show that [redacted]. *Id.* But, like above, it merely stated that Yahoo had "made changes to [its] Terms of Service to update how [Yahoo] will resolve any disputes that may arise over the use of our services" without ever mentioning the word "arbitration" or this new opt-out provision. *See* ECF No. 74-5.

### J. Yahoo Does Not Have Evidence of "Continued Use"

While Mr. Gurwin claims that Plaintiffs assented by continuing to use their Yahoo accounts, Yahoo has no evidence supporting this claim.

Yahoo only retains login information for the preceding year, meaning it has no login records at all for the period following the 2018 notification. *See* Fiorilla Decl. ¶ 5. Additionally, the records Mr. Gurwin relies on to claim Plaintiffs continued to use their accounts [redacted] Gurwin Dep. at 57:7–59:6. Mr. Gurwin also acknowledged that [redacted] *Id.* at 59:8–17. And he conceded that [redacted] *Id.* at 41:24–43:7. Thus, Mr. Gurwin's contention each of these Plaintiffs "continued logging into [their] account and us[ed] Yahoo services" (Gurwin Decl. ¶¶ 26 (Lowery), 34 (Davis), 39 (Hackett), 44

(Hunting), 49 (Corvi)) is unsupported.

## III. ARGUMENT

### A. Yahoo's Motion Is Untimely

In assessing waiver, courts in the Second Circuit must determine whether a party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Doyle v. UBS Fin. Servs*., Inc., 144 F.4th 122, 124 (2d Cir. 2025) (applying *Morgan v. Sundance, Inc*., 596 U.S. 411, 419, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022)). In *Doyle*, the defendants affirmatively invoked the district court's authority to resolve the dispute by filing a motion to stay or dismiss before moving to compel arbitration. *Id.* at 133.

Here, Yahoo filed two motions to dismiss (ECF Nos. 40, 49), and both substantive, merits-based motions sought complete dismissal of all Plaintiffs' claims without ever invoking arbitration. And while Yahoo buried a single footnote in each motion stating it "reserves the right to compel plaintiffs' claims to arbitration" (ECF No. 41 at 7 n.6; ECF No. 50 at 10 n.7), a bare footnote reservation is not the same as acting consistently with the right to arbitrate. *SlackPass, Inc. v. Frosted, Inc.*, No. 23-CV-06393, 2026 WL 878691, at *4 (S.D.N.Y. Mar. 31, 2026) ("By filing the motion [to dismiss], Defendants made a binary choice to resolve this case through litigation instead of arbitration."); *McSweeney v. Cohen*, No. 24-CV-1503, 2026 WL 658371, at *4 (S.D.N.Y. Mar. 9, 2026) (explaining "there was nothing that prevented Defendants from seeking arbitration in their first motion to dismiss or in their second motion to dismiss").

Yahoo's feigned ignorance that it could not discern whether Plaintiffs had Yahoo accounts until recently falls flat. As described in Section II.B, Yahoo knew it needed [redacted] to preserve their data and check their account status but inexplicably delayed in requesting this information until November 12, 2025—7 months after the first complaint was filed.

It cannot use the filing of the Third Amended Complaint (Mot. at 12) as an excuse when it at all times knew how its [redacted] worked. *See* Section II.B.

Yahoo's reliance on *Alvarez v. Experian Information Solutions, Inc.*, 661 F. Supp. 3d 18, 31 (E.D.N.Y. 2023) to justify its inexcusable delay lacks merit. In *Alvarez*, the court found the defendant acted promptly by notifying plaintiff of its intention to move to compel just four days after learning of the basis for its motion. Yahoo, by contrast, feigned ignorance and declined to request the information it knew it needed to confirm Plaintiffs' account status and preserve their data, opting instead to file two merits-based motions. And if that were not enough, *Alvarez* was also decided under the pre-*Morgan* framework, which the Second Circuit expressly stated must be revisited following the *Morgan* decision. *See Doyle*, 144 F.4th at 130. Under *Doyle* and *Morgan*, the critical question is whether Yahoo has "acted inconsistently" with the right to arbitrate. It has.

### B. Yahoo Cannot Meet Its Burden of Showing Notice and Assent at Sign-Up for Plaintiffs Lowery and Davis

"Under New York law, a court may only compel arbitration when 'the evidence establishes . . . [a] clear, explicit and unequivocal agreement to arbitrate.'" *Meeg v. Heights Casino*, No. 17-CV-4059, 2020 WL 1493658, at *3 (E.D.N.Y. Mar. 27, 2020). An individual may be bound by an arbitration provision "if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019).

