**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TYLER BAKER, WILLIAM DAVIS, BRIAN HUNTING, LOUIS CORVI, CHRISTOPHER HACKETT, and RATIEK LOWERY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>YAHOO INC. and YAHOO AD TECH LLC,<br><br>Defendants. | Case No. 1:25-cv-2797-DLC<br><br>Hon. Denise L. Cote |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Yahoo's Motion Is Timely ..... 1

B. The Current Accountholders Had Notice of and Assented to Yahoo's 2018 Terms ..... 2

C. The Current Accountholders Had Notice of and Assented to the 2025 Terms ..... 5

D. Any Question of Arbitrability Is for the Arbitrator to Resolve ..... 7

E. Even if This Court Addressed Arbitrability Itself, Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement ..... 8

F. The Litigation Should Be Stayed While Arbitration Proceeds ..... 10

III. CONCLUSION ..... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alvarez v. Experian Info. Sols., Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023) ....2

*Arnaud v. Doctor's Assocs. Inc.*,
821 F. App'x 54 (2d Cir. 2020) ....3

*Bar-Ayal v. Time Warner Cable Inc.*,
2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) ....4

*Barry v. Liddle, O'Connor, Finkelstein & Robinson*,
98 F.3d 36 (2d Cir. 1996) ....10

*Bell v. Cendant Corp.*,
293 F.3d 563 (2d Cir. 2002) ....7

*Berlinger v. viagogo Ent., Inc.*,
2026 WL 203538 (S.D.N.Y. Jan. 27, 2026) ....9

*Camilo v. Lyft, Inc.*,
384 F. Supp. 3d 435 (S.D.N.Y. 2019) ....6

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ....7

*Cupples v. Valic Fin. Advisors, Inc.*,
2014 WL 4662272 (E.D.N.Y. Sept. 18, 2014) ....8

*In re Currency Conversion Fee Antitrust Litig.*,
361 F. Supp. 2d 237 (S.D.N.Y. 2005) ....6

*Davitashvili v. Grubhub Inc.*,
131 F.4th 109 (2d Cir. 2025) ....9

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*,
6 F.4th 308 (2d Cir. 2021) ....7

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*,
349 F. App'x 551 (2d Cir. 2009) ....3

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ....3

*Garnes v. Pritchard Indus., Inc.*,
2023 WL 3980693 (S.D.N.Y. May 23, 2023) ....11

*Kim v. Evergreen Adult Day Care in NY Inc.*,
2024 WL 989909 (E.D.N.Y. Mar. 6, 2024) ....10

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018)....7

*Maritimia De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*,
2011 WL 1465744 (S.D.N.Y. Apr. 15, 2011)....11

*McSweeney v. Cohen*,
2026 WL 658371 (S.D.N.Y. Mar. 9, 2026)....2

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017)....3, 4, 6

*O'Conner v. Agilant Sols., Inc.*,
444 F. Supp. 3d 593 (S.D.N.Y. 2020)....6

*Oestreicher v. Equifax Info. Servs., LLC*,
2024 WL 1199902 (E.D.N.Y. Mar. 20, 2024)....6

*Rightnour v. Tiffany & Co.*,
239 F. Supp. 3d 744 (S.D.N.Y. 2017)....5

*Schnabel v. Trilegiant Corp.*,
697 F.3d 110 (2d Cir. 2012)....5

*Shaw Grp. Inc. v. Triplefine Int'l Corp.*,
322 F.3d 115 (2d Cir. 2003)....7

*Shore v. Parklane Hosiery Co.*,
565 F.2d 815 (2d Cir. 1977)....10

*SlackPass, Inc. v. Frosted, Inc.*,
2026 WL 878691 (S.D.N.Y. Mar. 31, 2026)....2

*Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*,
442 F. Supp. 3d 519 (D. Conn. 2020)....4

*Specht v. Netscape Communications Corp.*,
306 F.3d 17 (2d Cir. 2022)....9

*State Farm Mut. Auto. Ins. Co. v. Emuna Inc.*,
2026 WL 247514 (E.D.N.Y. Jan. 30, 2026)....1

