UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

| | | |
|---|---|---|
| TYLER BAKER, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>-v-<br><br>YAHOO INC. and YAHOO AD TECH LLC,<br><br>Defendants. | : | 25cv2797 (DLC)<br><br>OPINION AND ORDER |

---------------------------------------- X

APPEARANCES:

For plaintiffs:

Christian Levis
Amanda Fiorilla
Lowey Dannenberg, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601

Vicki J. Maniatis
Milberg Coleman Bryson Phillips Grossman, PLLC
405 East 50th Street
New York, NY 10022

Gary M. Klinger
Milberg Coleman Bryson Phillips Grossman, PLLC
227 W. Monroe Street, Suite 2100
Chicago, IL 60606

Charles E. Schaffer
Nicholas J. Elia
Levin Sedran & Berman LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106

Brett Cohen
Leeds Brown Law, P.C.

One Old Country Road, Suite 347
Carle Place, NY 11514

Jeffrey S. Goldenberg
Goldenberg Schneider, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242

For defendants:

Lauren Goldman
Jacob Arber
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

Eric D. Vandevelde
Ilissa Samplin
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071

DENISE COTE, District Judge:

Six individuals bring this putative class action against Yahoo Inc. and Yahoo Ad Tech LLC (collectively, "Yahoo"), alleging that Yahoo violated privacy laws by collecting information about them when they joined certain website services. After learning that five of the six plaintiffs have active Yahoo accounts, Yahoo moved to compel arbitration of their claims pursuant to Yahoo's Terms of Service. For the following reasons, the motion is granted.

**Background**

The following facts are drawn from the Third Amended Complaint ("TAC") and the evidence submitted by the parties in

connection with this motion. This Opinion summarizes only those facts relevant to the present motion; the facts are undisputed unless otherwise noted. As required, all reasonable inferences are drawn in favor of the non-moving parties, the plaintiffs. See Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017).

I. Relevant Facts

Yahoo provides a range of services, including an email platform. Five of the named plaintiffs -- Davis, Lowery, Corvi, Hackett, and Hunting -- have active Yahoo email accounts. They signed up for Yahoo email accounts between 2002 and 2024.

Yahoo first added an arbitration clause to its Terms of Service in April 2018 ("2018 Terms"). The first section of the 2018 Terms stated, in bold and all capital letters: "U.S. USERS: THESE TERMS CONTAIN A BINDING ARBITRATION AGREEMENT AND CLASS ACTION AND JURY TRIAL WAIVER CLAUSES IN SECTION 14.2 BELOW, WHICH ARE APPLICABLE TO ALL U.S. USERS." Section 14.2, which was hyperlinked in the quoted sentence, is also written in bold and all capital letters. It reads, in relevant part:

> BINDING ARBITRATION AGREEMENT. AGREEMENT TO ARBITRATE FOR U.S. USERS. YOU AND [YAHOO] BOTH AGREE TO RESOLVE ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS THAT IN ANY WAY ARISE OUT OF OR RELATE TO THESE TERMS OR FROM ANY SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FROM ANY SUCH SERVICES), . . . ONLY BY ARBITRATION ON AN INDIVIDUAL BASIS OR IN SMALL CLAIMS COURT. YOU UNDERSTAND THAT BY AGREEING TO THESE

> TERMS, ARBITRATION OR A SMALL CLAIMS ACTION WILL BE THE SOLE AND EXCLUSIVE MEANS OF RESOLVING ANY DISPUTE BETWEEN US.

Users who created a Yahoo account after the 2018 Terms went into effect were required to accept the Terms as part of the account creation process. For users who created a Yahoo account before the 2018 Terms were introduced, Yahoo designed a pop-up notification process to provide notice and seek acceptance of the 2018 Terms. The notifications were displayed to accountholders after they logged into their accounts and gave them the option to select "I Accept" or "I'll do this later" after scrolling through the Terms. As a result, accountholders were not required to accept the 2018 Terms in order to continue using their Yahoo accounts.