Yahoo cannot meet its burden of establishing that Plaintiffs Lowery and Davis had notice of, and assented to, the post-2018 sign-up flows. The record demonstrates that the alleged terms were not presented in a manner that would provide reasonable consumers with conspicuous notice or allow them to unambiguously manifest assent. Yahoo's purported sign-up screens do not include any checkbox or comparable mechanism by which users could expressly indicate assent. *See*

*Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (denying motion to compel where sign-in process lacked an "I agree" click and used small text next to large action buttons). This is nowhere near comparable to the sign-up flow Yahoo relies on from *In re Celsius Network LLC,* 647 B.R. 631, 655 (Bankr. S.D.N.Y. 2023), which involved a pop-up notification that emphasized not to "skip reading Terms" that was presented in a "clean and compact" manner and "required two clicks," a checkbox and a clear "Accept" button, to proceed.

Moreover, the interface is cluttered with multiple fillable fields, and users are directed to a large "Continue" button that can easily be clicked without noticing the much smaller, inconspicuous reference to the "Terms." *See Arnaud v. Doctor's Assocs. Inc.*, 821 F. App'x 54, 56 (2d Cir. 2020) (finding no inquiry notice where the interface is "relatively cluttered" and "did not use a conspicuous size or font for the terms and conditions link"). This too is different from the case Yahoo relies on, where the terms were drawn to the users' attention in "bolded text." *See* Mot. at 14 (citing *Levy v. Credit Plus, Inc.*, No. 21-CV-5541, 2023 WL 2644352, at *7 (S.D.N.Y. Mar. 27, 2023)). This is nothing like the small, easily overlooked font used by Yahoo.

### C. Yahoo Cannot Show a Valid Modification Post-2018

Yahoo also cannot show Plaintiffs Corvi, Hackett, Hunting, and Davis, who signed up earlier than 2018 when Yahoo did not have an arbitration clause,[2] are bound by its unilateral modification of its terms. This is because Yahoo did not provide conspicuous notice and did not obtain Plaintiffs' unambiguous assent to these terms.

***2018 Notification.*** As described in Section II.E, Yahoo does not have a full copy of the

[2] Yahoo cannot establish these Plaintiffs agreed to any terms at sign up. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022) (affirming district court's decision denying motion to compel where defendant "did not submit evidence of how the [agreement] . . . was presented to users.").

2018 notification it claims it presented to all Plaintiffs. This alone is dispositive. *See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 555 (2d Cir. 2009) (affirming denial of motion to compel where defendant could only produce the first and last pages of the arbitration agreement). But even if it were not—[redacted]—it is clear the arbitration provision was buried in the middle of a long list of disparate provisions. This does not constitute conspicuous notice. *See Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*, 442 F. Supp. 3d 519, 524 (D. Conn. 2020), *aff'd and remanded*, 999 F.3d 828 (2d Cir. 2021) (finding Subway's arbitration provision was not reasonably conspicuous and noting that a consumer would have had to "jump[] (via hyperlink) or scroll[] several screens down just to find the arbitration clause").

Yahoo separately cannot show conspicuous notice and assent because there were [redacted], with [redacted] *See* Section II.E; *see also Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 694 (S.D.N.Y. 2015) (denying motion to compel arbitration where the defendants could not produce the actual agreements and relied on "eighteen sample contracts between non-parties and AT & T Wireless"); *Yuniasih v. Hogsalt,* No. 25-CV-6754, 2026 WL 915286, at *7 (S.D.N.Y. Apr. 3, 2026) (denying motion to compel because defendant's "recordkeeping issue" was "an admission" they "have no version of the Agreement" actually signed or agreed to by plaintiff); *Romero v. Goldman Sachs Bank USA*, No. 1:25-CV-2857, 2026 WL 205599, at *12 (S.D.N.Y. Jan. 27, 2026) (refusing to compel arbitration where the defendant provided "two varying accounts of [the plaintiff's] sign-up process").

Yahoo cannot show which of these versions were presented to each Plaintiff, nor can it show they affirmatively assented, given that its declarant acknowledged [redacted]

[redacted] *See* Sections II.F–G; *Rodriguez v. Festival Fun Parks, LLC*, 763 F. Supp. 3d 336, 355 (E.D.N.Y. 2025) (finding no assent where hyperlink "did not contain any text or visual signal that 'clearly warned' . . . that clicking the 'Continue' button . . . 'would constitute assent'"); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement") (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 28 (2d Cir. 2002)); *Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158–59 (9th Cir. 2025) (no assent where language stated "I agree to the Terms of Use and Privacy Policy" but the "action button" did not indicate "what action would constitute assent").

[redacted] only raises further issues about the reliability and accuracy of Yahoo's data, which Mr. Gurwin relies on to support his claims. *See Resorb Networks, Inc. v. YouNow.com*, 51 Misc. 3d 975, 982, 30 N.Y.S.3d 506, 512 (N.Y. Sup. Ct. 2016) (no assent where "defendants neither sufficiently lay a foundation" nor "adequately explain" how the data actually "reflects activity on plaintiff's user account"); *see also Abebe v. Yum! Brands, Inc.*, No. 4:23-CV-682, 2024 WL 3891357, at *2, 6 (E.D. Tex. Aug. 21, 2024) (finding that there is a genuine factual dispute where "there were potential issues with data migration that could have impacted the accuracy of [defendant's] data with respect to the Arbitration Agreement").