*Travelers Cas. Ins. Co. of Am. v. BRB Constr. Corp.*,
2024 WL 3952729 (S.D.N.Y. Aug. 27, 2024)....10

*Valle v. ATM Nat'l, LLC*,
2015 WL 413449 (S.D.N.Y. Jan. 30, 2015)....5

*Vitzethum v. Dominick & Dominick Inc.*,
1996 WL 19062 (S.D.N.Y. Jan. 18, 1996)....1

**TABLE OF AUTHORITIES**
**(*continued*)**

**Page(s)**

*Wu v. Uber Techs., Inc.*,
43 N.Y.3d 288 (2024) .......... 5

# I. INTRODUCTION

The Current Accountholders—Lowery, Davis, Hackett, Hunting, and Corvi—used Yahoo's services for years, repeatedly accepted Yahoo's Terms, and declined to opt out of Yahoo's arbitration provision. They now try to evade that broad, clear, and conspicuous arbitration agreement. But each of the Current Accountholders had notice of and assented to Yahoo's 2018 and 2025 Terms, which unambiguously apply to their claims and delegate questions of arbitrability to the arbitrator. Plaintiffs' contrary arguments mischaracterize the record and the law. Ample discovery—including hundreds of pages of documents and the deposition of a senior Yahoo employee—has confirmed they agreed to arbitrate their claims. The Court should compel the Current Accountholders to arbitration and stay this case pending resolution of those proceedings.

# II. ARGUMENT

## A. Yahoo's Motion Is Timely

Yahoo promptly moved to compel after learning the Current Accountholders have Yahoo accounts. Mot. 12. Plaintiffs contend that Yahoo waived its right to arbitrate by filing prior motions to dismiss. Opp. 10. Not so. "Waiver of the right to arbitrate is not to be lightly inferred, and any doubts must be resolved in favor of arbitration." *State Farm Mut. Auto. Ins. Co. v. Emuna Inc.*, 2026 WL 247514, at *3 (E.D.N.Y. Jan. 30, 2026). When Yahoo's prior responses to the complaint were due, Yahoo did not know plaintiffs were Yahoo accountholders and lacked the information necessary to make that determination. For that reason, Yahoo expressly reserved in both motions to dismiss its right to compel arbitration if plaintiffs proved to be accountholders. Dkt. 41 at 7 n.6; Dkt. 50 at 10 n.7. Yahoo cannot "waive a right it d[id] not know it ha[d]." *Vitzethum v. Dominick & Dominick Inc.*, 1996 WL 19062, at *10 (S.D.N.Y. Jan. 18, 1996).

Plaintiffs fault Yahoo for not seeking confirmation that they were Yahoo accountholders sooner. Opp. 10. But "whether [Yahoo] maybe could have discovered [that plaintiffs were subject

to an arbitration provision] earlier by speculative steps it could have taken . . . is insufficient for a finding of waiver." *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 32 (E.D.N.Y. 2023). Plaintiffs' attempt to distinguish *Alvarez* fails. There, the court found no waiver where the defendant "raised its intent" to arbitrate *eighteen months* into discovery, after learning of the plaintiff's arbitration agreement. *Id.* at 31. Here, Yahoo reserved its rights in its first substantive filing and then moved to compel nine months after the case was filed, shortly after plaintiffs disclosed they are accountholders. Mot. 12.[1]

Plaintiffs cite *SlackPass, Inc. v. Frosted, Inc.*, 2026 WL 878691 (S.D.N.Y. Mar. 31, 2026), and *McSweeney v. Cohen*, 2026 WL 658371 (S.D.N.Y. Mar. 9, 2026), for the proposition that filing a motion to dismiss amounts to waiver. Opp. 10. But in those cases, the defendants possessed all the facts necessary to invoke arbitration before moving to dismiss, chose to litigate instead, and did not reserve their arbitration rights. Yahoo, by contrast, did not know plaintiffs had assented to an arbitration agreement until months after moving to dismiss because plaintiffs withheld that information until *after* briefing two motions to dismiss. Yahoo also reserved its arbitration rights.