On March 7, 2025, Yahoo updated the language of the arbitration clause in its Terms of Service ("March 2025 Terms"). The notice at the beginning of the Terms remained the same as it did in the 2018 Terms, but § 14.2 was revised to read, in relevant part:

> BINDING ARBITRATION AGREEMENT. AGREEMENT TO ARBITRATE FOR U.S. USERS. EXCEPT AS EXPRESSLY PROVIDED IN THIS SECTION 14, YOU AND [YAHOO] BOTH AGREE TO RESOLVE ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS THAT IN ANY WAY ARISE OUT OF OR RELATE TO THESE TERMS OR FROM ANY SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FROM ANY SUCH SERVICES), . . . ONLY BY ARBITRATION ON AN INDIVIDUAL BASIS. THIS INCLUDES BUT IS NOT

> LIMITED TO . . . WHETHER A CLAIM IS SUBJECT TO ARBITRATION . . . . YOU UNDERSTAND THAT BY AGREEING TO THESE TERMS, ARBITRATION WILL BE THE SOLE AND EXCLUSIVE MEANS OF RESOLVING ANY DISPUTE BETWEEN US.

A choice-of-law provision within § 14.2 indicates that the Federal Arbitration Act ("FAA") applies to these Terms and that the arbitrator "shall apply New York law consistent with the FAA."

Yahoo notified accountholders about the updated clause via email between March 13 and April 8, 2025. The email included a link to the March 2025 Terms, "encourage[d]" users to review it, and specified:

> By continuing to use our services, you accept and agree to these updated Terms. If you don't agree to the updated Terms, you can terminate your agreement with us by closing your account. You can find instructions for how to close your account in this help article.

Yahoo updated the arbitration clause language once more on May 15, 2025 ("May 2025 Terms"). The changes included changing the deadline to opt out of the arbitration clause from 30 days after March 7 (the effective date for the March 2025 Terms) to 30 days after the user's agreement to the May 2025 Terms. To notify accountholders of the new May 2025 Terms, Yahoo implemented another pop-up notification system, in which notifications were displayed to accountholders after log-in.

Accountholders could "Agree" to the May 2025 Terms, close the notification (on the website), or dismiss the notification by selecting "Cancel" (on the mobile application). If accountholders did not agree to the May 2025 Terms, the notification would continue to be shown after each login or session extension until accepted.

Yahoo maintains an Account Management Tool to track data regarding its accountholders, including each instance a user agreed to any version of its Terms of Service. Accountholders were not required to accept the May 2025 Terms in order to continue using their Yahoo accounts. No substantive changes have been made to the arbitration clause since May 2025.

Four of the five plaintiffs assented to the 2018 Terms in 2018 by clicking "I Accept" in response to Yahoo's notification. The fifth plaintiff assented to the 2018 Terms when he created his Yahoo account in 2022. Each of the five plaintiffs also assented to the March and May 2025 Terms.

## II. Procedural History

This action was brought in 2025 by six individuals alleging that Yahoo violated state privacy laws by collecting information about them without their consent after they signed up for websites that utilize Yahoo's targeted ConnectID advertising technology. A description of their claims and the ConnectID

advertising technology is contained in an Opinion of November 19, 2025, which is incorporated by reference. See Baker v. Yahoo Inc., No. 25cv2797 (DLC), 2025 WL 3241254 (S.D.N.Y. Nov. 19, 2025). Familiarity with it is assumed.

On September 5, 2025, the plaintiffs filed the Second Amended Complaint ("SAC"). In moving to dismiss the SAC, the defendants argued, inter alia, that the plaintiffs consented to the conduct at issue when they signed up for the websites that utilized Yahoo's targeted advertising technology. The SAC had identified those websites as CBS Sports, Realtor.com, US Magazine, and FanDuel, and Yahoo requested that the Court take judicial notice of the many versions of the sign-up pages associated with those four websites. While the SAC explained that the plaintiffs had created accounts at these sites using their email addresses, the SAC did not explain when they had done so. The Opinion of November 19, 2025 ordered the plaintiffs to identify when each plaintiff created the accounts on the websites and other information necessary for Yahoo to identify the interfaces the plaintiffs encountered when signing up for the websites.

Plaintiffs then filed the TAC on December 3, 2025. In the TAC, each of the named plaintiffs stated that they are Yahoo accountholders and created the website accounts using their

Yahoo email address. The TAC alleges for each of the plaintiffs that when he logged into one of these websites with their Yahoo email address, "Yahoo intercepted his email" and "generated" or "assigned or attributed his information to an existing Yahoo ConnectID." The TAC asserts that the plaintiffs never consented to this scheme.