***2025 Email Notification.*** As described in Section II.I, Yahoo's purported email to Plaintiffs is equally deficient to constitute a valid contractual modification. [redacted], and even then, it stated only that Yahoo had "made changes to [its] Terms of Service to update how [Yahoo] will resolve any disputes that may arise over the use of our services." *See*

Section II.I. This is not sufficient to notify Plaintiffs of a fundamental change in their ability to assert their right to bring claims in federal court. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 (2d Cir. 2012) ("But even had the email more clearly indicated that it contained an arbitration clause, the fact that it was delivered after enrollment and did not require any affirmative acknowledgment of receipt . . . undermines [Defendant's] assertion that the plaintiffs received sufficient notice to bind them to the additional terms through their inaction."); *Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 751 n.2 (S.D.N.Y. 2017) (no sufficient notice where the email only indicated plaintiff would be "subject to the terms of the Dispute Resolution Agreement" without mentioning "a binding arbitration provision").

While Yahoo tries to distinguish these cases by relying on *Valle v. ATM Nat., LLC*, No. 14-CV-7993, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015), that case is inapposite. There, the defendant physically mailed its revised terms to the "address regularly used to communicate with its customers" and "highlighted the arbitration provision on the first page." The court found this, coupled with plaintiffs' "active[] use[]" of their credit cards, sufficient to establish notice and assent and distinguish *Valle* from *Schnabel*. Yahoo's vague email—sent to accounts some plaintiffs had opened over a decade ago—is not comparable to *Valle*'s direct, conspicuous mail notice.

***2025 Pop-Up Notification.*** Yahoo's 2025 pop-up notification is equally deficient, stating nothing about any arbitration provision or its 30-day opt-out period. *See Starke*, 913 F.3d at 289 ("The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."); *Lipsett v. Popular Bank*, No. 22-3193, 2024 WL 111247, at *2 (2d Cir. Jan. 10, 2024) (affirming denial of a motion to compel arbitration where "arbitration provisions [were] insufficiently clear or conspicuous to represent a 'definite offer' to arbitrate" and "fail[ed] to clearly notify [the plaintiff] about the terms on which he could accept or

decline”). This distinguishes Yahoo’s notification from the one it relies on in *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 550 (S.D.N.Y. 2018), which was a valid clickwrap agreement (i.e., requiring checking a box) and warned users in capital letters to “READ THE TERMS CAREFULLY” including the clause governing “JURISDICTION AND VENUE.” The other cases Yahoo cites are similarly distinguishable. Mot. at 15–16 (citing *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 439 (S.D.N.Y. 2019) (new terms were presented when opening the app, terms were fully scrollable, app could not be accessed unless the consumer clicked “I ACCEPT” and first page said “THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS YOU AND LYFT HAVE AGAINST EACH OTHER CAN BE BROUGHT . . .”); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78–80 (2d Cir. 2017) (terms were presented during “enrollment” and assent was “unambiguous” because consumers knew what action would be treated as “agreeing to the terms”); *Sollinger v. SmileDirectClub, LLC*, No. 19-CV-5977, 2020 WL 774135, at *2 (S.D.N.Y. Feb. 18, 2020) (same)).

But in any event, not a single Plaintiff saw or engaged with this vague notification until ***after*** they joined this lawsuit. Yahoo cannot retroactively take away Plaintiffs’ right to proceed in federal court after this action was already filed. *See Weinstein v. Jenny Craig Operations, Inc.*, No. 105520/11, 2014 WL 10680367, at *2 (N.Y. Sup. Ct. Sep. 08, 2014) (“Arbitration agreements signed after litigation is commenced are deemed unconscionable and thus unenforceable.”); *O’Conner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 597, 603 (S.D.N.Y. 2020) (refusing to enforce new arbitration agreement “rolled out” after the litigation started where it would prevent plaintiffs “from participating in this lawsuit”); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005) (arbitration clause added “after this litigation commenced” “may not be enforced”). No case cited by Yahoo stands for this retroactive application it advocates here.

Mot. at 15–16 (citing *Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 104 (E.D.N.Y. 2015) (finding plaintiff accepted modified terms with arbitration nearly *two years* prior to commencing suit); *Camilo*, 384 F. Supp. 3d at 439 (plaintiff accepted terms *nearly a year* prior to commencing suit); *Meyer*, 868 F.3d at 75 (action filed *one year* after completing sign-up flow); *Sollinger*, 2020 WL 774135, at *2 (lawsuit filed three years after agreeing to terms); *Plazza*, 289 F. Supp. 3d at 550 (arbitration provision was added in 2011 and plaintiff filed suit in 2016)).