**B. The Current Accountholders Had Notice of and Assented to Yahoo's 2018 Terms**

Plaintiffs' challenges to the validity of their assent to Yahoo's 2018 Terms, the conspicuousness of Yahoo's notice, and the reliability of Yahoo's records all fail.

***Davis and Lowery.*** Davis and Lowery created accounts after the 2018 Terms went into effect and clicked "Continue" directly below text stating "[b]y clicking 'Continue,' you agree to the Terms and acknowledge the Privacy Policy," with a blue underlined hyperlink to the Terms that included the arbitration provisions. Dkt. 74 ("Gurwin Decl.") ¶¶ 6, 22-25, 31-33 & Exs. 1, 8-

---

[1] Plaintiffs claim "*Alvarez* was also decided under the pre-*Morgan [v. Sundance, Inc.*, 596 U.S. 411 (2022)] framework." Opp. 11. Not so: *Alvarez* was decided after *Morgan* and discusses the decision. 661 F. Supp. 3d at 29.

10. Plaintiffs argue that a "checkbox" was required to establish assent. Opp. 11-12. That is wrong. Users are bound when they click a button to register for an account immediately below text stating they agree to hyperlinked terms—precisely what Yahoo's sign-up flow provided. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71 (2d Cir. 2017) (materially indistinguishable process from Yahoo's); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-40 (S.D.N.Y. 2012). Plaintiffs' reliance on *Arnaud v. Doctor's Associates Inc.* is misplaced. Opp. 12. There, "the link was at the bottom of the page" and "was introduced by no language other than the shorthand 'T & Cs.'" 821 F. App'x 54, 56 (2d Cir. 2020). Here, the link sat directly above the "Continue" button with an explicit statement that "[b]y clicking 'Continue,' you agree to the Terms."

***Hackett, Hunting, Corvi, and Davis.*** Current Accountholders who created accounts before 2018 agreed to the 2018 Terms through Yahoo's pop-up notification, which stated, "By choosing 'I accept' below, you agree to [Yahoo's] new Terms of Service and Privacy Policy." Gurwin Decl. ¶ 8 & Ex. 2. The notification contained hyperlinks to the 2018 Terms and required accountholders to scroll through the notice to click "I Accept." Gurwin Decl. ¶¶ 7-13. Yahoo's records confirm that Hackett, Hunting, Corvi, and Davis all did so. Mot. 8-9.

Plaintiffs argue the notice was deficient because Yahoo did not produce a complete copy of the 2018 notification. Opp. 12-13. That is wrong. Although it was maintained and produced as a series of screenshots, Yahoo's production contains the full text. And the only case plaintiffs cite, *Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551 (2d Cir. 2009), involved a failure to produce the complete *arbitration agreement itself.* Here, the 2018 Terms are in the record in full. Dkt. 74-1. The relevant portions of the *notifications* establish that plaintiffs were on inquiry notice because users were told they were agreeing to new hyperlinked terms and had to scroll through a summary of those Terms, including a reference to a mutual arbitration clause, to click

the button to accept them. *Meyer*, 868 F.3d at 77-78.

Plaintiffs next contend "the arbitration provision was buried in the middle of a long list of disparate provisions." Opp. 13. But the case they rely on, *Soliman v. Subway Franchisee Advert. Fund Tr. Ltd.*, 442 F. Supp. 3d 519 (D. Conn. 2020), is inapposite. There, to find the terms for a promotion, a customer had to read fine print on an ad, type in the website URL, scroll through the website, and intuit that the terms "FOR THIS WEBSITE" also applied to the promotion. *Id.* at 524. Yahoo's notification for the 2018 Terms, by contrast, was presented directly to users, required scrolling through the entire notice to accept, and disclosed in bold text that the new terms included an arbitration clause. Gurwin Decl. ¶¶ 8-12. That establishes notice and assent. *See Bar-Ayal v. Time Warner Cable Inc.*, 2006 WL 2990032, at *9-10 (S.D.N.Y. Oct. 16, 2006) (finding acceptance where scrolling though 38 screens of text was required).