Based on those allegations, the TAC brings a claim under the New York General Business Law § 349 (Count One); invasion of privacy claims based on the common-law tort of intrusion upon seclusion (Count Two) and the California Constitution (Count Three); claims under the California Invasion of Privacy Act, Cal. Penal Code §§ 631 (Count Four), 632 (Count Five), and 638.50 and 638.51 (Count Six); a claim under California's Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502 (Count Seven); a claim of unjust enrichment (Count Eight); and a claim seeking injunctive relief (Count Nine).

On December 11, Yahoo submitted a letter requesting an extension for its time to respond to the TAC. Yahoo explained that, in light of the new information that each plaintiff was a Yahoo accountholder, it was considering whether to file a motion to dismiss or a motion to compel arbitration. Yahoo also specified that the plaintiffs consented to its extension request.

On January 30, 2026, Yahoo moved to compel arbitration of five of the six plaintiffs' claims and stay the case pending that arbitration. It reserved the right to move to compel arbitration of the claims brought by the sixth plaintiff, Tyler Baker, who no longer has an active Yahoo email account, if it discovers he also agreed to its Terms of Service containing an arbitration clause. The parties conducted limited discovery regarding the motion for arbitration. During that period, the plaintiffs took the deposition of Robert Gurwin, Yahoo's Chief Counsel and Vice President. On May 7, the plaintiffs opposed Yahoo's motion to compel arbitration and stay the case. On June 2, Yahoo filed its reply, and the motion became fully submitted.

## Discussion

### I. Motion to Compel Arbitration

Motions to compel arbitration "are governed by a standard similar to that applicable for a motion for summary judgment." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (citation omitted). Accordingly, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings," including affidavits, "and draw[] all reasonable inferences in favor of the non-moving party." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). "Where the undisputed facts in the record require the matter of

arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted).

Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA also requires federal courts, upon application of a party to the contract, to stay adjudication of claims covered by an enforceable arbitration agreement until such arbitration has been had. See id. § 3. The FAA reflects "both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." Davitashvili v. Grubhub Inc., 131 F.4th 109, 114 (2d Cir. 2025) (citation omitted). Accordingly, courts must "rigorously enforce arbitration agreements according to their terms." Id. at 115 (citation omitted).

Courts "will not enforce arbitration unless and until it is determined that an agreement [to arbitrate] exists." Soliman v. Subway Franchisee Advert. Fund Tr., Ltd., 999 F.3d 828, 834 (2d Cir. 2021). Conversely, "a court must hold a party to its arbitration contract just as the court would to any other

kind." Morgan v. Sundance, Inc., 596 U.S. 411, 412 (2022). In determining whether the parties agreed to arbitrate, courts apply "ordinary state-law principles that govern the formation of contracts." Davitashvili, 131 F.4th at 115 (citation omitted). This inquiry involves several steps, and at each step of the inquiry, "traditional contract principles apply." Coinbase, Inc. v. Suski, 602 U.S. 143, 149 (2024). First, a court determines "whether an agreement to arbitrate between the parties exists." Davitashvili, 131 F.4th at 115. The FAA's scope is limited to "agreements to arbitrate controversies that 'arise out of' the parties' contractual relationship -- that is, controversies that were caused by the relationship." Id. at 119 (citation omitted). Next, a court inquires "whether questions of 'arbitrability'" -- in other words, questions of whether a particular dispute is subject to arbitration -- "are for the court or the arbitrator to decide." Id. at 115. Finally, where an arbitration agreement leaves intact a court's presumptive power to determine arbitrability, a court then determines "whether the parties' arbitration agreement covers a particular claim." Id. at 119.

Here, the five plaintiffs whose claims fall within the motion to compel entered agreements to arbitrate, and those agreements delegate questions of arbitrability to the

arbitrator. As a result, this Opinion need not reach the final step of determining whether the arbitration agreement covers these plaintiffs' specific claims.