***Continued Use.*** Yahoo's continued use claims (Mot. at 15–16) fail both factually and legally. As a factual matter, Yahoo cannot actually show Plaintiffs continued to use their accounts because [redacted] *See* Section II.J. And, legally, the Second Circuit has acknowledged that continued use, or failure to cancel an existing service, is not sufficient to establish assent. *See Schnabel*, 697 F.3d at 123 ("We do not think . . . that a failure to act affirmatively to cancel the membership will, alone, constitute assent.").

The cases Yahoo cites do not change this conclusion. Mot. at 15–16. In those cases, it was not mere continued use that was sufficient to establish assent, but the defendant had provided several forms of valid notice, such as a valid clickwrap or physically mailing the revised terms and notifying plaintiff's counsel of the new provision. *See* Mot. at 15 (citing *Sacchi v. Verizon Online LLC*, No. 14-CV-423-RA, 2015 WL 765940, at *8 (S.D.N.Y. Feb. 23, 2015) (finding assent where notice was provided over email to plaintiffs, to their counsel, and mailed with billing statement); *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 299 (2024) (finding assent where email expressly stated there were changes to arbitration provision, how plaintiff would assent in the app, and valid clickwrap was presented when the Uber app was opened)). As described herein, Yahoo does not have a single valid form of notice and assent, such that its bare continued use claim falls flat.

### D. <u>The Scope of the Arbitration Provision Is Not Delegated to the Arbitrator</u>

Yahoo's argument that the scope of its arbitration provision must be determined by an arbitrator fails because, as described above, there is no valid arbitration provision at all. *See* Sections III.B–C. But even if Yahoo's arbitration provision were valid, the scope of the arbitration agreement would still be an issue for this Court.

This is because the "law generally treats arbitrability as an issue for judicial determination" unless "the parties clearly and unmistakably provide otherwise." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014). Here, there is no clear, standalone delegation clause. The provision is clearly limited, stating it applies only to "any and all disputes, controversies or claims that in any way arise out of or relate to ***these terms*** or from ***<u>any services you receive from us</u>*** (or from any advertising for any such services)" including "whether a claim" falling within that provision "is subject to arbitration." *See* ECF Nos. 74-1, 74-4, 74-6 (2018 TOS § 14.2(b); March 2025 TOS § 14.2(b); May 2025 TOS § 14.2(b)). This limiting language does not meet the Second Circuit's clear and unmistakable standard. *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) ("[V]ague provisions as to whether the dispute is arbitrable are unlikely to provide the needed clear and unmistakable inference of intent to arbitrate its arbitrability.").

Further confirming the provision's narrow scope is its reference to "services you receive from [Yahoo]." *See* ECF Nos. 74-1, 74-4, 74-6 (2018 TOS § 14.2(b); March 2025 TOS § 14.2(b); May 2025 TOS § 14.2(b)). These "services" that Plaintiffs receive are undefined[3] but clearly meant

[3] By contrast, Yahoo's "Services" are defined as "brands, websites, apps, products, services and technologies." *See* ECF Nos. 74-1, 74-4, 74-6 (2018 TOS § 1; March 2025 TOS § 1; May 2025 TOS § 1). Yahoo did not use this capitalized, defined term but instead the phrase "services you receive from us."

to limit the types of disputes brought to arbitration to consumer-facing services—by using the language "you receive from us"—such as Yahoo Mail, Yahoo Sports, etc. This equally suggests this provision has a limited scope and is not a clear and unmistakable intent to delegate threshold issues. *See DDK Hotels, LLC v. Williams-Sonoma, Inc.,* 6 F.4th 308, 320 (2d Cir. 2021) (explaining arbitration provision that has a "limited scope" creates "ambiguity as to whether the parties clearly and unmistakably intended to delegate the question of arbitrability to the arbitrator" such that it is an issue for the court to decide); *LAVVAN, Inc. v. Amyris, Inc.*, No. 21-1819, 2022 WL 4241192, at *2 (2d Cir. Sept. 15, 2022) (holding that there was no "clear and unmistakable evidence" of an intent to arbitrate arbitrability where the agreement "commits some types of disputes to litigation"); *Querette v. Chromalloy Gas Turbine LLC*, No. 22-CV-00356 (PMH), 2023 WL 145014, at *4 (S.D.N.Y. Jan. 10, 2023) (holding that the agreement "does not reflect a clear and unmistakable intent to delegate the issue of arbitrability to an arbitrator" where "the parties consented to arbitrate a limited subset of disputes and that arguably this dispute could be brought in a forum other than arbitration").