Plaintiffs also argue that Yahoo's production of multiple versions of the notice undermines assent. Opp. 13. It does not. Yahoo's system recorded assent only when a user affirmatively clicked a button. Supp. Arber Decl., Ex. A ("Gurwin Dep.") 50:16-18 ("[redacted]"); *id.* 34:3-7. Plaintiffs' suggestion that closing a pop-up could be logged as agreement, Opp. 13-14, mischaracterizes Mr. Gurwin's testimony. He confirmed that "[redacted]"—meaning that all users were presented with the full notification, and Yahoo's systems "[redacted]" Gurwin Dep. 49:20-50:18.

Finally, plaintiffs attempt to undermine Yahoo's records by pointing to a timestamp showing Hackett purportedly agreed to the 2018 terms on January 1, 1970. Opp. 14. That "1970" entry is simply a default Unix-system placeholder associated with a missing timestamp value in a

legacy field.[2] Yahoo's Account Management Tool reflects [redacted]. Gurwin Dep. 33:16-19; Fiorilla Decl. Ex. 14 (showing Hackett's agreement to 2025 Terms). And Hackett's assent to the 2018 Terms is reflected elsewhere in Yahoo's records. Supp. Arber Decl. Ex. B. Plaintiffs' reliance on an immaterial technical artifact does not undermine clear business records showing assent.

**C. The Current Accountholders Had Notice of and Assented to the 2025 Terms**

The Current Accountholders received conspicuous notice of the 2025 Terms through email and a pop-up notification requiring an affirmative click, and assented to them. Mot. 14-16. Plaintiffs' arguments against enforcement fail.

*First*, plaintiffs contend Yahoo's 2025 email notice was insufficient because it did not use the word "arbitration," but the email indicated Yahoo was updating "how [Yahoo] will resolve any disputes that may arise over the use of [its] services." Gurwin Decl. Ex. 5. None of the cases plaintiffs cite imposes a magic-words requirement. *Schnabel v. Trilegiant Corp.* involved an email that did not even mention "the contract or terms," 697 F.3d 110, 123 n.14 (2d Cir. 2012), and the notification in *Rightnour v. Tiffany & Co.* "impl[ied] that any agreement to arbitrate would be optional," 239 F. Supp. 3d 744, 751 (S.D.N.Y. 2017). Yahoo's notice made clear it was about "updates to our Terms" and that "continuing to use our services" constituted "accept[ance] and agree[ment] to these updated Terms." Gurwin Decl. Ex. 5. That is precisely the kind of notice deemed binding in *Valle v. ATM Nat'l, LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015). Plaintiffs' passing assertion that some of the Current Accountholders did not open this email is irrelevant, because the standard is *inquiry* notice, not actual knowledge. *Wu v. Uber Techs., Inc.*,

[2] Unix-based systems use January 1, 1970 as the "epoch" reference date and may display that date where a timestamp value is absent or defaults to zero. *See* https://en.wikipedia.org/wiki/Unix_time.

43 N.Y.3d 288, 299 (2024).[3]

*Second*, plaintiffs' attack on Yahoo's 2025 pop-up notification fails because that notification closely resembles the screen deemed sufficient in *Meyer*, 868 F.3d at 77-79, which, like Yahoo's notice, did not directly refer to the arbitration provision. Mot. 15-16. Plaintiffs attempt to distinguish *Meyer* on the basis that notice and assent there took place during "enrollment." Opp. 16. But nothing in *Meyer* suggests the rules for assent are different during "enrollment" versus after account creation. Yahoo's pop-up notified users that the Terms had been updated, provided a hyperlink to review them, and required an affirmative click to proceed. Gurwin Decl. ¶¶ 27, 35, 40, 45, 50. By clicking "Agree," the Current Accountholders assented. *See, e.g.*, *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019). The timing of that click is irrelevant.