A. Timeliness

As an initial matter, plaintiffs argue that Yahoo's motion to compel arbitration, filed after substantive motions to dismiss were filed, should be denied because it is untimely. This argument is unpersuasive. At the time that Yahoo filed its motions to dismiss, Yahoo was unaware that plaintiffs were Yahoo accountholders and, thus, likely to have agreed to Yahoo's Terms of Service and arbitration provision. Plaintiffs revealed for the first time that they had Yahoo email accounts in the days following the issuance of the November 19, 2025 Opinion. Shortly thereafter, Yahoo informed plaintiffs and the Court that it was considering whether to file a motion to compel arbitration and requested an extension of time to respond to the TAC.[1] Plaintiffs consented to Yahoo's request, and Yahoo ultimately filed its motion to compel arbitration, as previewed, on January 30. Accordingly, Yahoo never acted "inconsistently

[1] The plaintiffs do not dispute that Yahoo also needs to know a person's email address to determine when an account was opened and whether the account holder consented to the Terms of Service.

with the right to arbitrate." Doyle v. UBS Fin. Servs., Inc., 144 F.4th 122, 130 (2d Cir. 2025).

B. Agreement to Arbitrate

Each of the five plaintiffs at issue here entered into an agreement to arbitrate. Under New York law, web-based contracts -- like traditional written contracts -- are formed by an objective "manifestation of mutual assent." Wu v. Uber Tech., Inc., 260 N.E.3d 1060, 1072 (N.Y. 2024) (citation omitted).[2] New York courts have understood this to comprise two key requirements: (1) actual or inquiry notice of the contractual terms, and (2) "a clear and objective manifestation of assent." Id. at 1073. In other words, "[u]nder New York law, when an offeree does not have actual notice of certain contract terms, he is nevertheless bound by such terms if he is on inquiry notice of them and assents to them through conduct that a reasonable person would understand to constitute assent." Davitashvili, 131 F.4th at 115-16 (citation omitted) (emphasis in original).

Courts have recognized, with respect to the first "notice" requirement:

> [A] user does not need to have actually read and understood the terms of an internet

[2] Pursuant to the Terms' choice-of-law provision, New York law applies to determine whether the parties entered into an agreement to arbitrate.

> contract to be so bound; rather, where a "reasonably prudent user" would have been on inquiry notice of contractual terms, an offeree may still be bound by them.

Wu, 260 N.E.3d at 1073 (citation omitted). To determine whether "a reasonably prudent user would have been on inquiry notice of contractual terms," id., New York courts evaluate whether the contract terms were "obvious" and "presented to the [user] in a clear and conspicuous way." Davitashvili, 131 F.4th at 116 (citation omitted). More specifically, courts "look to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." Id. (citation omitted). "Factors include whether the terms of use are 'spatially coupled' with the checkout button, whether the entire screen is visible at once without scrolling, whether the checkout button is 'temporally coupled' with the hyperlink to the terms of use, and whether the language is clear." Id. (citation omitted).

As for the second "manifestation of assent" requirement, "an Internet or smartphone user need not explicitly say 'I agree' to the contractual terms," as long as they "engage in conduct that a reasonably prudent user would understand to constitute assent." Wu, 260 N.E.3d at 1073. For example, courts have found that users unambiguously assented to terms and

conditions where sign-up screens have stated that "by creating an account, you agree to the Terms of Service" and the users have, in fact, created an account. See., e.g., Meyer, 868 F.3d at 77-80.

1. Lowery and Davis

Lowery and Davis, the two named plaintiffs who created Yahoo accounts after Yahoo introduced an arbitration clause in its Terms of Service in 2018, received notice of the arbitration term and assented to it during the sign-up process. It is undisputed that, to complete the Yahoo account sign-up process, Lowery and Davis were required to click a blue or purple "Continue" button, above which appeared the statement: "By clicking 'Continue', you agree to the Terms and Privacy Policy." It is also undisputed that such Terms, which were hyperlinked in the quoted statement, contained arbitration provisions. Thus, Lowery and Davis's claims are subject to arbitration.

Plaintiffs argue that the sign-up screen was cluttered, and that clicking the "Continue" button was not an indication of assent because it was not a "checkbox or comparable mechanism." These arguments fail. The Second Circuit has held that users facing a virtually identical sign-up screen were "on inquiry notice of the arbitration provision by virtue of the hyperlink to the Terms of Service" and "manifested [their] assent to the

agreement by clicking 'Register.'" Meyer, 868 F.3d at 77. The Circuit explained that the text advising users that "[b]y creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY," which included a single hyperlink (in blue, underlined font) to those Terms and was situated on an "uncluttered" screen, provided users with "reasonably conspicuous notice" of the Terms. Id. at 71, 78. The Circuit then found that, given the "objectively reasonable notice of the terms," a user's clicking of the "Register" button constituted his "unambiguous" assent to the Terms of Service and, thus, to arbitration. See id. at 79-80.[3] For the same reasons, Lowery and Davis, too, were on inquiry notice of the Terms of Service and assented to the arbitration provision when they clicked "Continue" during the sign-up process.