These self-imposed limitations distinguish Yahoo's arbitration provision from the one at issue in *PaineWebber*, which—unlike Yahoo's provision— included "any and all controversies" between the parties regardless of whether they arise out of the terms themselves or that specific transaction. *See* Mot. at 19 (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1196 (2d Cir. 1996) ("concerning any account, transaction, dispute or the construction, performance, or breach of this or any other agreement[.]")). The *Schwartz* decision Yahoo cites is distinguishable for the same reason. *See* Mot. at 19 (citing *Schwartz v. Sterling Ent. Enters.*, No. 21-CV-01084-PAC, 2021 WL 4321106, at *6 (S.D.N.Y. Sept. 23, 2021) (employment claims were subject to arbitration where agreement applied to "all claims that arise out of or are related to an employee's employment" and

agreement clearly stated "The Arbitrator, and not any court or agency, shall have exclusive authority to resolve any dispute relating to the applicability, interpretation, formation, or enforceability of this . . . Agreement.")). Yahoo did not incorporate either of these clear delegation clauses, relying instead on much more limited language.

Yahoo's references to the NAM and/or AAA rules do not save its deficient provision either. Mot. at 19–20. All Yahoo's terms state is that the actual "[d]isputes" falling within the scope of the provision will be "resolved" in "accordance with" the NAM and/or AAA rules.[4] It does not say that, pursuant to these rules, all threshold issues shall be delegated to the arbitrator. *See NASDAQ OMX*, 770 F.3d at 1032 (rejecting similar argument because the "Services Agreement does not clearly and unmistakably direct that questions of arbitrability be decided by AAA rules; rather, it provides for AAA rules to apply to such arbitrations as may arise under the Agreement."); *Armor All/STP Prods. Co. v. TSI Prods., Inc.,* 337 F. Supp. 3d 156, 165 (D. Conn. 2018) (applying New York law and rejecting argument that incorporation of AAA rules meant the arbitrator should decide question of arbitrability in light of similar "carve-out provision"); *DDK Hotels*, 6 F.4th at 320–21 (affirming denial of motion to compel arbitration where "narrow scope of the arbitration provision . . . obscures the import of the incorporation of the AAA Rules and creates ambiguity as to the parties' intent to delegate arbitrability to the arbitrator"); *Staley v. Hotel 57 Servs., LLC*, No. 23-770, 2024 WL 1090816, at *3 (2d Cir. Mar. 13, 2024) (finding that given the limited nature of the arbitration provision, which applied to only "one of the following [four] types of claims" and included additional dispute carve-outs, "the incorporation of the AAA's rules, standing alone, does not provide clear and unmistakable evidence of the parties' intent to arbitrate threshold questions

[4] Yahoo attached AAA's Commercial Rules to support its position (ECF No. 73-2), but its terms reference the Consumer Rules, which Yahoo does not include as an exhibit. *See, e.g.*, ECF No. 74-1 (2018 TOS § 2.b.ii).

of arbitrability"). In light of the already-limiting language used in Yahoo's arbitration provision, the bare reference to these rules is not enough to clearly and unmistakably delegate the scope of arbitration to the arbitrator.

The two cases Yahoo cites did not evaluate whether referencing AAA or NAM rules in the context of an already-limited arbitration provision is sufficient and, thus, have no applicability here. *See* Mot. at 19–20 (citing *Al Thani v. Hanke*, No. 20 CIV. 4765, 2021 WL 4311391, at *7 (S.D.N.Y. Sept. 21, 2021) (distinguishing *DDK Hotels* because, unlike that case and here, the arbitration provision was not "narrow" and did not contain a "carve-out"); *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (evaluating incorporation of AAA rules by itself).

### E. Plaintiffs' Claims Do Not Fall Within the 2018 or 2025 Terms

Even if Yahoo's arbitration provision were applicable, and it is not, Yahoo still cannot compel Plaintiffs to arbitration because their claims fall well outside the 2018 and 2025 Terms. *See Specht*, 306 F.3d at 36 (explaining that in "determining whether a particular claim falls within the scope of the parties' arbitration agreement, [the] Court 'focus[es] on the factual allegations[']" and whether "those allegations 'touch matters' covered by the [arbitration agreement]").

Here, Plaintiffs assert claims arising from Yahoo's alleged collection of their private data and personally identifiable information on third-party websites unrelated to Yahoo or any services it provides to Plaintiffs. Yahoo's arbitration provision, however, only applies to claims that "relate to [its] terms" or from "services [Plaintiffs] receive from [Yahoo] (or from any advertising for any such services)." ECF Nos. 74-1, 74-4, 74-6 (2018 TOS § 14.2(b); March 2025 TOS § 14.2(b); May 2025 TOS § 14.2(b)). This would not include Plaintiffs' claims here, because collecting Plaintiffs' private queries and searches and profiling Plaintiffs is not a "service[] [provided to Plaintiffs]"— it is something Yahoo does for its own benefit and the benefit of its advertising clients. It equally

is not an advertisement for services Yahoo provides to Plaintiffs, such as an advertisement for Yahoo Sports or Yahoo Mail.