*Third*, plaintiffs' argument that assenting to the 2025 Terms after filing suit renders the arbitration provision unenforceable, Opp. 16-17, has no support in law. Arbitration agreements "can indeed be formed mid-suit; the rights to pursue a case are routinely waived after disputes arise and after suits are filed." *Oestreicher v. Equifax Info. Servs., LLC*, 2024 WL 1199902, at *5 (E.D.N.Y. Mar. 20, 2024). Plaintiffs' cases involved defendants that attempted to impose arbitration clauses on putative class members "without notice," *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 254 (S.D.N.Y. 2005), or through "misleading and coercive" communications, *O'Conner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 597, 603 (S.D.N.Y. 2020). Yahoo did neither. The 2025 Terms were rolled out in March 2025—before this suit was filed.

[3] Plaintiffs contend that Yahoo has not shown continued use. Opp. 17. But Yahoo's records show each Current Accountholder clicked a button, meaning they necessarily used Yahoo's services. Mot. 7-9. And plaintiffs concede that continued use plus notice is sufficient, and Yahoo provided notice.

The Current Accountholders received full notice, clicked "Agree," had 30 days to opt out, and chose not to. Mot. 7-9. That is not coercion.

**D. Any Question of Arbitrability Is for the Arbitrator to Resolve**

Yahoo's 2018 and 2025 Terms delegate arbitrability to the arbitrator. Mot. 18-20. While plaintiffs argue the delegation is "limited" and "narrow," Opp. 18, the Terms unambiguously state that the parties agree to arbitrate "any and all disputes … that in any way arise out of or relate to these terms or from any services you receive from us," including "whether a claim is subject to arbitration." 2025 TOS § 14.2(b) (capitalization modified; emphasis omitted); 2018 TOS § 14. Such language is "the paradigm of a broad clause" and supports a "presumption of arbitrability." *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20, 23 (2d Cir. 1995); *see also, e.g.*, *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717-18 (2018) ("'relating to'" is "typically read … expansively"). Unlike the contracts in the cases plaintiffs cite, Yahoo's Terms contain no "exclusionary language" agreeing to arbitrate "only a limited subset of disputes." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 319 (2d Cir. 2021).

Plaintiffs claim the qualifier "services you receive from us" transforms the broad delegation into a limited one. Opp. 18. That argument fails on two independent grounds. First, the scope of arbitrable claims reaches "*any and all disputes* . . . that *in any way arise out of or relate to* these terms or services you receive from us"—which sweeps more broadly than the "services" themselves. 2025 TOS § 14.2(b) (emphases added). Second, even if the qualifier narrowed the scope of arbitrable claims, it would have no bearing on the scope of the express *delegation* to an arbitrator to decide "*whether* a claim is subject to arbitration." *Id.* (emphasis added); *see also, e.g.*, *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003) (finding delegation where "duty to arbitrate 'all disputes' is qualified only by requirement that the matter be one 'concerning or arising under'" the contract); *Bell v. Cendant Corp.*, 293 F.3d 563, 565, 568 (2d Cir. 2002)

(language requiring arbitration for "[a]ny controversy arising in connection with or relating to this Agreement" "does not exclude any category of dispute" and delegates arbitrability).

The Terms' incorporation of the NAM and AAA rules further supports delegation. Mot. 19-20. Plaintiffs concede as much, arguing only that a reference to the rules, standing alone, does not prove delegation. Opp. 20-21. But that is not Yahoo's argument. Every case plaintiffs cite involved agreements that referred to AAA rules without any separate delegation language. *Id.* Yahoo's Terms have both—broad delegation *and* incorporation of NAM or AAA rules—leaving no room for plaintiffs' interpretation.[4]

**E. Even if This Court Addressed Arbitrability Itself, Plaintiffs' Claims Are Within the Scope of the Arbitration Agreement**

Even if this Court were to decide arbitrability itself, plaintiffs' claims fall squarely within the scope of Yahoo's arbitration agreement. Mot. 20-26.