2. Corvi, Hackett, and Hunting

Corvi, Hackett, and Hunting created Yahoo accounts before Yahoo introduced an arbitration clause in its Terms of Service in 2018.[4] Nonetheless, they also entered into agreements to

---

[3] Although the Second Circuit applies California contract law to reach its holding, pursuant to a choice-of-law term in the arbitration agreement at issue, it notes that "New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term." Meyer, 868 F.3d at 74 (citation omitted).

[4] A fourth plaintiff, Davis, has four Yahoo accounts, which he created in 2004, 2011, 2012, and 2024. As a result, he has

arbitrate their claims against Yahoo. Yahoo's records indicate that these three plaintiffs each received at least inquiry notice of the arbitration term and assented to it.

The plaintiffs first agreed to arbitrate when they received Yahoo's pop-up notification linking to the 2018 Terms and clicked, "I Accept". The 2018 Terms were clearly and conspicuously hyperlinked in blue at the top of the pop-up notification. The notification expressly flagged that "[w]e've added a mutual arbitration clause," and advised users to read the arbitration provision "carefully," as it is "an important part of our relationship with you." Such "clear and conspicuous" language and presentation placed the plaintiffs on inquiry notice, Davitashvili, 131 F.4th at 116, and Corvi, Hackett, and Hunting each assented to the arbitration term by clicking "I Accept" at the bottom of the pop-up notification in either April or May 2018.

In any event, the three plaintiffs agreed to arbitration twice more in 2025. In March 2025, the plaintiffs received an email that linked to the March 2025 Terms and stated, "[b]y continuing to use our services, you accept and agree to these

---

created Yahoo accounts both before and after Yahoo introduced its arbitration term in 2018. Because Davis's assent to the arbitration provision is discussed in the context of his 2024 account creation, see supra, he is not discussed here.

updated Terms," and continued using their Yahoo accounts afterwards. Courts applying New York law have consistently held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms. See, e.g., Capolongo v. Spotify USA Inc., No. 25cv9216 (JGK), 2026 WL 1179653, at *4 (S.D.N.Y. Apr. 30, 2026) (collecting cases). And, in October and November 2025, the plaintiffs agreed to arbitrate once again when they received Yahoo's pop-up notification linking to the May 2025 Terms and clicked "Agree." The notification provided notice of the May 2025 Terms by conspicuously hyperlinking to them in blue underline and by stating, "[b]y clicking "Agree" below, you accept and agree to these updated Yahoo Terms of Service."

The plaintiffs raise many arguments to contend that Yahoo's pop-up and email notifications of its updated Terms of Service were insufficient to establish inquiry notice and assent. None is persuasive.

Plaintiffs first argue that Yahoo has failed to show notice and assent via the 2018 pop-up notification because Yahoo did not attach "a full copy" of the notification or the 2018 Terms to this motion, and because Yahoo has presented different versions of the notification on a web browser and a mobile browser. But Yahoo's Vice President and Chief Counsel, Robert

Gurwin, attached to his declaration a full copy of Yahoo's Terms of Service from April 13, 2018, which included the new arbitration provision, as well as the full website and mobile browser versions of the 2018 pop-up notification. Any differences between the web browser and mobile browser versions are immaterial to the issues at stake here.

Next, plaintiffs argue that "Yahoo cannot show which of these versions were presented to each Plaintiff, nor can it show they affirmatively assented." They are wrong. Mr. Gurwin declares that the notifications screenshotted and attached to his declaration are "true and correct" copies of the notifications "that accountholders saw when logging into their account" after April 2018 and, thus, that these notifications would have been displayed to the three plaintiffs when they clicked "I Accept" in April and May 2018.

Plaintiffs then contend that Yahoo has not established that its systems reliably record a user's acceptance of the Terms. Plaintiffs speculate that Yahoo's system may record acceptance even when users "select[ed] 'Close' on one of these pop-ups." But Mr. Gurwin, who, as Chief Counsel is familiar with Yahoo's Terms of Service and the various acceptance screens, confirmed during his deposition that the Yahoo system only records assent when a user affirmatively clicks "I agree" or "Continue."