Indeed, this is precisely why non-Yahoo users and inactive users, like Plaintiff Baker, also have claims against Yahoo. That you do not need to have a Yahoo account—and do not need to ever see Yahoo's terms—is dispositive on whether Plaintiffs' claims arise out of Yahoo's terms and the "service[s] [Yahoo] [provides]" to consumer clients. *See Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 119 (2d Cir. 2025) (finding plaintiffs' claims fell outside Grubhub's terms because their claims "have nothing to do with" the "use of Grubhub[]" but plaintiffs' "access and use of *other* platforms and restaurants") (emphasis in original); *FUJIFILM N. Am. Corp. v. Geleshmall Enters. LLC*, 239 F. Supp. 3d 640, 649 (E.D.N.Y. 2017) (finding "gray market claims" were not subject to arbitration because they "exist separate and apart from the conduct that is the subject of the 2014 Agreement."); *Wexler v. AT & T Corp.,* 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) (invalidating arbitration clause and explaining a reasonable consumer would not understand an arbitration provision in a cellular company's terms of service would include "every possible dispute" including those "unrelated to cell phone coverage."); *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183–84 (2d Cir. 2021) (relying on Ninth Circuit precedent and finding arbitration provision in employee agreement did not cover claims relating to separate investment decisions); *Armor All/STP*, 337 F. Supp. 3d at 170 (finding agreement to provide consulting services did not encompass separate claims for "intellectual property rights and unfair competition"); *Microsoft Corp. v. Samsung Elecs. Co.*, 60 F. Supp. 3d 525, 531 (S.D.N.Y. 2014) (finding claims fell outside the Royalty and Credit Calculation Reports and Annual Invoices even though the action would require "interpretation of substantive provisions of both agreements" because the "real controversy" did not concern "the discrete accounting and invoicing issues that the parties have

agreed to arbitrate”).

The Second Circuit’s analysis in *Specht* is particularly instructive: the defendant offered two distinct products—“Communicator,” which was governed by a license agreement containing an arbitration clause, and “SmartDownload,” which was the product that actually engaged in the alleged eavesdropping and privacy violations. 306 F.3d at 37–38. The Second Circuit affirmed the district court’s holding that the plaintiffs’ privacy and eavesdropping claims were not subject to the Communicator license agreement because the offending conduct was performed by SmartDownload—a separate product that users could download and use independently. *Id.* at 38. The Court recognized that binding plaintiffs to an arbitration clause in one agreement based on conduct arising from an entirely different product would exceed the scope of the parties’ bargain. The same is true here—Plaintiffs need not use any Yahoo service at all to have their data collected and used by Yahoo, which confirms that these claims fall outside Yahoo’s Terms.

Yahoo cannot avoid this outcome by emphasizing that ConnectID is a “service provided by Yahoo Ad Tech LLC.” Mot. at 25. This is because Yahoo’s terms that it relies on do not state they apply to all services—like Yahoo tries to contend in its Motion—but only to “services [Plaintiffs] ***receive from*** [Yahoo].” Mot. at 24–25 (emphasis added). *See* Section III.D. ConnectID is not a service Plaintiffs receive. It is a service Yahoo provides to third-party publishers and advertisers that consumers had no idea ever took place. Yahoo cannot convert its provision to something broader than the plain language it used in its terms.

Yahoo’s reliance on its Terms of Service, which also state they apply to “[s]ervices ***that you use***” (Mot. at 25) fails for the same reason. Plaintiffs’ claims do not arise out of Yahoo Mail or Yahoo Sports and other services that consumers “use,” but the unknown and surreptitious tracking and profiling of consumers on third-party websites with no relationship to Yahoo. This

plainly is not a service consumers "use."

And its citation to its privacy policy only proves Plaintiffs' point here. That document (which Plaintiffs dispute is properly incorporated by reference) draws a clear distinction between data from Yahoo's ***own Services*** and data Yahoo collects "***off of [its] Services***" through "data collection technologies" deployed on third-party websites. *See* ECF No. 74-11 at 4, 11, 18, 27, 41, 55. Yahoo's own privacy policy thus recognizes that its off-platform surveillance activities occur ***outside*** of its "Services"—and certainly those that it provides to consumers.

The cases Yahoo relies on only underscore why its arbitration provision does not reach Plaintiffs' claims. Each involved disputes that were tethered to the subject matter of the agreement containing the arbitration clause, unlike here, where Plaintiffs' claims exist entirely independent of Yahoo's terms, the consumer-facing services they govern, and its narrow arbitration clause. *See* Mot. at 24 (citing *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 250-52 (2d Cir. 1991) (finding the parties were bound by the "forward contracts" because they shared the same "subject matter" as the second contract, and the forward contract was the "genesis of the parties' relationship"); *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 583 (1960) (dispute was over a "violation" and thus the "meaning" of the agreement containing the arbitration provision); *Purcell v. Navient Sols., LLC*, No. 18-CV-6045, 2019 WL 188693, at *7 (S.D.N.Y. Jan. 14, 2019) (finding that arbitration provision was "broad" and thus encompassed TCPA claims because calls were made to collect on "the notes" that were the subject of the agreement)).