Plaintiffs' complaint centers on allegations that ConnectID is a Yahoo-provided service that Yahoo failed to adequately disclose in its consumer-facing policies. *E.g.*, TAC ¶¶ 8, 11-12, 50 n.1. Those allegations are within the scope of Yahoo's arbitration agreement. Mot. 24-26; *see Cupples v. Valic Fin. Advisors, Inc.*, 2014 WL 4662272, at *6 (E.D.N.Y. Sept. 18, 2014) ("any legal claims that touch matters covered by an agreement containing a broad clause must be arbitrated" (cleaned up)). Plaintiffs attempt to walk back those allegations, arguing Yahoo's services and terms are incidental to their claims. Opp. 21-24. But they cannot plead their claims on one theory and then disclaim that theory to avoid arbitration. While plaintiffs attempt to rewrite the clause to limit it to disputes arising from direct consumer interaction with services like Yahoo Mail or Yahoo Sports, Opp. 21-22, the agreement sweeps more broadly, covering claims that "relate to" Yahoo's Terms

[4] Plaintiffs are correct that the AAA Consumer Rules govern, Opp. 20 n.4, which likewise delegate arbitrability to the arbitrator. Fiorilla Decl., Ex. 16 at 11.

or Services. *Supra* p. 7. Plaintiffs' challenge to Yahoo's operation of ConnectID, a Yahoo-provided service, "relates to" Yahoo's Terms or Services. *E.g.*, TAC ¶¶ 50 n.1, 64-75.

Unlike in plaintiffs' cases, the Current Accountholders' status as Yahoo accountholders is not "purely coincidental" to their claims. *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 120 (2d Cir. 2025). Plaintiffs' consent to Yahoo's data-collection practices through Yahoo's Terms and incorporated Privacy Policy is a central issue, as this Court's prior motion-to-dismiss order recognized. *See* Mot. 25-26; Dkt. 62. Plaintiffs' claims and Yahoo's defenses implicate the contractual relationship between the parties and the adequacy of Yahoo's disclosures, bringing the dispute within the scope of the Terms. *See, e.g.*, *Berlinger v. viagogo Ent., Inc.*, 2026 WL 203538, at *7 (S.D.N.Y. Jan. 27, 2026) (distinguishing *Davitashvili* and finding dispute over defendant's disclosures encompassed by broad arbitration clause).[5]

Plaintiffs' reliance on *Specht v. Netscape Communications Corp.* is unavailing. Opp. 23. *Specht* involved claims arising from a software product that plaintiffs downloaded independently of the agreement containing the arbitration clause. 306 F.3d 17, 21-23 (2d Cir. 2022). Plaintiffs there did not assent to the relevant product's license agreement, and their allegations did not "touch matters" covered by the other agreement to which they actually agreed. *Id.* at 35-38. Here, by contrast, plaintiffs' allegations directly challenge Yahoo's disclosures, privacy practices, and consent mechanisms governing the Yahoo accounts through which plaintiffs repeatedly accepted Yahoo's Terms. *See* Dkt. 64.

Plaintiffs' vagueness argument fares no better. Opp. 9, 24-25. The arbitration clause

---

[5] Plaintiffs argue that accountholder status is irrelevant because non-accountholders may assert similar claims. Opp. 23-24. But the possibility that others may bring similar claims does not make the Current Accountholders' agreement to Yahoo's Terms irrelevant to the arbitrability of their own claims.