Plaintiffs also claim that Yahoo's records are unreliable because it recorded a date in 1970 for one plaintiff's (Hackett's) assent. The record in question, however, actually lists October 14, 2025 as the date on which Hackett agreed to the May 2025 Terms. The 1970 date is a default placeholder in a legacy computer system.

Only a few arguments remain. Plaintiffs contend that the 2025 email and pop-up notifications did not provide them with inquiry notice, despite including conspicuous hyperlinks to the Terms of Service, because the notifications themselves did not expressly mention the word "arbitration." This argument fails for the reasons already described above. Lastly, plaintiffs argue that, because they assented to the May 2025 Terms after they joined this lawsuit, the arbitration provision is unenforceable against them. This argument, too, falls short. There is no legal impediment barring parties' agreement to resolve ongoing litigation through arbitration. In any event, as explained above, plaintiffs had already agreed to arbitrate their claims against Yahoo in 2018, when they received a pop-up notification that Yahoo "added a mutual arbitration clause" and clicked, "I accept." These 2018 agreements to arbitrate took effect years before this action was filed in April 2025.

C. Questions of "Arbitrability"

The plaintiffs contend that their claims in this litigation are not encompassed by the arbitration clause in the Terms of Service since the Yahoo "services" to which it refers should be read to apply only to consumer-facing services such as Yahoo Mail. They argue as well that the resolution of this issue rests with the Court and not the arbitrator.

Where an agreement to arbitrate exists, "courts presume that the parties intend courts, not arbitrators, to decide disputes about 'arbitrability,'" such as "whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Olin Holdings Ltd. v. State, 73 F.4th 92, 105 (2d Cir. 2023) (citation omitted). Courts must "independently decide those issues unless the record supplies clear and unmistakable evidence that the parties agreed to submit the issue to arbitration." Id. (citation omitted). Here, there is such "clear and unmistakable evidence." Both the March 2025 and the May 2025 Terms to which the plaintiffs agreed contain the following language in § 14.2(b), entitled "Binding Arbitration Agreement":

> EXCEPT AS EXPRESSLY PROVIDED IN THIS SECTION 14, YOU AND [YAHOO] BOTH AGREE TO RESOLVE ANY AND ALL DISPUTES, CONTROVERSIES OR CLAIMS THAT IN ANY WAY ARISE OUT OF OR

> RELATE TO THESE TERMS OR FROM ANY SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FROM ANY SUCH SERVICES), . . . ONLY BY ARBITRATION ON AN INDIVIDUAL BASIS. THIS INCLUDES BUT IS NOT LIMITED TO . . . WHETHER A CLAIM IS SUBJECT TO ARBITRATION . . . .

(Emphasis added.)

This clause unmistakably indicates that issues of arbitrability should be decided by an arbitrator. First, and most obviously, it directly states that the parties agree to "resolve" issues regarding "whether a claim is subject to arbitration" "only by arbitration." Such a clear delegation must be respected. See Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. 63, 65 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."). Second, it states that "any and all disputes, controversies, or claims that in any way arise out of or relate to these Terms" are subject to arbitration. The Second Circuit has interpreted a similar provision to hold that "[t]he words 'any and all' are elastic enough to encompass disputes over . . . whether a claim is within the scope of arbitration." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996).

Thus, the parties have agreed to delegate all issues of arbitrability to the arbitrator. There is therefore no need to

address plaintiffs' arguments that their claims do not fall within the scope of the agreement.

II. Motion to Stay Litigation

Where, as here, only some claims in an action are arbitrable, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987). It is appropriate "to grant a stay where the pending proceeding is an arbitration in which issues involved in the case may be determined." Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991) (citation omitted). A court thus considers "factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd., No. 10cv8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted).

A stay of the claims brought by plaintiffs Davis, Lowery, Corvi, Hackett, and Hunting is warranted. All of these claims arise from Yahoo's use of its ConnectID technology to collect information about its users without their express consent. Whether the claims brought by the sixth plaintiff, Baker, should also be stayed is addressed in a separate scheduling order.

## Conclusion

Yahoo's January 30, 2026 motion to compel arbitration as to five of the six plaintiffs and to stay the litigation of their claims pending arbitration is granted.

Dated: New York, New York
August 26, 2026

DENISE COTE
United States District Judge