### F. <u>The 2018 and 2025 Terms Are Unenforceable for Lack of Specificity</u>

At a minimum, neither the 2018 nor the 2025 terms can be enforced because the subject matter is not well defined and clearly ambiguous. Yahoo itself flip-flops between acknowledging

"Services" are only those Yahoo "made . . . available to [consumers]" (Mot. at 21) and claiming, instead, that Services are all encompassing so much so that they cover what Yahoo expressly calls conduct that occurs "***off of [its] Services***" in its Privacy Policy. Mot. at 25. If this provision is ambiguous enough that Yahoo can assign it different interpretations whenever it suits its argument, it is too ambiguous to be enforceable by a court of law. *See Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 432 (S.D.N.Y. 2021) ("Impenetrable vagueness and uncertainty will not do because definiteness as to material matters is of the very essence in contract law."); *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 523 (Bankr. E.D.N.Y. 1994) ("A contract may be void for indefiniteness even though the parties to the contract believe they are bound.").

**G. Litigation Should Not Be Stayed**

Plaintiff Baker's claims are non-arbitrable, such that Yahoo is not entitled to a mandatory stay under 9 U.S.C. § 3 of the FAA with regard to his claims or those brought by other Class Members who do not have active Yahoo accounts. *See* Mot. at 26. Yahoo's citation to cases like *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) and *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), where mandatory stays were appropriate, is thus irrelevant. As is its reliance on *BSG Res. (Guinea) Ltd. v. Soros*, No. 17 CIV. 2726 (JFK), 2017 WL 5897450, at *3 (S.D.N.Y. Nov. 29, 2017), where *all* claims brought by *all* plaintiffs against one of the defendants were subject to arbitration. The same is not true here, where Plaintiff Baker cannot be compelled to arbitration, nor can any of the hundreds of thousands (if not millions) of individuals who do not have active Yahoo accounts or have never had any relationship with Yahoo.

A discretionary stay is also inappropriate. "[T]he movant bears a heavy burden of showing necessity for the stay." *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 750 (2d Cir. 1991). Yahoo cannot

meet this burden.

***Lack of Efficiencies.*** Yahoo's claims that staying this case will avoid "piecemeal litigation" and "duplication of discovery" are contrary to the NAM and AAA Rules that Yahoo has unilaterally selected to govern any potential arbitration. Under these rules, discovery is "voluntary," not mandatory. *See* ECF No. 74-6 at 25, 40; ECF No. 73-1 at 12 (NAM Rule 18 explaining "[t]he parties shall conduct discovery on a voluntary basis"); Ex. 16 at 16–17 (AAA Rule 20 explaining parties shall exchange documents they will "rely" on, with all other discovery discretionary). And even if there were discovery, that evidence and any rulings are "inadmissible in any other judicial or alternative dispute resolution proceeding." *See* ECF No. 73-1 at 4; Ex. 16 at 23 ("Unless otherwise required by applicable law, court order, or the parties' agreement, the AAA and the arbitrator shall keep confidential all matters relating to the arbitration or the award."); *id.* at 18 ("The arbitrator and the AAA shall maintain the privacy of the hearings unless the law provides to the contrary."). Yahoo's own terms confirm the same. *See, e.g.,* ECF No. 74-6 at 27 ("all arbitration proceedings will be confidential . . . and all records relating thereto will be permanently sealed[.]"). Thus, no discovery taking place in arbitration (if any) would alleviate or dispose of Yahoo's need to participate in discovery in this action. Nor would anything in arbitration streamline the issues, because all proceedings are sealed and confidential. If anything, these severe limitations merely show that compelling Plaintiffs to arbitration would be unconscionable under the circumstances (*see Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 418 (E.D.N.Y. 2014) (finding the arbitration agreement's "limitations on discovery" substantively unconscionable)), not that there are efficiencies to delaying litigation until arbitration is complete.

This is unlike *Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, No. 10 CIV. 8134, 2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011), where the pending international arbitration

would have an impact on the parties' respective commercial contract claims and damages following the Deepwater Horizon oil spill. *See* Mot. at 28. This case also differs from the other cases Yahoo cites where the court found real efficiencies could be gained by having arbitration proceed first. *See* Mot. at 27–28 (citing *Kim v. Evergreen Adult Day Care in NY Inc.*, No. 22CV548, 2024 WL 989909, at *6 (E.D.N.Y. Mar. 6, 2024) (finding arbitration would streamline issues and discovery); *Birmingham Assocs. Ltd. v. Abbott Lab'ys*, 547 F. Supp. 2d 295, 302 (S.D.N.Y. 2008) (similar)); *Byrne v. Charter Commc'ns, Inc.*, 581 F. Supp. 3d 409, 423 (D. Conn. 2022) (the arbitrator's interpretation of the defendant's terms of service would impact the non-arbitrating plaintiff's claims because all of his claims were governed by and arose from the contract). The rules Yahoo selected confirm the same is not true here, and this is further underscored by the fact that Plaintiff Baker's claims do not arise from a contractual agreement between him and Yahoo.