applies to any disputes "relat[ing] to" "these Terms" and "Services [plaintiffs] receive from [Yahoo]." 2025 TOS § 14.2(b) (cleaned up); 2018 TOS § 14. Yahoo's Privacy Policy, which is incorporated into the Terms, expressly addresses data collection "both on and off [Yahoo's] Services." Privacy Policy § 4(e)(i). There is no ambiguity: Yahoo's policies explain that some of its Services (like ConnectID) operate on third-party websites. *Id.* § 4(f). That Yahoo's Services operate partly off its own platform does not place them outside the Terms. Plaintiffs cannot manufacture ambiguity by ignoring documents cited in their complaint. *See* TAC ¶¶ 8, 78, 117. In any event, "New York law does not set a high standard for precision," and plaintiffs cannot establish that the Terms are impermissibly indefinite. *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36, 40 (2d Cir. 1996); *see also Travelers Cas. Ins. Co. of Am. v. BRB Constr. Corp.*, 2024 WL 3952729, at *4 (S.D.N.Y. Aug. 27, 2024) ("merely because a term is broad does not make it ambiguous").

**F. The Litigation Should Be Stayed While Arbitration Proceeds**

A stay of this litigation pending arbitration is warranted on multiple grounds, and plaintiffs offer no good reason to proceed.

***Streamlining Issues.*** Five of the six plaintiffs will be arbitrating the same core claims—based on the same alleged conduct, over the same time period, under the same legal theories—that Baker and the putative class would pursue here. "[C]omplete identity of parties" is not required for preclusion, so different plaintiffs may be bound by the outcome of prior proceedings. *Shore v. Parklane Hosiery Co.*, 565 F.2d 815, 818-19 (2d Cir. 1977). And even setting preclusion aside, allowing parallel proceedings risks the same issues being decided inconsistently in different forums—precisely the outcome a stay is designed to prevent. The opportunity to streamline issues or "sharpen[] … legal arguments" through arbitration favors staying litigation with overlapping facts. *Kim v. Evergreen Adult Day Care in NY Inc.*, 2024 WL 989909, at *6 (E.D.N.Y. Mar. 6,

2024); *see also, e.g.*, *Maritimia De Ecologia, S.A. de C.V. v. Sealion Shipping Ltd.*, 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011).

***Discovery Efficiencies***. In arbitration, the parties will necessarily collect information bearing on the same issues in this litigation. Plaintiffs' confidentiality argument misses the point. The efficiencies supporting a stay do not depend on public arbitral rulings. They arise because the parties will necessarily develop overlapping factual records concerning the same alleged Yahoo practices in both forums. Running both proceedings simultaneously guarantees duplication of those efforts regardless of confidentiality. A stay avoids it. *Garnes v. Pritchard Indus., Inc.*, 2023 WL 3980693, at *8 (S.D.N.Y. May 23, 2023) (stay appropriate where claims "arise from the same factual allegations" and will "therefore involve similar, or at least parallel, discovery").

***Prejudice.*** Plaintiffs' claims of prejudice are unfounded. Their preservation argument rests on a flawed premise: A stay of litigation does not relieve Yahoo of any obligation to preserve relevant evidence. In any event, Yahoo has been actively addressing plaintiffs' preservation inquiries throughout this litigation, including during the current stay. Their insinuation that Yahoo has been anything less than diligent in its preservation efforts, Opp. 28, is contradicted by the parties' ongoing communications on precisely that subject.

## III. CONCLUSION

The Court should compel plaintiffs Corvi, Davis, Hackett, Hunting, and Lowery to arbitrate their claims and stay further proceedings pending completion.

Dated: June 2, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Lauren Goldman*

Lauren Goldman
lgoldman@gibsondunn.com
Jacob Arber
jarber@gibsondunn.com
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Eric D. Vandevelde (*pro hac vice*)
evandevelde@gibsondunn.com
Ilissa Samplin
isamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000

*Attorneys for Defendants Yahoo, Inc. and Yahoo Ad Tech LLC*

**CERTIFICATE OF COMPLIANCE**

As required by the United States District Court for the Southern District of New York Local Rule 7.1(c), I certify that the document contains 3,498 words, excluding the parts of the document that are exempted by the United States District Court for the Southern District of New York Local Rule 7.1(c).

I declare under penalty of perjury that the foregoing is true and correct.

DATED: June 2, 2026

By: */s/ Lauren Goldman*
Lauren Goldman