***No Preclusive Effect.*** Yahoo's suggestion that the arbitration of five Yahoo account holders' claims can streamline the issues here through issue preclusion is a red herring. As Yahoo's own authority recognizes, preclusion is only available where the party "has had a full and fair opportunity to litigate the identical issue in the prior action." *See Byrne*, 581 F. Supp. 3d at 422–23. Plaintiff Baker, and the number of unnamed Class Members Yahoo can never compel to arbitration, certainly do not have a "full and fair opportunity" to participate in confidential arbitration proceedings to which they are not a party. *Morrison v. Johnson*, No. 1:01CV636, 2006 WL 2811802, at *11 (N.D.N.Y. Sept. 28, 2006) (holding that "collateral estoppel clearly would not apply" because the litigants "did not have a full and fair opportunity to litigate the issue as they were not parties to the arbitration"). Yahoo cites no case finding preclusion proper in these circumstances. Indeed, both the other cases Yahoo cites acknowledged preclusion may not be available. *See* Mot. at 27–28 (citing *Kim*, 2024 WL 989909, at *6 (acknowledging preclusion

principles may "ultimately" not apply); *Byrne*, 581 F. Supp. 3d at 422–23 (same)).

***Plaintiff Baker and the Class Would Be Prejudiced, Not Yahoo.*** Yahoo does not attempt to articulate any actual burden in having to proceed with this litigation beyond citing a single case, *Aekyung Co. v. Intra & Co.*, No. 99 CIV. 11773, 2000 WL 1521202, at *2 (S.D.N.Y. Oct. 13, 2000). But that case does not save its argument, as *Aekyung* involved two defendants who would have been required to defend claims in arbitration while simultaneously litigating related counterclaims against other defendants. The same is not true here. If Yahoo can compel Plaintiffs with a relationship to Yahoo to arbitration, this has no bearing on non-account holders' claims, which exist entirely independent of the existing Plaintiffs' claims.

On the other hand, delaying the litigation will certainly prejudice Plaintiff Baker and unnamed Class Members. Yahoo's Motion has made clear that it failed to preserve Plaintiffs' data at the outset of the litigation (*see* Section II.B), and the Parties' ongoing discussions raise additional concerns about data deletion.[5] The longer this litigation is delayed, the more risks there are that evidence will be lost, limiting Plaintiffs' ability to prove their claims. *Williams v. Swack*, No. 13-CV-00974 S M, 2015 WL 2237216, at *3 (W.D.N.Y. May 12, 2015) (holding that the plaintiff "may face substantial prejudice from a stay because it will be denied its right to speedy discovery" and noting that delay in the proceedings "may well affect . . . the preservation of evidence") (citations and quotations omitted). Yahoo's claim that there is "little risk" that evidence will become stale or unavailable (Mot. at 28) is inconsistent with its conduct to date. Every month of delay creates incremental risk that relevant time-sensitive electronic data will be lost, overwritten, or destroyed, which is the opposite of the factual circumstances in *Orange Chicken, L.L.C. v.*

[5] Yahoo recently identified three categories of relevant data, which it did not begin to preserve until November 2025, February 2026, and March 2026. *See* Fiorilla Decl. ¶ 7.

*Nambe Mills, Inc.*, No. 00 CIV. 4730, 2000 WL 1858556, at *10 (S.D.N.Y. Dec. 19, 2000), where the nonmovant's purported hardship was based on its inability to preserve "oral evidence" even though the court had authorized a deposition to move forward, therefore mooting this concern. *Id*.

## IV. CONCLUSION

For the foregoing reasons, Yahoo's Motion should be denied in its entirety.

Dated: May 7, 2026

*/s/ Amanda Fiorilla*
Christian Levis
Amanda Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

*Interim Lead Class Counsel*

Vicki J. Maniatis (NY Bar No. 2578896)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
405 East 50th Street
New York, NY 10022
Tel.: (516) 491-4665
vmaniatis@milberg.com

Gary M. Klinger (*pro hac vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Charles E. Schaffer (*pro hac vice*)
Nicholas J. Elia (*pro hac vice* forthcoming)
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
cschaffer@lfsblaw.com
nelia@lfsblaw.com

Brett Cohen

**LEEDS BROWN LAW, P.C**.
One Old Country Road, Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
bcohen@leedsbrownlaw.com

Jeffrey S. Goldenberg (*pro hac vice*)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Phone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 8,574 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c). I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 7, 2026 *__/s/ Amanda Fiorilla__*